FILED

2025 Jan-28  PM 04:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **LAKEISHA EZELL, as** | ) | |
| **representative of the ESTATE OF** | ) | |
| **TERRENCE ANDREWS,** | ) | **Honorable Judge Annemarie Carney** |
| | ) | **Axon** |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 4:20-cv-02058-ACA** |
| **v.** | ) | |
| | ) | |
| **JEFFERSON DUNN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## BRIEF IN SUPPORT OF DEFENDANT BAKER'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................... ii

**INTRODUCTION** ...................................................................................1

**JURISDICTION AND VENUE** ............................................................1

**SUMMARY JUDGMENT STANDARD** ...............................................2

**STATEMENT OF UNDISPUTED FACTS** ..........................................3

**PROCEDURAL HISTORY** ...................................................................11

**ARGUMENT** ...........................................................................................12

   **I.**   QUALIFIED IMMUNITY BARS PLAINTIFF'S FAILURE-TO-PROTECT CLAIM 12

      **A. Plaintiff Cannot Demonstrate a Constitutional Violation**.............14

         *1. Defendant Baker Did Not Act with Subjective Recklessness*....15

         *2. Defendant Baker Responded Reasonably to a Substantial Risk of Serious Harm* .......................................................................18

         *3. Defendant Baker's Alleged Inaction Did Not Cause Andrews's Harm* ........................................................................................23

      **B. Even If a Constitutional Violation Exists, It Was Not Clearly Established at the Time of Andrews's Assault** ...............................24

   **II.**  PLAINTIFF'S STATE-LAW CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT ......................................................................................25

      **A. The State-Law Claims Are Barred by State-Agent Immunity**....26

      **B. Plaintiff's Wrongful Death Claims Cannot Survive Summary Judgment**........................................................................................29

       1. *Defendant Baker Exercised Due Care* ....................................30

       2. *Any Alleged Breach Did Not Cause Andrews's Injuries*.........33

**CONCLUSION**.................................................................................34

**CERTIFICATE OF SERVICE** ..........................................................36

## TABLE OF AUTHORITIES

### CASES

**U.S. Supreme Court**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................2

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................... 14, 15, 18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........3

**Eleventh Circuit**

*Coffin v. Brandau*, 642 F.3d 999 (11th Cir. 2011)...................................................25

*Corbitt v. Vickers*, 929 F.3d 1304 (11th Cir. 2019)......................................... 12, 13

*Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003)) ..................................................14

*Crocker v. Beatty*, 995 F.3d 1232 (11th Cir. 2021) ..................................................24

*Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763 (11th Cir. 2016) ....................15

*Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014).............................................14

*Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015) .......................................................28

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004).. 13, 14, 24

*McCullough v. Antolini*, 559 F.3d 1201 (11th Cir. 2009).........................................24

*Mosley v. Zachary*, 966 F.3d 1265 (11th Cir. 2020)................................................18

*Piazza v. Jefferson Cnty.,* 923 F.3d 947 (11th Cir. 2019)................................. 13, 24

*Powell v. Snook*, 25 F.4th 912 (11th Cir. 2022) .......................................................14

*Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313 (11th Cir. 2005)..14

*Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) ....................................................18

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) .................................................13

*Wade v. McDade*, 106 F.4th 1251 (11th Cir. Jul. 10, 2024)........................... *passim*

*Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982)....................................19

## District Court

*Barefield v. Dunn*, 688 F. Supp. 3d 1026 (M.D. Ala. 2023) ...................... 26, 27, 28

*Cohen v. Hill*, No. 2:21-CV-1361-LSC, 2024 WL 4363154 (N.D. Ala. Sept. 30, 2024) ........................................................................................................................23

*Fleming v. Dowdell*, 434 F. Supp. 2d 1138 (M.D. Ala. 2005) ...............................27

*Helms v. Noles*, No. CV-09-BE-0863-S, 2009 WL 10703962 (N.D. Ala. Dec. 8, 2009) .......................................................................................................................13

*Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2024 WL 1076802 (N.D. Ala. Mar. 12, 2024) ..................................................................................................................12

*Low v. CPL Roser*, No. CV-421-187, 2024 WL 3400550 (S.D. Ga. Jul. 12, 2024) ...................................................................................................................... 16, 18

*Marbury v. Estes*, No. 4:16-CV-1152-AKK-JHE, 2017 WL 2060346 (N.D. Ala. May 1, 2017) ..............................................................................................................25

*Myers v. Ivey*, No. 2:21-CV-174-MHT-CSC, 2023 WL 8794608 (M.D. Ala. Dec. 4, 2023) ....................................................................................................................14

*Rutledge v. Sansing*, No. 2:21-CV-226-RDP, 2024 WL 3839516 (N.D. Ala. Aug. 15, 2024) ...................................................................................................23

*Thompson v. Rodgers*, No. 1:22-CV-651-RAH-JTA, 2024 WL 4703082 (M.D. Ala. Nov. 6, 2024) ....................................................................................22

*Vinson v. Clark Cnty., Ala.*, 10 F. Supp. 2d 1282 (S.D. Ala. 1998) .......................29

**Alabama Supreme Court**

*Ex parte Ala. Dep't of Corr.*, 201 So. 3d 1170 (Ala. 2016) ...................................28

*Ex parte Butts*, 775 So. 2d 173 (Ala. 2000) .................................................. 26, 28

*Ex Parte Cranman*, 792 So. 2d 392 (Ala. 2000) ............................................. 26, 27

*Ex parte Price*, 256 So. 3d 1184 (Ala. 2018) ................................................ 26, 28

*Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000) ...........................................................26

*Ex parte Rodgers*, 141 So. 3d 1038 (Ala. 2013) ...................................................29

*Ex parte Spivey*, 846 So. 2d 322 (Ala. 2002) .......................................................28

*Ex parte Walker*, 188 So. 3d 633 (Ala. 2015) ......................................................27

*Giambrone v. Douglas*, 874 So. 2d 1046 (Ala. 2003) ...........................................27

*Gilmore v. Shell Oil Co.*, 613 So. 2d 1272 (Ala. 1993) .........................................33

*Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981) ...............................28

*Hughes v. Marley*, 390 So. 3d 545 (Ala. 2023) ...................................................30

*Moore v. Tyson*, 333 So. 3d 668 (Ala. 2021) .......................................................29

*Prill v. Marrone*, 23 So. 3d 1 (Ala. 2009) ...........................................................29

*Sanders v. Scarvey*, 224 So. 2d 247 (Ala. 1969) .................................................30

*Thetford v. City of Clanton*, 605 So. 2d 835 (Ala. 1992) ........................................30

*Thompson v. Lee*, 439 So. 2d 113 (Ala. 1983)..........................................................30

**Alabama Court of Civil Appeals**

*Robinson v. Baptist Health Sys., Inc.*, 24 So. 3d 1119 (Ala. Civ. App. 2009) .........29

## <u>Statutes</u>

**Federal Statutes**

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1343 ..........................................................................................................1

28 U.S.C. § 1391(b)(1)..................................................................................................1

42 U.S.C. § 1983 ........................................................................................................13

**State Statutes**

Ala. Code § 6-5-410(a) (1975)...................................................................................29

**Rules**

Fed. R. Civ. P. 56(a)....................................................................................................2

Fed. R. Civ. P. 56(e)....................................................................................................3

Defendant Baker files this brief in support of his Motion for Summary Judgment, (Doc. 184).

## INTRODUCTION

Plaintiff—the personal representative of the estate of Terrence Andrews ("Andrews"), a former inmate in the custody of the Alabama Department of Corrections ("ADOC")—filed this lawsuit against Defendant Baker (among other defendants not directly addressed in this brief) relating to a stabbing between Andrews and another inmate. Plaintiff seeks to hold the Defendant Baker personally and individually liable, asserting that he failed and breached his duty to protect Andrews, resulting in his death while housed at St. Clair Correctional Facility ("SCCF"). Plaintiff argues that Defendant Baker is liable for federal-law failure-to-protect and two counts of state-law wrongful death.

Plaintiff's claims fail as a matter of law because Defendant Baker is entitled to qualified immunity and state-agent immunity. However, should this Court find that neither immunity shields Defendant Baker from liability, Defendant Baker is still entitled to dismissal from all claims as Plaintiff cannot establish his failure-to-protect and wrongful death claims as a matter of law.

## JURISDICTION AND VENUE

Plaintiff's claims arise under federal law. Consequently, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate in

the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b)(1).

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A court presented with such a motion must grant it "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

After the party seeking summary judgment satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotations omitted) (citing Fed. R. Civ. P. 56(e)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48 (alteration in original). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

## STATEMENT OF UNDISPUTED FACTS

### The Incident

1.     Terrence Andrews ("Andrews") entered this stint of ADOC custody on June 20, 2013. (Doc. 190-pp p.6)[1]. Cedric Davis ("Davis") entered ADOC custody on May 28, 2003. (Doc. 190-qq p. 9).

2.     Both were moved to beds P22-1A and -2A on November 26, 2018. (Doc. 190-pp p. 1; Doc. 190-qq p. 2).

3.     On December 29, 2018, SCCF, in pertinent part, had the following staff: Defendant Baker (shift commander), Sergeants Jacob Weaver and McGilberry (population sergeants), Eric Garrett (population gate officer), Cynthia Caver (P dormitory cubicle officer), Officer Newton (Q dormitory cubicle officer), and

---

[1] Defendant Baker uses the page numbers of the original document for citations throughout this Brief.

Officer Taylor (rover for P and Q dormitories). (Doc. 190-rr p.1). This number of staff complied with SCCF's minimum staffing requirement. (Doc. 183-H pp. 24-25).

4.      These staff began their shift on December 29, 2018, at 6 a.m. (Doc. 190-M at 152:1-4).

5.      That day, staff first counted P dormitory at 6:45 a.m., recounted at 8:26 a.m., then counted again at 1:34 p.m., (Doc. 190-ss pp. 1, 2).

6.      Officer Caver performed intentional, visual security checks of both sides of P dormitory at 8:15 a.m., 10:30 a.m., 11:37 a.m., 12:10 p.m., 12:56 p.m., 1:25 p.m., 1:34 p.m., and 2:30 p.m. (*Id*. at 1-2)

7.      Lieutenant Baker visited P dormitory for various reasons twice before Andrews's assault occurred. (*Id*. at 2).

8.      Around 3:35 p.m., Officer Caver heard inmates Terrence Andrews and Cedric Davis in a fight. (Doc. 185-P14 p. 3; Doc. 190-tt). She heard a loud shout, (Doc. 190-G 40:6-13), saw Andrews throw a box at Davis, then observed Andrews collapse, (Doc. 185-P14 p. 3). Officer Caver called a 10-17 code (inmate-on-inmate incident) over the radio. (Doc. 190-M at 104:12-14). One inmate housed in P dormitory stated that the stabbing occurred in Davis's and Andrews's cell, P-22. (Doc. 185-P14 p. 4).

9.      Officers Eric Garrett and Rickey Johnson responded first. (*Id*. at 1). Andrews was stabbed multiple times and was escorted to the infirmary. (*Id*.).

4

10.    Defendant Baker received the 10-17 while providing security in the chow hall to inmates eating and calling the next dormitories to the chow. (Doc. 190-M at 141:9, 12-14). He and Sergeant Weaver responded to that 10-17 at approximately 3:35 p.m. or a few minutes thereafter. (Doc. 190-tt p. 1; Doc. 185-P14 p. 1; Doc. 190-L at 19:17-22, 20:7-13, 25:17-24). Defendant Baker and Weaver entered P dormitory together. (Doc. 190-L at 17:16-22).

11.    Davis, after the assault, ran to the 2 side of P dormitory, and Officer Caver advised Defendant Baker and Weaver of that movement. (*Id.* at 17:16-18:2; Doc. 185-P14 p. 1).

12.    Weaver and Defendant Baker "announced that [they] were going to go cell to cell until [they] found […] Davis[,]" then Davis came out of cell P-28. (Doc. 190-L 17:23-18:6).

13.    Defendant Baker removed Davis from cell P-28, (Doc. 185-P14 p. 1), and handcuffed him, (Doc. 190-tt p.1); escorted him to the shift office, (Doc. 190-uu p. 1); and facilitated his placement in restrictive housing, (*id.* at 1-2).

14.    Defendant Baker and Sergeant Weaver also searched the cell, (Doc. 190-M at 141:9, 12-14; Doc. 190-L 18:3-6), and found a bloody pants belonging to "Ced" and an inmate-made knife wrapped inside the pants. (Doc. 185-P14 p.1).

15.    In investigating the incident, Davis told SCCF staff that he and Andrews argued about Andrews's sexual activity in their cell. (*Id.* at 2). Davis stated

that he attempted to go to his cell but saw Andrews and other inmates in his cell engaged in sexual activity. (*Id*.). Davis warned Andrews three times about having other inmates inside their cell. (*Id*. at 3). After those warnings, Davis assaulted Andrews. (*Id*.).

16.    Presumably, Davis's spontaneous assault of Andrews occurred due to a disagreement between Davis and Andrews over Andrews's sexual habits. (*Id*. at 5 or 2; Doc. 183-G p. 5).

17.    Andrews and Davis were cellmates, (Doc. 190-U p.1), and known to be good friends, (Doc. 190-B 24:20-25:1). They had no reported disciplinaries or issues with each other prior to this assault, (*id*. at 25:16-21).

18.    Ultimately, Andrews passed away at approximately 4:12 p.m. on December 29, 2018. (Doc. 190-ww p. 1).

19.    Because this was a "random and unforeseen attack," Defendant Baker nor any SCCF staff had any warning that Davis was going to attack Andrews or that Andrews may have been fearful for his safety. (Doc. 183-G pp. 33, 46; Doc. 190-H at 141:16-19; Doc. 190-M at 163:4-16). Defendant Baker could not have "personally act[ed] to prevent or to intervene in the assault." (Doc. 183-G p. 33).

20.    Andrews never expressed a fear for his safety in P dormitory at SCCF nor expressed a fear of Davis. (Doc. 190-H at 140:18-20; Doc. 183-E at 52;11-14, 166:18-167:4).

**General Operations & Conditions at SCCF**

21.    On December 29, 2018, Defendant Baker served as a lieutenant and shift commander. (Doc. 190-rr p.1). Officer Eric Garrett reported to Lieutenant Baker. (Doc. 190-H at 16:17-24).

22.    Security staff, like Officer Garrett, conducted contraband searches of random cells every day. (*Id*. at 39:14-23, 42:22-23).

23.    Counting SCCF's required Defendant Baker ceasing all inmate movement throughout the facility, ensuring all officers counted their areas when called, and verifying the count to ensure the numbers matched with the rosters of inmates. (Doc. 190-M at 24:1-9).

24.    During this period, N and O dormitories were closed. (Doc. 190-rr p. 1).

25.    During times of extreme shortage, the general population dormitories, like P, require one officer in the cubicle and one rover. (*Id*. at 5). However, sometimes SCCF did not have had enough staff in a given day to fill all rover positions. (Doc. 190-M at 90:7-9).

26.    CERT teams "would be assigned to a particular place where they would search all day[.]" (*Id*. at 48:5-11). The CERT teams were there to help with contraband. (*Id*. at 48:12-21).

27.    Because of staffing shortages, security supervisors would often conduct

7

the duties of rovers. (*Id*. at 93:11-12).

28.    In 2018 and 2019, shift sergeants "were responsible for ensuring that [correctional] officers" under them performed their contraband searches. (Doc. 190-F 141:23-142:10). The lieutenants were then responsible for making sure that "the sergeants were doing their job[.]" (*Id*.).

29.    Officers performing contraband searches were able to pick which cells or inmates they wanted to search to fulfill the search requirements. (Doc. 190-H at 42:24-43:2).

30.    The DOJ Notice Letter, addressed to Governor Kay Ivey on April 2, 2019, states it is inadmissible in Court and should not be used as binding fact or evidence. (Ezell 1909-70 p. 1).

### Defendant Larry Baker's Authority & Responsibilities at SCCF

31.    Defendant Baker began working for ADOC in 1994. (Doc. 190-M 10:12-18). In 2016, he was promoted to lieutenant, (*id*. at 14:13-15), then retired in 2021, (*id*. at 16:2-4).

32.    As a lieutenant and shift commander, some of Defendant Baker's duties included ensuring all positions were filled according to SCCF's staffing plan, ensuring critical posts were manned, (Doc. 185-P20 pp. 2, 3); ensuring subordinate staff followed policies, (*id*. at 3); conducting searches and shakedowns, (Doc. 185-P22 p. 1); and calling facility counts and ensuring those counts were correct, (Doc.

190-M at 23:18-22).

33.    Part of Defendant Baker's responsibilities also included presiding over hearings involving inmate disciplinaries and writing and reviewing incident reports. (*Id*. at 20:12-14, 22:4-21). Defendant Baker was also charged with disciplining staff for violations of standard operating procedures ("SOPs"), (*id*. at 37:21-38:2), including failure to log the recovery of contraband, (*id*. at 82:23-83:3).

34.    Another duty of Defendant Baker's included overseeing SCCF staff's contraband searches, (*id*. at 26:4-8), and performing his own security checks daily, (*id*. at 62:15-21).

35.    However, Defendant Baker was not responsible for formulating any SOPs. (*Id*. at 37:21-38:2).

36.    Defendant Baker generally spent his time on shift walking through the population yard, among his other responsibilities, unless he was responding to an incident. (*Id*. at 61:3-7)

37.    Defendant Baker made it a practice to supervise and monitor inmates by ensuring each security position was filled where possible; monitoring inmates by supervising their movements in the dormitories, yard, chow hall, and other locations. (*id*. at 20:7-9); and walking through inmate dormitories at least once a day, (*id*. at 61:8-11).

38.    Defendant Baker and the SCCF staff often worked with the

9

Correctional Emergency Response Teams. (*Id*. at 47:17-48:1).

39.    Defendant Baker and his staff performed contraband searches consistently, (*id*. at 46:22-47:1), and confiscated that contraband when found.

40.    When inmates would report safety concerns to Defendant Baker, he would handle those reports in a way that protected the reporting inmates. (*Id*. at 69:11-18). In doing so, Defendant Baker would investigate inmates' allegations, conduct interviews, and evaluate whether the inmate wanted to remain in population or needed to move elsewhere. (*Id*., *see also id*. at 69:20-22).

41.    Any time an inmate reported a safety concern to Defendant Baker, he would report those concerns to his supervisor. (*Id*. at 70:8-15).

42.    Defendant Baker worked with SCCF staff to facilitate the transfer of more dangerous, gang-related inmates from St. Clair. (Doc. 190-ww p. 1).

43.    Defendant Baker did not receive the April 2019 DOJ Notice Letter. (Ezell 1909-1970 p. 7).

## PROCEDURAL HISTORY

Plaintiff initially filed suit on December 22, 2020, suing Defendants Jefferson Dunn, Grantt Culliver, Charles Daniels, Jeffery Williams, Edward Ellington, Karla Jones, Gwendolyn Givens, Anthony Brooks, Carl Sanders, Gary Malone, Kevin White, Carla Graham, Neketris Estelle, Larry Baker, Tanya Ary, and two fictitious defendants for various federal and state-law claims. (*See generally* Doc. 1). Plaintiff

then filed an Amended Complaint against same the Defendants and Defendant Eric Garrett asserting the same varying federal and state-law claims. (*See generally* Doc. 34). After motion-to-dismiss briefing on Plaintiff's Amended Complaint and qualified immunity briefing pursuant to this Court's show-cause order, (Doc. 83), this Court issued a Memorandum Opinion and Order regarding Defendants' Motions to Dismiss, (Doc. 105). This Court granted in part and denied in part Defendants' Motions to Dismiss, (*id*. at 70), allowing Count I (failure-to-protect) against Defendants Dunn, Ellington, Jones, and Baker; Count IX (wrongful death—supervisory liability) against Defendants Dunn, Ellington, Jones, and Baker; and Count X (wrongful death) against Defendant Baker to proceed, (*id*. at 70-71; *see also* Doc. 34 ¶¶ 238-48, 313-41).

## ARGUMENT

Count I fails because Defendant Baker is entitled to qualified immunity. However, should this Court disentitle him from that immunity, Plaintiff still cannot survive summary judgment as she cannot provide evidence establishing Defendant Baker's deliberate indifference to Mr. Andrews. Furthermore, Counts IX and X fail because Defendant Baker is also entitled to state-agent immunity. But, if this Court determines Defendant Baker is not entitled to state-agent immunity, it should still dismiss Counts IX and X as a matter of law because Plaintiff cannot demonstrate the requisite elements of each claim of wrongful death against Defendant Baker.

11

# I.   QUALIFIED IMMUNITY BARS PLAINTIFF'S FAILURE-TO-PROTECT CLAIM.

The long-recognized doctrine of qualified immunity "shields 'government officials performing discretionary functions…from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2024 WL 1076802 at *9 (N.D. Ala. Mar. 12, 2024) (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019)). Thus, to overcome qualified immunity, a plaintiff must show: (1) "'that the defendant violated a constitutional right'" *and* (2) that "'the violated right was clearly established.'" *Id*. (quoting *Corbitt*, 929 F.3d at 1311).

A public official seeking the protection of qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Helms v. Noles*, No. CV-09-BE-0863-S, 2009 WL 10703962, at *6 (N.D. Ala. Dec. 8, 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)) (internal quotation marks omitted). The burden then shifts to the plaintiff "to show that (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Piazza v. Jefferson Cnty.,* 923 F.3d 947, 951 (11th Cir. 2019) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Here, Defendant Baker overcomes the first hurdle as a state-government

12

employee sued in his individual capacity for civil damages. (Doc. 34 ¶¶ 13-14, 34).

Plaintiff concedes that the Defendant Baker was "act[ing] under color of law and

within the scope of his [...] employment when engaging in the [alleged] misconduct"

made the basis of this suit. (*Id.* at ¶ 14). Moreover, Plaintiff alleges that Defendant

Baker was "responsible for the safety and security of the prisoners at St. Clair[.]"

(*Id.* at ¶ 34). Actions relating to management of a prison clearly fall within Defendant

Baker's "discretionary authority" as the allegations against him relate to his "job

responsibilities." *Holloman*, 370 F.3d at 1265. Thus, Defendant Baker satisfies his

initial burden of showing he was acting within the scope of his discretionary

authority as an ADOC employee. As a result, the burden shifts to Plaintiff "to present

evidence that Defendants are not entitled to qualified immunity." *Myers v. Ivey*, No.

2:21-CV-174-MHT-CSC, 2023 WL 8794608, at *7 (M.D. Ala. Dec. 4, 2023), *report

and recommendation adopted*, No. 2:21-CV-174-MHT, 2023 WL 8793007 (M.D.

Ala. Dec. 19, 2023) (citing *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022);

*Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)).

### A. Plaintiff Cannot Demonstrate a Constitutional Violation.

Plaintiff's 42 U.S.C. § 1983 claim in Count I, asserting a violation of

Andrews's Eighth Amendment right under a failure-to-protect theory, (Doc. 34 ¶¶

238-48), fails as Plaintiff cannot establish sufficient, undisputed facts to state a

plausible failure-to-protect claim against Defendant Baker. Although prison officials

13

can be liable for failing to prevent an inmate-on-inmate attack, not "every injury suffered by one prisoner at the hands of another…translates into constitutional liability for prison officials responsible for the victim's safety[,]" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), because "a prison custodian is not the guarantor of a prisoner's safety[,]" *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005).

Here, Plaintiff does not allege, nor is there any evidence to support, that Defendant Baker failed to protect Andrews after receiving actual notice of a specific threat to him—a particularized risk theory of a failure-to-protect claim. *See Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). Thus, this Court should analyze Plaintiff's claim under a "generalized risk" theory as Defendant Baker is sued based on actions he allegedly took as a shift supervisor, (Doc. 34 ¶ 34), and with an awareness of "an acute security crisis at St. Clair and in the P/Q blocks in particular[,]" (*id.* at ¶ 242).

Therefore, to state an Eighth Amendment claim premised on a failure to prevent harm, a plaintiff must show that: (1) "he suffered a deprivation that was, objectively, sufficiently serious[,]" and (2) "the defendant acted with subjective recklessness as used in the criminal law[.]" *Wade v. McDade*, 106 F.4th 1251, 1252

14

(11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 834, 844-45) (internal quotation marked omitted).

1. *Defendants Baker Did Not Act with Subjective Recklessness*.

The second element of a deliberate indifference claim requires a plaintiff-inmate to show subjective recklessness, "as used in the criminal law" on the part of the defendant-official. *Id*. (quoting *Farmer*, 511 U.S. at 839). Criminal recklessness can be defined as "disregard [of] a risk of harm of which [a defendant] is aware." *Id*. at 1256 (quoting *Farmer*, 511 U.S. at 836-37) (emphasis omitted). Thus, "[t]o establish subjective recklessness, the plaintiff must show 'that the defendant was actually, subjectively aware that *his own conduct*,' whether that 'conduct' be action or inaction, 'caused a substantial risk of serious harm to the plaintiff.'" *Low v. CPL Roser*, No. CV-421-187, 2024 WL 3400550, at *2 (S.D. Ga. Jul. 12, 2024) (emphasis added) (quoting *Wade*, 106 F.4th at 1261-1262).

Importantly, because the Eighth Amendment prohibits only cruel and unusual *punishments*, not *conditions*, it requires a "particularized focus on a prison official's subjective awareness of the risk created by his [or her] own conduct…" *Wade*, 106 F.4th at 1259. Thus, defendant prison officials must know and understand that their own actions or inactions would "put the plaintiff at substantial risk of serious harm." *Id*. at 1258, 1259. ("The [*Farmer*] Court's focus, it seems to us, was on whether the

official knew that his own conduct—again, his own acts or omissions—put the inmate at risk, not just whether the inmate confronted a risk in the abstract.").

Plaintiff's operative pleading claims that Defendant Baker "knew of and consciously disregarded the substantial risks that Mr. Andrews would be seriously harmed while in custody, failing to protect him from harm." (Doc. 34 ¶ 240). Plaintiff also claims that Defendant Baker had awareness "of an acute security crisis at St. Clair and in the P/Q blocks[,]" (*id*. at ¶ 242), based on his review of incident reports and other investigative reports, news articles, the *Cheatham* lawsuit and settlement agreement, and the DOJ investigation and Notice Letter[2]. (*Id*. at ¶¶ 126-27, 132, 136, 139, 152).

Plaintiff's allegations speak only to Defendant Baker's awareness of generalized issues at SCCF, not risks to Andrews due to Baker's own conduct. In *Wade*, the parties disputed whether the official's subjective knowledge of a risk to an inmate could be *any* risk to the innate *or* of a risk presented by *the official's own conduct*. *Wade*, 106 F.4th at 1257[3]. The Court held that, since the Eighth

---

[2] It should be noted that the DOJ Notice Letter, which states its inadmissibility in court, was not specifically addressed to him. (Ezell 1909-70 pp. 1, 7).

[3] Adopting the latter position, the *Wade* Court framed the question as:

> The parties' key disagreement pertains to the identification of the 'risk' of which the prison officials must have been subjectively aware. Is it sufficient, as Wade contends, that the official knew that the inmate *faced* a substantial risk of serious harm, whatever its cause or origin? Or, as the state insists, must the inmate show instead that the official knew that his own conduct—his own acts or omissions—*caused* a substantial risk of serious harm to the inmate?

16

Amendment prohibits only cruel and unusual punishments, rather than conditions, the Eighth Amendment requires "a particularized focus on a prison official's subjective awareness of the risk created by his own conduct." *Id*. at 1259. Plaintiff cannot provide any evidence that Defendant Baker knew his own alleged actions or omissions would put Andrews specifically "at risk, not just whether [he] confronted a risk in the abstract." *Id*. Accordingly, Plaintiff cannot establish Defendant Baker's knowledge of a risk imposed by his own conduct, which is independently fatal to his Eighth Amendment Claim.

2. *Defendant Baker Responded Reasonably to a Substantial Risk of Serious Harm*.

Even if a defendant was aware of a substantial risk to a plaintiff-inmate's […] safety, if the defendant 'responded reasonably to the risk,' he cannot be found liable under the Eighth Amendment." *Low*, 2024 WL 3400550 at *2 (quoting *Wade*, 106 F.4th at 1257, 1262). Eleventh Circuit precedent establishes that prison official defendants are entitled to summary judgment where they responded reasonably to a threat even if an inmate-plaintiff was ultimately harmed. *See Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (("[T]he Supreme Court's decision in *Farmer* couldn't be any clearer: '[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably

―――――――――――

106 F.4th 1251, 1257 (11th Cir. 2024).

17

to the risk, *even if the harm ultimately was not averted*.'") (quoting *Farmer*, 511 U.S. at 844)); *Mosley v. Zachary*, 966 F.3d 1265 (11th Cir. 2020) (affirming grant of summary judgment to defendant prison official because defendant "reasonably responded" to the inmate-plaintiff's report of a threat). When "evaluat[ing] whether a defendant responded reasonably to a substantial risk to the plaintiff's health or safety[,]" courts analyze the defendant's response "objectively." *Low*, 2024 WL 3400550 at *2 (citing *Wade*, 106 F.4th at 1262 (Jordan, J. concurring)).

In assessing whether a prison official responded reasonably to a substantial risk of serious harm which he was subjectively aware of, courts also look to the authority that official possessed. *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party."). Plaintiff states that Defendant Baker was "responsible for the safety and security" and "monitoring and supervis[ion]" of inmates and staff as well as "assigning staff to posts[ and] ensuring that staff" were at their posts and "carrying out their duties[.]" (Doc. 34 ¶ 34).

As for Defendant Baker's authority as a lieutenant and shift commander on December 29, 2018, (Doc. 190-rr p. 1), Defendant Baker was responsible for ensuring posts were staffed and critical posts were manned in accordance with SCCF policy, (Doc. 185-P20 pp. 2, 3); ensuring subordinate staff followed policies and

18

procedures (*id*. at 3); and conducting searches and shakedowns, (Doc. 185-P22 p. 1), among other things.

Plaintiff alleges that Defendant Baker failed to properly supervise and monitor inmates, discipline inmates and staff for possession of contraband, and carry out contraband searches. (Doc. 34 ¶¶ 243-45). However, the undisputed evidence demonstrates that Defendant Baker, within the bounds of his authority, responded reasonably to the alleged issues at SCCF that Plaintiff claims contributed to Andrews's death, namely (1) rampant inmate violence, (2) lack of adequate monitoring and contraband searches, (3) lack of response to safety concerns, (4) lack of segregation and discipline of more violent inmates, and (5) a creation of a culture of abuse against inmates. (*See id*. at ¶¶ 70, 156, 184, 203, 210, 227).

Specifically, Defendant Baker "adequately supervised and monitored" inmates, (*id*. at ¶ 243), by ensuring there were appropriate staff—a cubicle officer in P dormitory, a rover, a sergeant over population, and an officer at the population gate—to monitor P and Q dorms the day Andrews was assaulted. (Doc. 190-rr p. 1). Overall, Defendant Baker monitored inmates by supervising their movements in the dormitories, yard, chow hall, and to and from other locations. (Doc. 190-M at 20:7-9). He would, moreover, walk through the inmates' dormitories at least once every day. (*Id*. at 61:8-11). Defendant Baker was also responsible for calling facility counts of inmates and ensuring those counts were correct. (*Id*. at 23:18-22). A "count"

involved Defendant Baker stopping all inmate movement, ensuring all officers were counting, and verifying the count to ensure the numbers matched with the rosters of inmates. (*Id*. at 24:1-9). On the day Andrews was assaulted, Defendant Baker oversaw counts of P dormitory at 6:45 a.m., 8:26 a.m., and 1:34 p.m. (Doc. 190-ss at 1, 2).

Defendant Baker disciplined inmates for rules violations, (Doc. 34 ¶ 244), as evidenced by presiding over hearings involving inmate disciplinaries and writing incident reports. (Doc. 190-M at 20:12-14; *see also id*. at 22:4-21). Following the assault on Andrews, Defendant Baker handcuffed inmate Davis, (Doc. 190-tt p. 1), escorted him to the shift office, (Doc. 190-uu p. 1), and facilitated his placement in restrictive housing, (*id*. at 1-2). Defendant Baker also disciplined staff for violations like failing to log the recovery of contraband. (Doc. 190-M at 82:23-83:3).

Defendant Baker and his staff, working with CERT, (*id*. at 47:17-48:1), generally performed contraband searches, (*id*. at 46:22-47:1), and confiscated that contraband when found. Specifically, Defendant Baker was responsible for overseeing SCCF staff's search for contraband, (*id*. at 26:4-8), and would perform security checks every day, (*id*. ta 62:15-21). For example, Officer Garrett, who reported to Lieutenant Baker, (Doc. 190-H at 16:17-24), conducted contraband searches of random cells every day, (*id*. at 39:14-23, 42:22-23).

Regarding Defendant Baker's responses to safety concerns, here, he responded to a 10-17 radio call by Cubicle Officer Caver at approximately 3:35 p.m. after being advised that inmates Andrews and Davis were in an altercation. (Doc. 190-tt p. 1). When Defendant Baker received the 10-17, he was providing security in the chow hall to inmates who were eating and calling the next dormitories to the chow hall. (Doc. 190-M 141:9, 12-14). After responding to the incident, Defendant Baker helped secure inmate Davis after finding him in cell P-28. (*Id*.). More generally, Defendant Baker had a practice of addressing inmates' grievances with other inmates in a way that protected those inmates that reported safety concerns. (*Id*. at 69:11-18). He would investigate inmates' allegations, perform interviews, and evaluate whether that inmate wanted to remain in population. (*Id*., *see also id*. at 69:20-22). Defendant Baker always reported these safety concerns to his supervisor. (*Id*. at 70:8-15).

As for segregation of inmates who were allegedly more violent, there is no evidence that either inmates Andrews or Davis needed to be reclassified or segregated from each other. In general, however, Defendant Baker worked with SCCF staff to facilitate the transfer of more dangerous, gang-related inmates from St. Clair. (Doc. 190-ww p. 1). Finally, there is no evidence that Defendant Baker fostered any sort of culture of abuse against SCCF inmates.

21

Far from turning a blind eye, the undisputed evidence demonstrates that Defendant Baker responded reasonably, within the scope of his duties, discretion, and means, to the generalized risk of inmate violence at SCCF. "Because the evidence does not support that [Defendant Baker] knew that [his] own actions caused [Andrews] to be at risk of serious harm, […] and [he] responded reasonably to any abstract risk[…], the record does not support [the conclusion] that [Defendant Baker] acted with the requisite recklessness." *Thompson v. Rodgers*, No. 1:22-CV-651-RAH-JTA, 2024 WL 4703082, at *16 (M.D. Ala. Nov. 6, 2024) Accordingly, Defendant Baker is entitled to summary judgment on Count I.

### 3. *Defendant Baker's Alleged Inaction Did Not Cause Andrews's Harm*.

"The *Wade* court was silent on how the causation element […] is affected by the new standard articulated in the decision." *Rutledge v. Sansing*, No. 2:21-CV-226-RDP, 2024 WL 3839516, at *23, n.13 (N.D. Ala. Aug. 15, 2024). "Under the *Wade* test, the causation element appears to be subsumed by the former second element (*i.e.*, the defendant's sufficiently culpable state of mind)." *Id.* "However, even if the causation element were evaluated independently," the record would still lack evidence showing that Defendant Baker's inaction actually caused Andrews's injury. *Id.* at *23 n.13. To prove causation, a plaintiff must show: (1) "a link between the Defendant's alleged deliberate indifference and the substantial risk of harm[;]" and (2) "a link between the substantial risk of harm to the plaintiff and the plaintiff's

22

injury." *Cohen v. Hill*, No. 2:21-CV-1361-LSC, 2024 WL 4363154, at \*12 (N.D. Ala. Sept. 30, 2024) (citations omitted).

Here, the record is devoid of evidence that Defendant Baker's conduct contributed to the conditions of SCCF that Plaintiff complains of or specifically to Davis's assault of Andrews. Based on Defendant Baker's authority as a lieutenant and the December 29, 2018, shift commander, there is no evidence that he caused any of the alleged conditions at SCCF. Moreover, there is insufficient evidence that Defendant Baker's "supervision *caused* any of the dangerous conditions [at SCCF] or the specific injury to" Andrews. *Id*. Thus, Plaintiff cannot prevail on her claim of deliberate indifference, entitling Defendant Baker to summary judgment.

### B. Even If a Constitutional Violation Exists, It Was Not Clearly Established at the Time of Andrews's Assault.

Plaintiff's failure to establish a constitutional violation also means that qualified immunity bars her Eighth Amendment claim. *McCullough v. Antolini*, 559 F.3d 1201, 1205, 08 (11th Cir. 2009) ("Because we can discern no constitutional violation, we need not address whether the constitutional right at issue had been clearly established when the incident arose."). However, even if the Court concludes that Plaintiff established a constitutional violation, Plaintiff cannot establish that Defendant Baker violated clearly established law.

Because Defendant Baker, as discussed above, acted within the scope of his discretionary authority when the incident made the basis of this suit occurred,

Plaintiff must show that the constitutional violation "was clearly established at the time of the alleged" conduct. *Piazza*, 923 F.3d at 951 (citing *Holloman*, 370 F.3d at 1264). To determine whether the law is clearly established, courts may look to "(1) case law with indistinguishable facts, (2) a broad statement of principle within the Constitution, statute, or case law, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation omitted).

The Court should look "only to binding precedent-cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose-to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). Moreover, "[w]hile multiple cases in this Circuit have put prison officials on notice that they have a duty to protect inmates from violence at the hands of other inmates, each of those cases have required that the prison officials in question have more than a generalized idea that the plaintiff could be subjected to violence." *Marbury v. Estes*, No. 4:16-CV-1152-AKK-JHE, 2017 WL 2060346, at *8 (N.D. Ala. May 1, 2017). Considering the Eleventh Circuit's recent decision in *Wade*, changing the standard for deliberate indifference liability from more than mere or gross negligence to subjective recklessness under criminal law, Plaintiff cannot overcome the high bar of meeting either prong of the qualified

24

immunity analysis. *Wade*, 106 F.4th at 1252. Thus, Defendant Baker is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

## II. PLAINTIFF'S STATE-LAW CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT.

Counts IX and X assert state-law claims of wrongful death based on supervisory liability and direct breach, respectively, against Defendant Baker. (Doc. 34 ¶¶ 313-41). Defendant Baker is entitled to summary judgment on these claims because the undisputed evidence demonstrates that (1) he is entitled to state-agent immunity, and (2) Plaintiff cannot prove the requisite elements of each claim.

### A. The State-Law Claims Are Barred by State-Agent Immunity.

Under Alabama's state-agent immunity doctrine, an employee of a state agency is immune from personal, civil liability when "(1) a defendant engages in immunized conduct and (2) no exception to immunity applies." *Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1108 (M.D. Ala. 2023) (citing *Ex Parte Cranman*, 792 So. 2d 392 (Ala. 2000)). In pertinent part, a defendant engages in immunized conduct if the conduct giving rise to the claim is based upon that State-agent-defendant's:

(1) formulating plans, policies, or designs; or
(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
    a. making administrative adjudications;
    b. allocating resources;
    c. negotiating contracts;
    d. hiring, firing, transferring, assigning, or supervising personnel; or

> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner[.]

*Ex parte Price*, 256 So. 3d 1184, 1187 (Ala. 2018) (quoting *Cranman*, 792 So. 2d at 405[4]) (internal quotation marks omitted and alterations in original). Where a state-agent claims they are immune from suit based on sections 2 and 3, *supra*, courts must ascertain whether that defendant exercised judgment in a discretionary manner. *Fleming v. Dowdell*, 434 F. Supp. 2d 1138, 1164 (M.D. Ala. 2005), *aff'd*, 182 F. App'x 946 (11th Cir. 2006). "[D]iscretionary functions [are] acts [where] there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Id.* (internal quotation marks and citation omitted).

Here, Defendant Baker indisputably engaged in immunized conduct: he exercised his discretionary judgment and authority in operating as SCCF's shift commander and lieutenant and supervising its inmates and his staff. (Doc. 34 ¶ 34).

The undisputed evidence also demonstrates that Plaintiff cannot prove that an exception to state-agent immunity exists. State-agent immunity "*is not abrogated for negligent and wanton behavior*[.]" *Giambrone v. Douglas*, 874 So. 2d 1046,

---

[4] This language was subsequently adopted in *Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000) and *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000).

1052 (Ala. 2003) (emphasis added); *see Ex parte Walker*, 188 So. 3d 633, 638 (Ala. 2015). Instead, state agents are disentitled from immunity only:

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; *or*

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Barefield*, 688 F. Supp. 3d at 1108 (quoting *Cranman*, 792 So. 2d at 405) (emphasis in original and internal quotation marks omitted). As discussed *infra*, Defendant Baker did not violate Andrews's constitutional rights.

Thus, Plaintiff must show that Defendant Baker acted "willfully, maliciously, fraudulently, in bad faith, beyond [his] authority, or under a mistaken interpretation of the law." *Id.* (quotations and internal citation omitted). Willfulness requires an "intent[ ] to cause injury[,]" *Price*, 256 So. 3d at 1191, while "[b]ad faith is not simply bad judgment or negligence. It imports a dishonest purpose…some motive of self-interest or ill will." *Hill v. Cundiff*, 797 F.3d 948, 981 (11th Cir. 2015) (quoting *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)). Furthermore, a state agent acts beyond his or her authority when that person "'fail[s] to discharge duties pursuant to rules or regulations, such as those stated on a checklist.'" *Id.* (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000)). Those "rules or regulations must be so 'detailed' as to 'remove a State-agent's judgment in

27

the performance of required acts.'" *Id*. (quoting *Ex parte Spivey*, 846 So. 2d 322, 333 (Ala. 2002)). As recognized by the Alabama Supreme Court, prison supervisors and correctional officers exercise their discretionary authority in the performance of their duties and responsibilities at a prison and, therefore, retain their judgment in performing those duties. *See Ex parte Ala. Dep't of Corr.*, 201 So. 3d 1170, 1180-81 (Ala. 2016). Finally, to establish action under a misinterpretation of the law, Plaintiff must point to record evidence indicating they acted with "willfulness, maliciousness, or bad faith." *Hill*, 797 F.3d at 982.

Here, the record is devoid of evidence showing that Defendant Baker's conduct falls within this second exception to state-agent immunity. Ultimately, the Alabama Supreme Court has stressed "the importance of taking into account real-world situations" in a custodial setting. *Moore v. Tyson*, 333 So. 3d 668, 676 (Ala. 2021). Based on the real-world, daily duties and functions of Alabama correctional professionals, Defendant Baker is entitled to state-agent immunity and, therefore, judgment as a matter of law.

### B. Plaintiff's Wrongful Death Claims Cannot Survive Summary Judgment.

"Alabama's wrongful-death statute provides that '[a] personal representative may commence an action and recover […] damages […] for the wrongful act, omission, or negligence of any person […] whereby the death of the […] intestate was caused, provided the […] intestate could have commenced an action for the

wrongful act, omission, or negligence if it had not caused death.'" *Ex parte Rodgers*,

141 So. 3d 1038, 1042 (Ala. 2013) (quoting Ala. Code § 6-5-410(a) (1975)). To

prove wrongful death, a plaintiff must produce evidence as to the existence of the

basic tort elements: duty, breach, causation, and damages.[5] *See Vinson v. Clark*

*Cnty., Ala.*, 10 F. Supp. 2d 1282 (S.D. Ala. 1998); *Prill v. Marrone*, 23 So. 3d 1, 6

(Ala. 2009).

The policies and procedures adopted by Defendant Baker need not have been

*perfect*, nor need his implementation or oversight of such policies and procedures

have been *flawless*. The duty of care requires only that Defendant Baker exercise

"such care as a reasonably prudent person would have exercised under the same or

similar circumstances." *See Sanders v. Scarvey*, 224 So. 2d 247, 250 (Ala. 1969).

Further, "[i]t is axiomatic that proof of [wrongful death] requires the establishment

of a breach of a duty flowing from the defendant to the plaintiff which proximately

causes damage to the plaintiff." *Thompson v. Lee*, 439 So. 2d 113, 115 (Ala. 1983)

(citations omitted); *see also Hughes v. Marley*, 390 So. 3d 545, 549 (Ala. 2023).

Proximate cause is "'an act or omission that in a natural and continuous sequence,

unbroken by any new independent causes, produces the injury and without which

---

[5] Under Alabama law, succeeding on a wrongful death claim requires a plaintiff to establish all
four elements; where even one element is not proven, the cause of action fails. *See Robinson v.*
*Baptist Health Sys., Inc.*, 24 So. 3d 1119, 1122 (Ala. Civ. App. 2009) (quotation citation omitted)
("If the nonmovant cannot produce sufficient evidence to prove each element of its claim, the
movant is entitled to summary judgment, for a trial would be useless.").

the injury would not have occurred.'" *Id.* (quoting *Thetford v. City of Clanton*, 605 So. 2d 835, 840 (Ala. 1992)).

1. *Defendant Baker Exercised Due Care.*

In Count IX, Plaintiff alleges that Defendant Baker failed to "safely house [ ] Andrews, [ ] protect him from violence by other prisoners, and [ ] ensure the provision of adequate medical care." (Doc. 34 ¶ 315-16). Plaintiff also alleges that Defendant Baker, as a supervisor, "failed to take [certain] steps" to remedy the "acute security crisis at St. Clair[,]" (*id.* at ¶¶ 317, 318) which are the same allegations that make up Plaintiff's deliberate indifference claim against Defendant Baker, *supra.* Further, in Count X, Plaintiff alleges that Defendant Baker breached his duty of care by "disregard[ing] the substantial risk that [ ] Andrews would be seriously harmed by [ ] Davis[.]" (*Id.* at ¶¶ 329, 330). Moreover, Plaintiff claims that Defendant Baker failed to "adequately supervise[] and monitor[]" P dormitory on December 29, 2018 and "ensure that contraband searches were carried out and contraband weapons confiscated[.]" (*Id.* at ¶ 337).

However, Defendant Baker did not breach any duty. Specifically, Defendant Baker ensured security positions were manned in the P and Q dorms, (Doc. 190-rr p. 1); monitored inmates in the dormitories, yard, chow hall, and other locations, (Doc. 190-M at 20:7-9), and walked through the dormitories at least once daily, (*id.* at 61:8-11); called inmate counts and verified the overall number of inmates at the

facility, (*id*. at 23:18-22, 24:1-9); disciplined staff and inmates, (*id*. at 20:12-14, 22:4-21, 82:23-83:3); worked with CERT teams in enhancing SCCF's security, (*id*. at 47:17-48:1); performed contraband searches, (*id*. at 46:22-47:1), and oversaw the performance of them by other staff, (*id*. at 26:4-8; Doc. 190-H at 39:14-23, 42:22-23); performed daily security checks, (Doc. 190-M at 62:15-21); investigated inmate safety concerns by performing interviews and evaluating inmates' housing placements, (*id*. at 69:11-22); reported inmate safety concerns up the chain, (*id*. at 70:8-15); and helped to remove more dangerous, gang-affiliated inmates out of SCCF, (Doc. 190-ww p. 1). Therefore, Defendant Baker exercised due care in the following of SCCF's policies and customs as it relates to Andrews.

As a shift sergeant, Sergeant Weaver was responsible for ensuring that subordinate officers performed the required contraband searches. (Doc. 190-F 141:23-142:10). The lieutenants were then responsible for ensuring sergeants performed their duties (*Id*.). The record, however, lacks any indication that Sergeant Weaver failed to ensure correctional officers were performing contraband searches or that Defendant Baker failed to ensure Sergeant Weaver was overseeing the subordinate officers. As Mr. Myers opined in his Report, SCCF staff complied with SCCF and ADOC policies and procedures as it relates to the incident made the basis of this litigation. (Doc. 183-H p. 39).

As for any specific risk to Andrews posed by Davis, two inmates who were

cellmates, (Doc. 190-U p. 1), and friends, (Doc. 190-B 24:20-25:1), there is no evidence to indicate that Davis ever posed a security risk to Andrews prior to this assault. There is also no evidence that there was a risk of which staff were aware. On December 29, 2018, Defendant Baker ensured there was sufficient staff in P dormitory, (Doc. 190-rr p. 1), and oversaw that P dormitory had its assigned number of inmates during three different counts, (*id*. at 5). Further, Defendant Baker visited P dormitory twice the morning of December 29, 2018. (*Id*. at 5). Thus, the undisputed evidence reveals that Defendant Baker exercised due care in his direct duty to Andrews. Therefore, Defendant Baker is entitled to summary judgment on Counts IX and X.

2.  *Any Alleged Breach Did Not Cause Andrews's Injuries*.

Because Defendant Baker did not violate Andrews's constitutional rights, *supra*, he cannot be said to have caused the injury to Andrews sufficient to hold him liable for Count IX. Moreover, the record is devoid of evidence demonstrating any action or inaction by Defendant Baker, as a supervisor, that caused Davis's assault of Andrews as it relates to the policies and procedures of SCCF. In fact, Plaintiff cannot provide any evidence of SCCF policies or procedures, or Defendant Baker's enforcement or lack thereof of those procedures, that caused Andrews's death. This incident was a surprise attack following a disagreement between Davis and Andrews in their cell over Andrews's sexual habits. (Doc. 185-P14 p. 2).

32

As for Count X, Alabama law recognizes that a defendant will not be held liable despite his negligence if "'some independent agency intervenes and is the immediate cause of the injury.'" *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1275 (Ala. 1993). Such an act will break the chain of causation if the intervening act, by itself, is sufficient to be considered the sole cause of the injury. *Id.* Here, Davis attacked Andrews without any warning to any SCCF staff, (Doc. 183-G p. 46; Doc. 190-H at 141:16-19), and neither inmate had trouble with the other prior to this incident, (Doc. 190-B 25:16-21).

Should this Court not find that inmate Davis was the intervening, superseding cause of Andrews's death, Defendant Baker, specifically, lacked any notice that Davis was going to assault Andrews. (Doc. 190-M at 163:4-7). There is no evidence to support Plaintiff's claims that Defendant Baker was aware of a risk to Andrews and disregarded it. Moreover, Andrews had never expressed a fear for his safety in P dormitory at SCCF nor expressed a fear of Davis. (Doc. 190-H at 140:18-20; Doc. 183-E at 52:11-14, 166:18-167:4). Thus, the undisputed evidence demonstrates that a reasonable prison official in Defendant Baker's position would not have foreseen that the assault on Andrews was a probable result of his actions.

## CONCLUSION

This Court should grant Defendant Baker's Motion for Summary Judgment, (Doc. 184), because there is no genuine dispute as to any material fact, and Plaintiff

cannot establish claims for failure-to-protect and wrongful death based on the record evidence. Nonetheless, should this Court find differently, Defendant Baker is entitled to qualified and state-agent immunity. Therefore, Defendant Baker is entitled to judgment as a matter of law and dismissal with prejudice.

Respectfully submitted this the 28th day of January 2025.

/s/ Caitlin E. Cobb
W. ALLEN SHEEHAN (ASB-7274-L69S)
JAMES N. WALTER, JR. (ASB-2722-R68J)
C. RICHARD HILL, JR. (ASB-0773-L72C)
CAITLIN E. COBB (ASB-2959-B3E)
W. JACKSON BRITTON (ASB-8252-K46-Y)
*Attorneys for Defendant Larry Baker*

CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: allen.sheehan@chlaw.com
    jimmy.walter@chlaw.com
    rick.hill@chlaw.com
    caitlin.cobb@chlaw.com
    jackson.britton@chlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of January 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record (and by U.S. Mail to non-CM/ECF participants) as indicated below:

R Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP, LLC**
2170 Highland Ave S, Suite 250
Birmingham, AL 35205
anil@dagneylaw.com

Megan Collen Pierce
Ruth Zemel Brown
Quinn Rallins
**LOEVY & LOEVY**
311 North Aberdeen Street, 3rd Floor
Chicago, IL 60607
megan@loevy.com
ruth@loevy.com
quinn@loevy.com

William R. Lunsford
Matthew B. Reeves
William J. Cranford, III
**BUTLER SNOW, LLP**
200 West Side Square
Huntsville, AL  35801
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
Will.cranford@butlersnow.com

/s/ *Caitlin E. Cobb*
**OF COUNSEL**

35