# Prison Rape Elimination Act (PREA) Audit Report
## Adult Prisons & Jails

☒ Interim    ☐ Final

**Date of Report**  June 4, 2018

## Auditor Information

Name: Dave Cotten    Email: dave@preaauditing.com

Company Name: PREA Auditors of America, LLC

Mailing Address: 266 River Ridge Road    City, State, Zip: Hotchkiss, CO 81419

Telephone: (970)250-5719    Date of Facility Visit: May 1-3, 2018

## Agency Information

Name of Agency:
Alabama Department of Corrections

Governing Authority or Parent Agency (if Applicable):
Click or tap here to enter text.

Physical Address: 301 South Ripley Street    City, State, Zip: Montgomery, Alabama 36104

Mailing Address: Click or tap here to enter text.    City, State, Zip: Click or tap here to enter text.

Telephone: (334)353-3883    Is Agency accredited by any organization? ☐ Yes  ☒ No

| The Agency is: | | | |
|---|---|---|---|
| | ☐ Military | ☐ Private for Profit | ☐ Private not for Profit |
| ☐ Municipal | ☐ County | ☒ State | ☐ Federal |

Agency mission: The mission of the ADOC is to confine, manage and provide rehabilitative programs for convicted felons in a safe, secure and humane environment, utilizing professionals who are committed to public safety and to the positive re-entry of offenders into society.

Agency Website with PREA Information: http://www.doc.state.al.us/PREA.aspx

## Agency Chief Executive Officer

Name: Jefferson S. Dunn    Title: Commissioner

Email: Jefferson.Dunn@doc.alabama.gov    Telephone: 334-353-3870

## Agency-Wide PREA Coordinator

Name: Christy Vincent    Title: PREA Director

HIGHLY CONFIDENTIAL

**PLAINTIFF'S EXHIBIT**
**18**

ADOC-DS027451

| Email: | Christ.Vincent@doc.alabama.gov | Telephone: | 334-353-2501 |
|---|---|---|---|

| PREA Coordinator Reports to:<br><br>Ann Hill, Chief of Staff | Number of Compliance Managers who report to the PREA Coordinator    26 full time and 26 back-ups |
|---|---|

## Facility Information

| Name of Facility: | St. Clair Correctional Facility |
|---|---|

| Physical Address: | 1000 St. Clair Road, Springville, Alabama 35146 |
|---|---|

| Mailing Address (if different than above): | Click or tap here to enter text. |
|---|---|

| Telephone Number: | 205-467-6111 |
|---|---|

| The Facility is: | ☐ Military | ☐ Private for profit | ☐ Private not for profit |
|---|---|---|---|
| ☐ Municipal | ☐ County | ☒ State | ☐ Federal |

| Facility Type: | ☐ Jail | ☒ Prison |
|---|---|---|

**Facility Mission:** The mission of the ADOC is to confine, manage and provide rehabilitative programs for convicted felons in a safe, secure and humane environment, utilizing professionals who are committed to public safety and to the positive re-entry of offenders into society.

**Facility Website with PREA information:** http://www.doc.state.al.us/PREA.aspx

## Warden/Superintendent

| Name: | DeWayne Estes | Title: | Warden III |
|---|---|---|---|
| Email: | Dewayne.estes@doc.alabama.gov | Telephone: | 205-467-6111 ext 101 |

## Facility PREA Compliance Manager

| Name: | Angelia Gordy | Title: | Institutional PREA Compliance Manager (IPCM) |
|---|---|---|---|
| Email: | Angelia.Gordy@doc.alabama.gov | Telephone: | 205-467-6111 ext 630 |

## Facility Health Service Administrator

| Name: | Kelly Phillips | Title: | Health Service Administrator |
|---|---|---|---|
| Email: | kelly.Phillips@corizonhealth.com | Telephone: | 205-467-6111 |

## Facility Characteristics

| Designated Facility Capacity: 1123 | Current Population of Facility: 990 |
|---|---|

| Number of inmates admitted to facility during the past 12 months: | 350 |
|---|---|

HIGHLY CONFIDENTIAL

ADOC-DS027452

| | | |
|---|---|---|
| Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for 30 days or more: | | 350 |
| Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for 72 hours or more: | | 350 |
| Number of inmates on date of audit who were admitted to facility prior to August 20, 2012: | | Click or tap here to enter text. |
| Age Range of Population: | Youthful Inmates Under 18: none | Adults: 18 & up |
| Are youthful inmates housed separately from the adult population? | | ☐ Yes ☐ No ☒ NA |
| Number of youthful inmates housed at this facility during the past 12 months: | | 0 |
| Average length of stay or time under supervision: | | N/A |
| Facility security level/inmate custody levels: | | 5/3-5 |
| Number of staff currently employed by the facility who may have contact with inmates: | | 172 |
| Number of staff hired by the facility during the past 12 months who may have contact with inmates: | | 30 |
| Number of contracts in the past 12 months for services with contractors who may have contact with inmates: | | Left blank |

## Physical Plant

| | |
|---|---|
| Number of Buildings: 22 | Number of Single Cell Housing Units: 6 |
| Number of Multiple Occupancy Cell Housing Units: | 14 |
| Number of Open Bay/Dorm Housing Units: | 2 |
| Number of Segregation Cells (Administrative and Disciplinary): | 216 |

Description of any video or electronic monitoring technology (including any relevant information about where cameras are placed, where the control room is, retention of video, etc.):

Video in all dorms except H dorm, breezeway; segregation entrance gate, segregation and Visitation A dorm entrance gate

## Medical

| | |
|---|---|
| Type of Medical Facility: | Infirmary |
| Forensic sexual assault medical exams are conducted at: | Rape Crisis Center of Birmingham |

## Other

| | |
|---|---|
| Number of volunteers and individual contractors, who may have contact with inmates, currently authorized to enter the facility: | 165 |
| Number of investigators the agency currently employs to investigate allegations of sexual abuse: | 27 agency wide |

HIGHLY CONFIDENTIAL

ADOC-DS027453

# Audit Findings

## Audit Narrative

*The auditor's description of the audit methodology should include a detailed description of the following processes during the pre-onsite audit, onsite audit, and post-audit phases: documents and files reviewed, discussions and types of interviews conducted, number of days spent on-site, observations made during the site-review, and a detailed description of any follow-up work conducted during the post-audit phase. The narrative should describe the techniques the auditor used to sample documentation and select interviewees; and the auditor's process for the site review.*

St. Clair Correctional Facility provided the Pre-Audit Questionnaire and compliance files electronically to the auditor 30 days prior to the on-site phase of the facility's National PREA Audit on May 1, 2 & 3, 2018. This is St. Clair's second National Audit. Auditor reviewed files, completed the pre-onsite phase of the audit tool, and requested, via e-mail, additional documentation upon arrival at the facility. Primary auditor is Dave Cotten with assistance from Jeff Kovar. Both auditors subcontracted with PREA Auditors of America, LLC for this audit. Primary auditor spent approximately 30 hours over three days on site with the second auditor spending approximately 24 hours over two days on site.

Auditors arrived at the facility on 5/1/18 at approximately 8:00am and met with Warden Brooks, IPCM Gordy and Lt Ragsdale, back up to the IPCM.. A tour of the facility was then conducted with Lt. Gordy, Lt. Ragsdale and Auditor Cotten. Noted during the tour was the placement of cameras, the number of staff on duty, cleanliness of the complex and the number of inmates in the housing units at that time of day. Numerous issues of concern were noted during the tour. Some are addressed below, others to be addressed in the standards compliance section.

- Numerous inmates were seen violating rules, sometimes challenged by staff and sometimes not. When challenged, several of the inmates appeared to not be concerned with the challenge and continued what they were doing in violation of rules.
- From previous knowledge of the facility's policy of separating identified victim prone inmates from identified abusive prone inmates by placing victim prone on one side of housing unit and abusiveness prone inmates on the other side and the doors to each side being controlled by staff, it was obvious practice was not in place. The policy requires inmates to wear colored wrist bands to indicate which side of the unit they are allowed to access. The majority of inmates observed were not wearing wrist bands and staff granting access to the different sides of the unit did not check wrist bands. The access doors to the "honor" unit are left unsecure on both sides, reportedly due to collapsing that control room's post as a result of staffing shortages, allowing inmates from both sides to walk freely between the two sides. The reasoning provided to the auditor was that because it was an "honor" unit, the inmates were less likely to violate sexual abuse rules because they did not wish to lose the honor status.
- The open bay living unit areas had sheets and blankets hanging off of numerous top bunks creating (by inmates) a large number of blind spots not visible to staff and not under camera.
- Some bathroom lock concerns and toilets not sufficiently covered, in work and program areas, which allowed passing staff to see inmates using the toilet. (corrected)
- All staff (and some inmates) the auditor engaged in conversation during the tour discussed how poorly staffed the facility was and that much of the inmate rule violations were because there were not staff available to oversee inmate activity. Some staff added that they were concerned to challenge inmates on rule violations for fear of creating a negative inmate response that could not be contained.
- Camera placement was appropriate but minimal and not in adequate numbers to provide sufficient support for the minimal staffing. Numerous cameras had been damaged by the inmates and were

ADOC-DS027454

not usable. Requests for replacement and additional cameras are in place but have not yet been approved or obtained.

- Of a total allotment of 315 full time security staff allotted to the facility, 127 are actually assigned. With this type of inmate to security staff ratio, in a level five facility, the ability to protect inmates from sexual abuse and sexual harassment is highly questionable

Inmates and staff were questioned about inmates' ability to use bathrooms, showers, etc… without staff, of the opposite gender, viewing them and about staff of the opposite gender announcing their presence in the housing areas. Announcements of female staff entering the male only housing units was observed.

Interviews with staff and inmates began immediately after the in briefing and continued throughout day 3. A total of 16 random staff from both of the 12-hour shifts were interviewed as well as 16 specialized staff, two of which were previous interviews of the agency head, Associate Commissioner Culliver and agency PREA Director, Christy Vincent. Three contract staff were interviewed and two volunteers. A SANE nurse at the local rape crisis center was interviewed.

Forty-four inmates were interviewed. 23 inmates from all housing units were randomly selected by the auditor. Additionally, targeted inmates were interviewed including disabled/LEP inmates, inmates who disclosed sexual victimization, inmates who reported sexual abuse and LBGTI inmates.

Upon conclusion of the on-site visit, the primary auditor met with the Warden, Lt. Gordy and Lt. Ragsdale. The auditor thanked the Warden and the staff for the hospitality provided to the auditors and mentioned several staff who were exceptionally helpful. An overview provided was provided.

During the post on-site audit phase, the auditor maintained regular contact, mostly via email, of further requested documents and issues of concern. The PREA Director and PREA Compliance Manager responded professional and timely. The auditor used the Auditor Compliance Tool for Adult Prison and Jails as a guide to determining compliance or non-compliance with each standard relying on the documents provided, the tour of the physical plant and the interview responses.

Also, during the post on-site audit phase, the agency and facility were given the opportunity to show compliance in deficient areas prior to the submittal of the original report. Some of these issues could be and were addressed through additional documentation to show compliance, some required policy/practice changes and some were not attainable (a pattern of compliance must be shown beyond the short time between on-site and report completion) prior to the report completion. The PREA Director and IPCM showed an amazing level of commitment and effort to come into compliance and show that compliance where the could.

## Facility Characteristics

*The auditor's description of the audited facility should include details about the facility type, demographics and size of the inmate, resident or detainee population, numbers and type of staff positions, configuration and layout of the facility, numbers of housing units, description of housing units including any special housing units, a description of programs and services, including food service and recreation. The auditor should describe how these details are relevant to PREA implementation and compliance.*

St. Clair Correctional Facility is a level five, maximum custody level facility in the Alabama Department of Corrections. St. Clair Correctional Facility opened on June 2, 1983 with a current capacity of 1123 maximum and below custody inmates. The facility is located on 600 acres with 62 acres fenced within the secure

HIGHLY CONFIDENTIAL

perimeter. St. Clair maintains about 235 life without parole inmates. It is located in the area of Springville, Alabama in northern St. Clair County. The facility consists of 14 housing units to include 5 Infirmary single beds, and 216 beds for Segregation, a vocational trade school, Alabama Correctional Industry Plant, and a dialysis unit, a gym with a full size basketball court, and a hobby shop. Area includes a full size soft ball field, weights area, Native American spiritual grounds, Wiccan prayer area, law library, and general-purpose library.

Programs available to inmates at St. Clair include: adult basic education (ABE), therapeutic community program, anger management, stress management, coping with incarceration, motivation for change, etc..., and Gadsden State Community College offering electrical, welding, masonry, GED, and HVAC. The ACI plant consists of: upholstery plant, chemical plant, furniture restoration, automotive repair shop, and automotive body shop, Christian and Muslim and other faith base programs.

Staffing consists of 231 full time officers, part time officers, supervisors, and support personnel comprised of maintenance, ACI, laundry, food service, trade school, classification, Clerical, chaplains, and communications personnel. The executive staff of St. Clair is comprised of a Warden III, a Warden II, a Warden I, Segregation Captain, Administrative Captain, and a Population Captain.

## Summary of Audit Findings

*The summary should include the number of standards exceeded, number of standards met, and number of standards not met, along with a list of each of the standards in each category. If relevant, provide a summarized description of the corrective action plan, including deficiencies observed, recommendations made, actions taken by the agency, relevant timelines, and methods used by the auditor to reassess compliance.*

**Auditor Note:** *No standard should be found to be "Not Applicable" or "NA". A compliance determination must be made for each standard.*

**Number of Standards Exceeded:**          two (2)

115.31 & 115.81

**Number of Standards Met:**          Thirty-six (40)

Click in tap here to enter text.

**Number of Standards Not Met:**          Three (3)

115.42, 115.67, 115.76

## Summary of Corrective Action (if any)

At the conclusion of the on-site visit, ADOC and/or SCCF were non-compliant on seven (7) standards as listed below ( 115.13, 115.15, 115.17, 115.42, 115.53, 115.67, 115.76).

HIGHLY CONFIDENTIAL

Four (4) of those standards were corrected with verifying documentation provided leaving the three above as non-compliant. SCCF has completed a plan of action to show compliance with each of these and will be verified by a review of confirming documentation at a subsequent auditor on-site visit. Due to the seriously of the noncompliance issues in two of the standards, the auditor determined the subsequent visit necessary to witness the procedure and practice instituted to continually comply.

115.13 (d)  **Corrective action:**
Staff need to be informed what constitutes intermediate and higher-level staff and the facility needs to produce logs from the time of the on-site of more intermediate or higher level staff unannounced rounds for both shifts.

**Action taken:**  The Warden issued a directive that future PREA unannounced rounds will be conducted by lieutenants and above.  Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report.  Copies of SCCF's form documenting unannounced rounds by intermediate or higher level staff only were provided to the auditor prior to submitting the original report.  Facility is now compliant.

115.15 (d)  **Corrective action:** SCCF needs to provide the inmates in the vocational area the opportunity to toilet without being viewed by staff of the opposite gender.

**Action taken:**  SCCF provided photographic evidence of swing doors being placed on the stalls to the above-mentioned toilet areas.  This resolves this corrective action prior to the submitting of the facility report.  Facility is now compliant.

115.17  **Corrective action:** The agency/facility need to produce copies of completed background checks or verification of same, for a random selection of staff (security and non-security), contractors/volunteers and provide copies of completed forms 216-B & C.  A roster showing when background checks were completed on all staff at SCCF.

**Action taken:**  ADOC and SCCF provided requested documents prior to submitting the original report. Facility is now compliant.

115.42 **Corrective action:** The facility needs to establish a means to keep identified high risk victims separate from high risk predators as outlined in the auditor's observations of this standard. Auditor is to be advised when the system is established and fully functional. Auditor (or alternate) will conduct a site visit after a period of time, not to exceed 90 days from implementation, to confirm a functional system and that practice is being adhered and determine an acceptable pattern of compliance for the safety of inmates from sexual abuse.

**Action taken:**  The Warden has issued a directive for staff to enforce the policy/procedure on separation of inmates at high risk for victimization and those at high risk for abusiveness.  Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report.  Auditor will confirm pattern of compliance.

115.53  **Corrective action:**  Facility needs to provide inmates with addresses to local, State, or National victim advocacy or crisis organizations and provide information to inmates of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.  Evidence of notification to current inmates and plan of action to consistently inform inmates needs to be provided to the auditor.

HIGHLY CONFIDENTIAL

Action taken: Facility reports it has added the above information to the inmate orientation to provide the information to new arrivals. Documentary evidence of orientation and evidence of notification to current inmates in way of photos of updated posters and flyers posted throughout the housing units and other places and copy of updated orientation with signature pages were provided to the auditor prior to submitting the original report. Facility now compliant.

115.67 Corrective action: The facility needs to establish a means to keep identified high risk victims separate from high risk predators. Auditor is to be advised when the system is established and fully functional. Auditor (or alternate) will conduct a site visit after a period of time, not to exceed 90 days from implementation, to confirm a functional system and that practice is being adhered and determine an acceptable pattern of compliance for the safety of inmates from sexual abuse.

Action taken: The Warden has issued a directive for staff to enforce the policy/procedure on separation of inmates at high risk for victimization and those at high risk for abusiveness. Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report. PREA Director and ADOC IT have developed a plan of action to upgrade the IMAS to have PREA specific identifiers added to the system, making it simpler and quicker to identify at risk persons by those who need the info. Auditor will confirm pattern of compliance.

115.76 Corrective action: ADOC/SCCF need to produce policy and/or practice that law enforcement and/or licensing bodies are notified in the case of employee/contractor termination for violating sexual abuse or sexual harassment policies.

## PREVENTION PLANNING

### Standard 115.11: Zero tolerance of sexual abuse and sexual harassment; PREA coordinator

**All Yes/No Questions Must Be Answered by The Auditor to Complete the Report.**

115.11 (a)

- Does the agency have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the written policy outline the agency's approach to preventing, detecting, and responding to sexual abuse and sexual harassment? ☒ Yes ☐ No

115.11 (b)

- Has the agency employed or designated an agency-wide PREA Coordinator? ☒ Yes ☐ No

- Is the PREA Coordinator position in the upper-level of the agency hierarchy? ☒ Yes ☐ No

- Does the PREA Coordinator have sufficient time and authority to develop, implement, and

HIGHLY CONFIDENTIAL

oversee agency efforts to comply with the PREA standards in all of its facilities?
☑ Yes ☐ No

**115.11 (c)**

- If this agency operates more than one facility, has each facility designated a PREA compliance manager? (N/A if agency operates only one facility.) ☑ Yes ☐ No ☐ NA

- Does the PREA compliance manager have sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards? (N/A if agency operates only one facility.) ☐ Yes ☒ No ☐ NA

## Auditor Overall Compliance Determination

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** Alabama Department of Corrections (ADOC) Administrative Regulation (AR) 454 states it establishes the responsibilities, policies and procedures to implement a zero-tolerance policy for prohibiting, preventing, detecting, responding to and investigating the sexual abuse and harassment of inmates under its care and control. Any sexual conduct is strictly prohibited. This policy outlines the duties of the agency wide PREA Director and the Institutional PREA Compliance Manager (IPCM)

**Other documentation:** Resumes outlining the expertise of the current PREA Director and current IPCM.

**Interviews:** PREA Director (agency coordinator)—States she has sufficient time and authority to manage here PREA related duties. She oversees 28 PREA Institutional Compliance Managers and communicates well via phone and email and meets face to face when possible.

IPCM states she has sufficient time and authority to coordinate the facility's efforts to meet PREA standards. During the course of the interview however, the IPCM indicates she has no involvement in the staffing plan and had little to no knowledge of question #4 on staffing, of the interview guide. The

HIGHLY CONFIDENTIAL

ADOC-DS027459

PREA Director provided documentation/information to indicate the IPCM is and will be involved in all aspects of the staffing.

**Finding:** Policy and other documentation is in place and interviews indicate compliance. Potential lack of involvement corrected.

## Standard 115.12: Contracting with other entities for the confinement of inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.12 (a)**

- If this agency is public and it contracts for the confinement of its inmates with private agencies or other entities including other government agencies, has the agency included the entity's obligation to comply with the PREA standards in any new contract or contract renewal signed on or after August 20, 2012? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates.) ☒ Yes ☐ No ☐ NA

**115.12 (b)**

- Does any new contract or contract renewal signed on or after August 20, 2012 provide for agency contract monitoring to ensure that the contractor is complying with the PREA standards? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates OR the response to 115.12(a)-1 is "NO".) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

ADOC-DS027460

**Policy:** ADOC AR 454 states the ADOC General Counsel is responsible for ensuring contracts fro confinement of inmates include a provision obligating contractors to comply with PREA standards to include monitoring by ADOC.

**Other documents:** Contract with GEO Group for therapeutic education facility to house ADOC offenders. Document provides for a contract monitor to oversee the contract elements including complying with PREA.

**Interview:** PREA Director provided documentation and indicated in follow-up email the GEO group has had a PREA Audit in 2016.

**Finding:** Based on policy and the current contract agreement, the agency is in compliance.

## Standard 115.13: Supervision and monitoring

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.13 (a)

- Does the agency ensure that each facility has developed a staffing plan that provides for adequate levels of staffing and, where applicable, video monitoring, to protect inmates against sexual abuse? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the generally accepted detention and correctional practices in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any judicial findings of inadequacy in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any findings of inadequacy from Federal investigative agencies in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any findings of inadequacy from internal or external oversight bodies in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration all components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated) in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the composition of the inmate population in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

- Does the agency ensure that each facility's staffing plan takes into consideration the number and placement of supervisory staff in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the institution programs occurring on a particular shift in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No ☐ NA

- Does the agency ensure that each facility's staffing plan takes into consideration any applicable State or local laws, regulations, or standards in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the prevalence of substantiated and unsubstantiated incidents of sexual abuse in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any other relevant factors in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes ☐ No

## 115.13 (b)

- In circumstances where the staffing plan is not complied with, does the facility document and justify all deviations from the plan? (N/A if no deviations from staffing plan.) ☒ Yes ☐ No ☐ NA

## 115.13 (c)

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The staffing plan established pursuant to paragraph (a) of this section? ☒ Yes ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The facility's deployment of video monitoring systems and other monitoring technologies? ☒ Yes ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The resources the facility has available to commit to ensure adherence to the staffing plan? ☒ Yes ☐ No

## 115.13 (d)

- Has the facility/agency implemented a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment? ☐ Yes ☒ No

- Is this policy and practice implemented for night shifts as well as day shifts? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027462

* Does the facility/agency have a policy prohibiting staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility? ☒ Yes ☐ No

## Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 assigns duties to the Warden of each facility to develop and document the facility staffing plan to provide for adequate staffing levels to protect inmates against sexual abuse and the PREA Director to meet annually with the Warden to assess and document any adjustments if needed.

Standing Operating Procedure (SOP) 031 defines the staffing needed to meet the staffing plan for St. Clair Correctional Facility (SCCF). SOP 094 outlines required voluntary overtime/extended shift mandatory overtime procedures.

SOP 032 defines staff manning requirements including in what order which posts to vacate due to staff availability if needed and "Closing of Post Notification" form required anytime minimum staffing is not met.

**Other documentation:**
Included in the staffing plan, other than the above listed policy, is a memo indicating the Warden and PREA Director reviewed and approved the staffing plan.
Documentation for the addition on numerous mirrors to minimize blind spots as much as mirrors can without sufficient staffing.
Examples of completed "Closing of Post Notification" forms.
Examples of work schedules
Inmate population reports
Facility schematics
Examples of daily duty rosters for security posts
Annual sexual violence report showing number of substantiated and unsubstantiated reports
Inmate Work & programs assignments for both shifts
Examples of "Log of Unannounced Rounds"

HIGHLY CONFIDENTIAL

**Interviews:** Four intermediate or higher-level staff were interviewed, and all stated the did do unannounced rounds identify and deter staff sexual abuse or harassment. Of the logs provided and reviewed, numerous unannounced rounds were conducted by sergeants or, in some cases, officers.

**Finding:** While much of the standard is in compliance as a staffing plan is in place, the auditor is very concerned with the intent of the standard and the intent of the PREA standards in general, which includes the protection of inmates from sexual abuse. Current staffing places the facility's ability to protect inmates from sexual abuse at high risk. The collapsing of critical posts to cover other critical posts. and the constant use of overtime, minimize the facilities ability to adequately supervise inmates and allow for inmates to victimize other inmates without consequence. The lack of camera coverage and video recording (while not a fix-all) of crucial areas, including blind spots, further exacerbates the issue. The lack of staffing will affect other standards as well.

The facility is not in compliance with (d) as noted in corrective action below.

While the audit process is designed to ensure agencies and facilities meet the National Standards, this auditor would be remiss in not addressing the lack of sufficient staff to protect inmates from sexual abuse/harassment. Further consequences are, of course, overall safety of staff, inmates and the public. It is highly recommended ADOC and St Clair develop and implement a plan to provide adequate staffing for St. Clair.

**Corrective actions:**
Staff need to be informed what constitutes intermediate and higher-level staff and the facility needs to produce logs from the time of the on-site of more intermediate or higher level staff unannounced rounds for both shifts.

**Action taken:** The Warden issued a directive that future PREA unannounced rounds will be conducted by lieutenants and above. Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report. Copies of SCCF's form documenting unannounced rounds by intermediate or higher level staff only were provided to the auditor prior to submitting the original report. Facility is now compliant.

## Standard 115.14: Youthful inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.14 (a)**

- Does the facility place all youthful inmates in housing units that separate them from sight, sound, and physical contact with any adult inmates through use of a shared dayroom or other common space, shower area, or sleeping quarters? (N/A if facility does not have youthful inmates [inmates ≤18 years old].) ☐ Yes ☐ No ☒ NA

**115.14 (b)**

- In areas outside of housing units does the agency maintain sight and sound separation between youthful inmates and adult inmates? (N/A if facility does not have youthful inmates [inmates ≤18 years old].) ☐ Yes ☐ No ☒ NA

ADOC-DS027464

- In areas outside of housing units does the agency provide direct staff supervision when youthful inmates and adult inmates have sight, sound, or physical contact? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes ☐ No ☒ NA

**115.14 (c)**

- Does the agency make its best efforts to avoid placing youthful inmates in isolation to comply with this provision? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes ☐ No ☒ NA

- Does the agency, while complying with this provision, allow youthful inmates daily large-muscle exercise and legally required special education services, except in exigent circumstances? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes ☐ No ☒ NA

- Do youthful inmates have access to other programs and work opportunities to the extent possible? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes ☐ No ☒ NA

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC policy 454 covers this for the agency, however this facility does not house youthful offenders.

**Other documentation:** Memo from Warden stating SCCF does not house youthful offenders.

**Findings:** Compliant as SCCF does not house youthful offenders.

## Standard 115.15: Limits to cross-gender viewing and searches

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

HIGHLY CONFIDENTIAL

**115.15 (a)**

- Does the facility always refrain from conducting any cross-gender strip or cross-gender visual body cavity searches, except in exigent circumstances or by medical practitioners?
  ☒ Yes ☐ No

**115.15 (b)**

- Does the facility always refrain from conducting cross-gender pat-down searches of female inmates in non-exigent circumstances? (N/A here for facilities with less than 50 inmates before August 20, 2017.) ☒ Yes ☐ No ☐ NA

- Does the facility always refrain from restricting female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision? (N/A here for facilities with less than 50 inmates before August 20, 2017.) ☐ Yes ☐ No ☒ NA

**115.15 (c)**

- Does the facility document all cross-gender strip searches and cross-gender visual body cavity searches? ☒ Yes ☐ No

- Does the facility document all cross-gender pat-down searches of female inmates?
  ☒ Yes ☐ No

**115.15 (d)**

- Does the facility implement a policy and practice that enables inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks? ☒ Yes ☐ No

- Does the facility require staff of the opposite gender to announce their presence when entering an inmate housing unit? ☒ Yes ☐ No

**115.15 (e)**

- Does the facility always refrain from searching or physically examining transgender or intersex inmates for the sole purpose of determining the inmate's genital status? ☒ Yes ☐ No

- If an inmate's genital status is unknown, does the facility determine genital status during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner? ☒ Yes ☐ No

**115.15 (f)**

HIGHLY CONFIDENTIAL

- Does the facility/agency train security staff in how to conduct cross-gender pat down searches in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒ Yes ☐ No

- Does the facility/agency train security staff in how to conduct searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒ Yes ☐ No

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (Substantially exceeds requirement of standards)

☒ **Meets Standard** (Substantial compliance; complies in all material ways with the standard for the relevant review period)

☐ **Does Not Meet Standard** (Requires Corrective Action)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 requires staff not conduct cross-gender strip searches except in exigent circumstances and not conduct cross-gender pat searches of female inmates.
454 also requires staff document any of the above should it happen.
ADOD AR 454 requires each facility to implement procedures that enable inmates to shower, perform bodily functions and change clothing without staff or the opposite gender viewing their breasts, buttocks, or genitals except as outlined in the standard.
Staff are also required to announce female presence when entering inmate housing.
Per AR, staff shall not search or examine a transgender or intersex offenders to determine the inmate's genital status.
AR requires the agency to train security staff on how to conduct cross-gender pat searches and searches of transgender or intersex inmates in a professional and respectful manner.

**Other documentation:** Training curriculum cross gender searches and LGBTI liabilities standards, Dealing Effectively and Professionally with LGBTI Offenders, NIC video titled "Guidance in Cross Gender and Transgender Pat Searches", sign in sheets for the above listed trainings.
**Observations:** Female staff or other staff announced any time the audit tour entered a housing unit. Informal interviews with staff and inmates indicate females are announced when the enter the units. Some inmates at the farthest point from the entrance state they do not always hear it.
Several toilets in the Gadsden State Community College area were found to be in open view of persons passing by the bathroom area.
Female inmates are transported from other facilities for dental appointments at SCCF. The auditor witnessed female staff, not assigned to a post, being requested and used for the pat search of the females.

HIGHLY CONFIDENTIAL

**Interviews:** As reported by the IPCM, SCCF has never had an incident of non-medical cross gender strip or body cavity search or male pat search of female inmates. Female staff, including the IPCM, are used to pat search females, from other facilities, visiting the dental area at SCCF.

All but four random staff interviewed stated they knew there was policy against searching an inmate to determine genital status, nor would they. Three stated they were not aware. One stated they knew not to do that kind of search but did not know it was in policy.

All but one random staff stated they received cross gender/transgender search training within the last 2 months to two years. One random staff stated they knew nothing about searching transgender inmates: one stated male staff would conduct the search; one stated female staff would conduct the search; one was unsure of the practice; one stated they received the training but did not remember the practice as they work in the cubicle only and does not search inmates.

**Finding:** Based on the information above, the facility is in compliance with elements (a), (b), (c) (e) & (f). Toilets exposed in a non-housing unit area results in non-compliance with (d).

**Corrective actions:** SCCF need to provide the inmates in the vocational area the opportunity to toilet without being viewed by staff of the opposite gender.

**Action taken:** SCCF provided photographic evidence of swing doors being placed on the stalls to the above-mentioned toilet areas. This resolves this corrective action prior to the submitting of the facility report. Facility is now compliant.

## Standard 115.16: Inmates with disabilities and inmates who are limited English proficient

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.16 (a)

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect and respond to sexual abuse and sexual harassment, including: inmates who are deaf or hard of hearing? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who are blind or have low vision? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have intellectual disabilities? ☒ Yes ☐ No

ADOC-DS027468

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have psychiatric disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have speech disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: Other (if "other," please explain in overall determination notes)? ☒ Yes ☐ No

- Do such steps include, when necessary, ensuring effective communication with inmates who are deaf or hard of hearing? ☒ Yes ☐ No

- Do such steps include, when necessary, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have intellectual disabilities? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have limited reading skills? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Are blind or have low vision? ☒ Yes ☐ No

## 115.16 (b)

- Does the agency take reasonable steps to ensure meaningful access to all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient? ☒ Yes ☐ No

- Do these steps include providing interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

## 115.16 (c)

- Does the agency always refrain from relying on inmate interpreters, inmate readers, or other types of inmate assistance except in limited circumstances where an extended delay in

HIGHLY CONFIDENTIAL

obtaining an effective interpreter could compromise the inmate's safety, the performance of first-response duties under §115.54, or the investigation of the inmate's allegations? ☒ Yes ☐ No.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 directs the IPCM provide PREA education if formats to meet the needs of visually impaired, deaf, limited reading skills or otherwise disabled, not relying on inmates for this service and provide verbal, visual, and written information regarding PREA during orientation.

**Other documentation**: Memo in file indicates access to the Alabama Institute for the Deaf and Blind (AIDB) and IPCMs have access to "Google Translate" services.
Memos in file showing many quarters without the need of translator services.
PREA audit documents in written Spanish in file.
Brochure from AIDB in file.
Inmate acknowledge form that the inmate signs indicating he understands.
Intake PREA acknowledgement forms in Spanish, Vietnamese and English
"What you Should Know" brochures in English and Spanish

**Interviews**: Two inmates interviewed: one visually impaired who stated he was given the information through a video that he could hear and intake staff verbally went over the orientation, including PREA with him; the other was hearing impaired and communicated verbally to staff typing questions via a computer screen. He indicated that is how he received the PREA information and stated he had seen the posters and booklets on PREA and a card. Both inmates stated they knew how to report and understood their rights under PREA.

**Finding**: Based on policy, other documentation and interviews the agency and facility are compliant.

## Standard 115.17: Hiring and promotion decisions

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report:**

ADOC-DS027470

## 115.17 (a)

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)? ☒ Yes ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse? ☒ Yes ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above? ☒ Yes ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)? ☒ Yes ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse? ☒ Yes ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above? ☒ Yes ☐ No

## 115.17 (b)

- Does the agency consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates? ☐ Yes ☒ No

## 115.17 (c)

- Before hiring new employees, who may have contact with inmates, does the agency: perform a criminal background records check? ☐ Yes ☒ No

- Before hiring new employees, who may have contact with inmates, does the agency: consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse? ☐ Yes ☒ No

## 115.17 (d)

HIGHLY CONFIDENTIAL

- Does the agency perform a criminal background records check before enlisting the services of any contractor who may have contact with inmates? ☐ Yes ☒ No

## 115.17 (e)

- Does the agency either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees? ☐ Yes ☒ No

## 115.17 (f)

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in written applications or interviews for hiring or promotions? ☒ Yes ☐ No

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in any interviews or written self-evaluations conducted as part of reviews of current employees? ☒ Yes ☐ No

- Does the agency impose upon employees a continuing affirmative duty to disclose any such misconduct? ☒ Yes ☐ No

## 115.17 (g)

- Does the agency consider material omissions regarding such misconduct, or the provision of materially false information, grounds for termination? ☒ Yes ☐ No

## 115.17 (h)

- Does the agency provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work? (N/A if providing information on substantiated allegations of sexual abuse or sexual harassment involving a former employee is prohibited by law.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

HIGHLY CONFIDENTIAL

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires the Director of Investigations and Intelligence to conduct criminal background records check on anyone being considered for promotion, hire or rehire.
ADOC AR 454 also states the department prohibits the hiring or promotion of an employee or contractor under element (a) 1, 2 & 3 of this standard; and requires the ADOC Personnel Division to conduct criminal background checks, contact prior institutional employers and ask potential employees about previous misconduct and apprise same that false info or material omissions shall be grounds for termination and that they have a continuing duty to disclose such conduct. Policy requires background checks every five years and states ADOC considers any incidents of sexual harassment in deciding whether to hire or promote and employee or contractor.

**Other documentation**: Files included a blank application for examination which requires the potential employee to sign acknowledging false or deceptive information is grounds for termination.
A blank ADOC Departmental Questionnaire requiring criminal history disclosure, employment history disclosure, military history disclosure, etc.
ADOC Personal Information Sheet (ADOC Form 216-C) requiring arrest record, family arrest record, inappropriate sexual activity, sexual abuse, and sexual harassment history, etc....
ADOC PREA letter (ADOC Form 216-B) to all applicants, which requires signature by the applicant, requiring applicants to answer questions on being accused or charged with the same, employment at institutions with at risk persons and any investigations involving sexual misconduct, etc... This letter also informs applicants the omissions may be grounds for disciplinary action, including termination.

**Interviews**: The Director of Human Resources states all applicants for hire, promotion and contractors are required to complete forms 216-B and C along with the state application form. He further states security staff background checks are done through his office, contractors through their respective companies and all other staff through I & I. Background checks are through NCIC, ALACOP, NLEC and/or FBI. His office is currently behind on the five-year checks. He states they would release information to another institution upon request, although this has not happened to date.

**Finding**: Policy, other documentation and interviews indicate compliance however, the agency/facility provided no compliance evidence of completed documents of background checks, forms, etc.... Therefore, the agency/facility is non-compliant on this standard.

**Corrective action**: The agency/facility need to produce copies of completed background checks or verification of same, for a random selection of staff (security and non-security), contractors/volunteers and provide copies of completed forms 216-B & C. A roster showing when background checks were completed on all staff at SCCF.

**Action taken**: ADOC and SCCF provided requested documents prior to submitting the original report. Facility is now compliant.

HIGHLY CONFIDENTIAL

ADOC-DS027473

## Standard 115.18: Upgrades to facilities and technologies

All Yes/No Questions Must Be Answered by the Auditor to Complete the Report

### 115.18 (a)

- If the agency designed or acquired any new facility or planned any substantial expansion or modification of existing facilities, did the agency consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not acquired a new facility or made a substantial expansion to existing facilities since August 20, 2012, or since the last PREA audit, whichever is later.)
  ☐ Yes ☐ No ☒ NA

### 115.18 (b)

- If the agency installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology, did the agency consider how such technology may enhance the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology since August 20, 2012, or since the last PREA audit, whichever is later.)
  ☒ Yes ☐ No ☐ NA

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires the Warden to assist in the facility staffing plan to include electronic monitoring to protect inmates against sexual abuse and requires the PREA Director to meet annually to assess the same and make recommendations.

**Other documentation**: Schematics of the facility showing current camera placement.

**Observations**: The auditor viewed camera placement and reviewed monitors and found the camera system to be very minimal for a level five facility having a serious short staffing problem. Numerous cameras had been rendered unusable by the inmates.

HIGHLY CONFIDENTIAL

Interviews: Representative for Agency Head states cameras have been and are being considered. Priority was to the female facilities first. Likes the idea of cameras and knows it is a useful tool. The Warden states they have added some cameras to the dayrooms and have requested funding for their proposed camera plan.
The Warden also stated the facility changed the cell doors throughout as part of a PREA upgrade.

Finding: Based on policy and interviews the facility is compliant as they always consider PREA with and potential expansion or electronic upgrades.

## RESPONSIVE PLANNING

### Standard 115.21: Evidence protocol and forensic medical examinations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

#### 115.21 (a)

- If the agency is responsible for investigating allegations of sexual abuse, does the agency follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

#### 115.21 (b)

- Is this protocol developmentally appropriate for youth where applicable? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

- Is this protocol, as appropriate, adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

#### 115.21 (c)

- Does the agency offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate? ☒ Yes ☐ No

- Are such examinations performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027475

- If SAFEs or SANEs cannot be made available, is the examination performed by other qualified medical practitioners (they must have been specifically trained to conduct sexual assault forensic exams)? ☒ Yes ☐ No

- Has the agency documented its efforts to provide SAFEs or SANEs? ☒ Yes ☐ No

**115.21 (d)**

- Does the agency attempt to make available to the victim a victim advocate from a rape crisis center? ☒ Yes ☐ No

- If a rape crisis center is not available to provide victim advocate services, does the agency make available to provide these services a qualified staff member from a community-based organization, or a qualified agency staff member? ☒ Yes ☐ No

- Has the agency documented its efforts to secure services from rape crisis centers? ☒ Yes ☐ No

**115.21 (e)**

- As requested by the victim, does the victim advocate, qualified agency staff member, or qualified community-based organization staff member accompany and support the victim through the forensic medical examination process and investigatory interviews? ☒ Yes ☐ No

- As requested by the victim, does this person provide emotional support, crisis intervention, information, and referrals? ☒ Yes ☐ No

**115.21 (f)**

- If the agency itself is not responsible for investigating allegations of sexual abuse, has the agency requested that the investigating entity follow the requirements of paragraphs (a) through (e) of this section? (N/A if the agency/facility is responsible for conducting criminal AND administrative sexual abuse investigations.) ☐ Yes ☐ No ☒ NA

**115.21 (g)**

- Auditor is not required to audit this provision.

**115.21 (h)**

- If the agency uses a qualified agency staff member or a qualified community-based staff member for the purposes of this section, has the individual been screened for appropriateness to serve in this role and received education concerning sexual assault and forensic examination issues in general? [N/A if agency attempts to make a victim advocate from a rape crisis center available to victims per 115.21(d) above.] ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

HIGHLY CONFIDENTIAL

ADOC-DS027476

☐ **Exceeds Standard** (Substantially exceeds requirement of standards)

☒ **Meets Standard** (Substantial compliance; complies in all material ways with the standard for the relevant review period)

☐ **Does Not Meet Standard** (Requires Corrective Action)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon to making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires all incident be referred to the Investigations & Intelligence Division of ADOC.
ADOC I & I Division OPR 306 outlines evidence collection for I & I.

**Other documentation**: National Protocol for Sexual Assault Medical Forensic Examinations, as developed by the Office on Violence Against Women, provided in file.
MOU between ADOC and Alabama Coalition Against Rape (ACAR) providing for victim advocates from one of ACAR's crisis centers to provide confidential emotional support services to inmates: mailing address and phone number for calls, etc....
Memo from Corizon Health, SCCF medical contract provider, indicating inmates will not be charged for forensic exams.
Training logs and certificates for Corizon Health staff.

**Interviews**: A representative from the Birmingham Crisis Center, one of ACAR's crisis centers, state she is a certified SAFE/SANE and states the crisis center always has a SAFE/SANE on duty or on call. They do perform exams for SCCF inmates upon request. She further states the crisis center provides a victim advocate throughout the process or until the DA's off advocate takes over. Emotional support services are available to all inmates during incarceration and/or upon release. All services are at no cost to the inmates.
Mental Health staff at SCCF state they also provide emotional support to inmates of sexual abuse. Two of the three inmates interviewed who reported sexual abuse stated they were provided the opportunity for a SAFE/SANE and were provided a victim advocate. The third stated his incident occurred three years ago and he was never offered an exam or an advocate.
All random staff interviewed stated they knew the agency's protocol on evidence collection and that I & I was responsible for investigating sexual abuse. Most staff, when queried, covered the essentials of; separate, isolate, secure victim, separate abuser and witnesses, secure scene, manage inmates use of toilet, drinking water, brushing teeth, washing, changing clothes, etc...

**Finding**: The facility is compliant on the standard. MOU with ACAR is good and facility practice is good.

HIGHLY CONFIDENTIAL

## Standard 115.22: Policies to ensure referrals of allegations for investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.22 (a)**

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual abuse? ☒ Yes ☐ No

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual harassment? ☒ Yes ☐ No

**115.22 (b)**

- Does the agency have a policy and practice in place to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior? ☒ Yes ☐ No

- Has the agency published such policy on its website or, if it does not have one, made the policy available through other means? ☒ Yes ☐ No

- Does the agency document all such referrals? ☒ Yes ☐ No

**115.22 (c)**

- If a separate entity is responsible for conducting criminal investigations, does such publication describe the responsibilities of both the agency and the investigating entity? [N/A if the agency/facility is responsible for criminal investigations. See 115.21(a).] ☐ Yes ☐ No ☒ NA

**115.22 (d)**

- Auditor is not required to audit this provision.

**115.22 (e)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

HIGHLY CONFIDENTIAL

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 requires all incidents be reported to the I & I Division for investigation and all reports be investigated by I & I.

**Other documentation:** Memo in file identifying website.
Several incident reports in file showing as referred to I & I.

**Observations:** Auditor accessed the mentioned website and reviewed ADOC AR 454 to include all cases are referred to I & I.

**Interviews:** Two investigators from I & I were interviewed. Both stated I & I does have legal authority to investigate and refer to DA for prosecution consideration.

**Finding:** Policy, other documentation, review of the website and interviews indicate the facility is compliant with this standard. I & I is a division of ADOC and does have the legal authority to investigate. All reports are submitted to them for consideration.

---

# TRAINING AND EDUCATION

## Standard 115.31: Employee training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.31 (a)**

- Does the agency train all employees who may have contact with inmates on its zero-tolerance policy for sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

- Does the agency train all employees who may have contact with inmates on inmates' right to be free from sexual abuse and sexual harassment ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on the right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on the dynamics of sexual abuse and sexual harassment in confinement? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on the common reactions of sexual abuse and sexual harassment victims? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on how to detect and respond to signs of threatened and actual sexual abuse? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on how to avoid inappropriate relationships with inmates? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on how to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates? ☒ Yes ☐ No

- Does the agency train all employees who may have contact with inmates on how to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities? ☒ Yes ☐ No

**115.31 (b)**

- Is such training tailored to the gender of the inmates at the employee's facility? ☒ Yes ☐ No

- Have employees received additional training if reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa? ☒ Yes ☐ No

**115.31 (c)**

- Have all current employees who may have contact with inmates received such training? ☒ Yes ☐ No

- Does the agency provide each employee with refresher training every two years to ensure that all employees know the agency's current sexual abuse and sexual harassment policies and procedures? ☒ Yes ☐ No

- In years in which an employee does not receive refresher training, does the agency provide refresher information on current sexual abuse and sexual harassment policies? ☒ Yes ☐ No

**115.31 (d)**

HIGHLY CONFIDENTIAL

ADOC-DS027480

- Does the agency document, through employee signature or electronic verification, that employees understand the training they have received? ☒ Yes ⎯ No

## Auditor Overall Compliance Determination

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states the Training Director is responsible for PREA compliance training curricula for basic, in-service and specialized training.
AR 454 also states employees shall received training to include, the prevention...etc... and all training shall be documented to denote employee understanding and verified through employee signature.

**Other documentation**: Lesson plan which covers all elements of section (a) & (b) of this standard.
Brochure on "What Staff Should Know About Sexual Misconduct with Inmates"
PREA Immediate Response Procedure Card (reportedly issued to every staff)
Signature page acknowledging he staff received and understood PREA training.
Sign staff orientation memo showing PREA training as part of orientation along with an exam
Signature page for PREA & LGBTI training acknowledging understanding of the content
Copy of SCCF Newsletter with PREA information for staff
Photos of bulletin boards with PREA related information
PREA tests for staff
Minutes from staff meeting showing PREA information presented by crisis Center staff
Refresher training sign in log for IPCMs

**Observations**: Auditor noticed PREA bulletin boards in areas outside the secure area but where all staff must pass by. Auditor also reviewed information on annual "Sexual Abuse Awareness" month activities which include involving staff and inmates in information classes and presentations. Staff and inmate newsletters with PREA related information were reviewed.

**Interviews**: Of the 16 random staff interviewed one could not remember getting training on numbers 5, 6 & 7, one staff could not remember 4 and one could not remember 3. All others stated they had received training in all of the mentioned elements.

**Finding**: Exceeds Standard. Training is covered well in the initial basic training, at facility orientation, annual in-service training and by on-going presentations with updated and refresher information. The

HIGHLY CONFIDENTIAL

annual sexual abuse awareness month presentations and newsletters for staff and inmate participation is exceptional as is the informational bulletin boards for staff.

## Standard 115.32: Volunteer and contractor training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.32 (a)

- Has the agency ensured that all volunteers and contractors who have contact with inmates have been trained on their responsibilities under the agency's sexual abuse and sexual harassment prevention, detection, and response policies and procedures? ☒ Yes ☐ No

115.32 (b)

- Have all volunteers and contractors who have contact with inmates been notified of the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents (the level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates)? ☒ Yes ☐ No

115.32 (c)

- Does the agency maintain documentation confirming that volunteers and contractors understand the training they have received? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐      **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒      **Meets Standard** (*Substantial compliance, complies in all material ways with the standard for the relevant review period*)

☐      **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Policy: ADOC AR 454

Other documentation: Sign in logs for volunteer training on PREA

HIGHLY CONFIDENTIAL

MOU with Corizon (medial contractor) which includes all Corizon staff will receive PREA training. Training logs and acknowledgement forms with signatures.

Email chain showing contractors could not begin their program until PREA training for contactors was complete.

Training lesson plan overview titled "PREA Training for Volunteer and Contractors" with acknowledgement of understanding and signature.

Lesson plan titled "What you need to know as a volunteer: PREA and creating safety for offenders" as derived from the Moss Groups training.

**Interviews**: All contractors/volunteers interviewed stated they had received PREA specific training that included the zero-tolerance policy and how to report sexual abuse or harassment.

**Finding**: A review of the training lesson plan overview and the documentation indicating all contractors and volunteers had been trained and interviews that they had good knowledge of their training indicates the agency and facility meet the elements of this standard.

## Standard 115.33: Inmate education

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.33 (a)

- During intake, do inmates receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment? ☒ Yes ☐ No

- During intake, do inmates receive information explaining how to report incidents or suspicions of sexual abuse or sexual harassment? ☒ Yes ☐ No

115.33 (b)

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from sexual abuse and sexual harassment? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from retaliation for reporting such incidents? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Agency policies and procedures for responding to such incidents? ☒ Yes ☐ No

115.33 (c)

- Have all inmates received such education? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

- Do inmates receive education upon transfer to a different facility to the extent that the policies and procedures of the inmate's new facility differ from those of the previous facility? ☒ Yes ☐ No

**115.33 (d)**

- Does the agency provide inmate education in formats accessible to all inmates including those who are limited English proficient? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are deaf? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are visually impaired? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are otherwise disabled? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who have limited reading skills? ☒ Yes ☐ No

**115.33 (e)**

- Does the agency maintain documentation of inmate participation in these education sessions? ☒ Yes ☐ No

**115.33 (f)**

- In addition to providing such education, does the agency ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does*

HIGHLY CONFIDENTIAL

*not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states inmates will be given verbal and written information on zero-tolerance PREA policy and how to report upon initial intake into any ADOC Institution; and receive comprehensive PREA education orientation by an IPCM within 30 days of arrival; and be provided such education in formats for any inmate with special needs such as language barriers, visually impaired, deaf, limited reading skills or otherwise disabled.

**Other documentation**: Memo stating what inmates are given at their initial orientation at SCCF which includes four PREA Orientation Handouts, card containing victim support hotline number and call times, inmate request slip, and a flyer titled "Sexual Assault is not your Fault and a PREA quiz.
Posters in English and Spanish titled "You have right to be free from sexual assault."
Snap shot of PREA Orientation Video
Inmate newsletter with PREA related information
Notice of Sexual Assault Awareness Month presentations for inmates
Copy of card given to inmates with support line info
Brochure in English and Spanish titled "What you should know about sexual abuse and sexual assault"
Memo indicating the availability of translator services AIDB for deaf and blind and google for language
Brochure from Alabama Institute for Deaf and Blind
Brochure titled "PREA--What you need to Know" from the PREA Resource Center
PREA What you need to know video in English and Spanish
Inmate Awareness Acknowledgement signature page in English and Spanish
Relevant pages of inmate handbook
Inmate orientation quiz on PREA training

**Observations**: Posters, brochures and inmate handbooks were observed in all housing units. Posters were observed in numerous other areas including programs, library, recreational areas, medical, Chapel, visiting area, etc.,...

**Interviews**: Intake staff stated they provide any and all inmates, include new arrivals or transfers entering the facility with initial orientation on zero-tolerance policy. Inmates right to not be sexually abused or harassed, right to be free from retaliation for reporting and how to report sexual abuse or harassment.
Eighteen of the twenty-two random inmates stated they received the orientation within the first day or two, the other four stated they did not receive the orientation. Most stated on the first day they received a PREA brochure, talked with staff and watched a video about PREA. They went on to say the received additional information within the next couple of days.

**Finding**: Based on policy, other documentation, observations and interviews, the facility meets standards.

## Standard 115.34: Specialized training: Investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.34 (a)

HIGHLY CONFIDENTIAL

- In addition to the general training provided to all employees pursuant to §115.31, does the agency ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators have received training in conducting such investigations in confinement settings? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes ☐ No ☐ NA

## 115.34 (b)

- Does this specialized training include techniques for interviewing sexual abuse victims? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

- Does this specialized training include proper use of Miranda and Garrity warnings? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

- Does this specialized training include sexual abuse evidence collection in confinement settings? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

- Does this specialized training include the criteria and evidence required to substantiate a case for administrative action or prosecution referral? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

## 115.34 (c)

- Does the agency maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

## 115.34 (d)

- Auditor is not required to audit this provision.

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

HIGHLY CONFIDENTIAL

ADOC-DS027486

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires investigators with PREA related duties to receive additional training related to their roles to include: interviewing abuse victims, Miranda and Garrity usage, conducting sexual abuse investigations and the collection of evidence in a confinement setting, criteria and evidence required to substantiate a case for administrative action or prosecutorial referral. Training shall be documented and verified through employee signature.

**Other documentation**: Training outline for Wardens and IPCM
Completion certificates for IPCM
DOJ PREA Training outline
ACAR memo notice and outline of training on PREA Investigations
Sign in logs for ADOC Investigations Training—PREA—Sexual Harassment
Training certificates for investigators from NIC PREA Investigators Training
Training certificates for investigators from 19th Judicial Circuit of Alabama

**Interviews**: Two criminal investigators were interviewed. Both investigators stated they had receive specialized training on sexual abuse and went on to describe training in interviewing victims and others report writing. evidence collection. criminal referrals. etc. Both understood the proper use of Miranda and Garrity warnings.

**Finding**: The facility and the agency meet this standard based on documentation reviewed and the interviews conducted.

## Standard 115.35: Specialized training: Medical and mental health care

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.35 (a)

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to detect and assess signs of sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to preserve physical evidence of sexual abuse? ☒ Yes ☐ No

ADOC-DS027487

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to respond effectively and professionally to victims of sexual abuse and sexual harassment? ☒ Yes  ☐ No

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how and to whom to report allegations or suspicions of sexual abuse and sexual harassment? ☒ Yes  ☐ No

**115.35 (b)**

- If medical staff employed by the agency conduct forensic examinations, do such medical staff receive appropriate training to conduct such examinations? (N/A if agency medical staff at the facility do not conduct forensic exams.) ☐ Yes  ☐ No  ☒ NA

**115.35 (c)**

- Does the agency maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere? ☒ Yes  ☐ No

**115.35 (d)**

- Do medical and mental health care practitioners employed by the agency also receive training mandated for employees by §115.31? ☒ Yes  ☐ No

- Do medical and mental health care practitioners contracted by and volunteering for the agency also receive training mandated for contractors and volunteers by §115.32? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (Substantially exceeds requirement of standards)

- ☒ **Meets Standard** (Substantial compliance; complies in all material ways with the standard for the relevant review period)

- ☐ **Does Not Meet Standard** (Requires Corrective Action)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

HIGHLY CONFIDENTIAL

**Policy:** ADOC AR 454 requires medical and mental health employees to receive training on all elements listed in 115.35 (a) above.

**Other documentation:** Examples of sign in sheets for rape training for medical staff
Training exam for PREA Sensitivity Training Acute Care & Assessment with Victims of Sexual Assault
In service training outline for Cross Gender Searches and LGBTI Standards
Lesson Plan for Corizon Medical staff specific to PREA that included all elements of (a)
Hire date and PREA training dates for all Dialysis staff.
Sign in sheets for dialysis staff PREA training

**Observations:** All medical and mental health providers are contract staff.

**Interviews:** One medical and one mental health staff were interviewed. Both stated the did get specific training that did cover all the elements of (a) above.

**Finding:** The facility is compliant with the elements of this standard. Medical and mental health staff received specific training as well as employee or volunteer/contractor PREA training and such is documented. SANE/SAFE exams are conducted by an outside agency.

---

## SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS

### Standard 115.41: Screening for risk of victimization and abusiveness

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.41 (a)

- Are all inmates assessed during an intake screening for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☑ Yes ☐ No

HIGHLY CONFIDENTIAL

- Are all inmates assessed upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☒ Yes ☐ No

### 115.41 (b)

- Do intake screenings ordinarily take place within 72 hours of arrival at the facility? ☒ Yes ☐ No

### 115.41 (c)

- Are all PREA screening assessments conducted using an objective screening instrument? ☒ Yes ☐ No

### 115.41 (d)

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (1) Whether the inmate has a mental, physical, or developmental disability? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (2) The age of the inmate? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (3) The physical build of the inmate? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (4) Whether the inmate has previously been incarcerated? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (5) Whether the inmate's criminal history is exclusively nonviolent? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (6) Whether the inmate has prior convictions for sex offenses against an adult or child? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming (the facility affirmatively asks the inmate about his/her sexual orientation and gender identity AND makes a subjective determination based on the screener's perception whether the inmate is gender non-conforming or otherwise may be perceived to be LGBTI)? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027490

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (8) Whether the inmate has previously experienced sexual victimization? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (9) The inmate's own perception of vulnerability? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (10) Whether the inmate is detained solely for civil immigration purposes? ☐ Yes ☒ No

**115.41 (e)**

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, when known to the agency: prior acts of sexual abuse? ☒ Yes ☐ No

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider when known to the agency: prior convictions for violent offenses? ☒ Yes ☐ No

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, when known to the agency, history of prior institutional violence or sexual abuse? ☒ Yes ☐ No

**115.41 (f)**

- Within a set time period not more than 30 days from the inmate's arrival at the facility, does the facility reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening? ☒ Yes ☐ No

**115.41 (g)**

- Does the facility reassess an inmate's risk level when warranted due to a: Referral? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Request? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Incident of sexual abuse? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness? ☒ Yes ☐ No

**115.41 (h)**

HIGHLY CONFIDENTIAL

ADOC-DS027491

• Is it the case that inmates are not ever disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section? ☒ Yes   ☐ No

**115.41 (i)**

• Has the agency implemented appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates? ☒ Yes   ☐ No

### Auditor Overall Compliance Determination

☐   **Exceeds Standard** (Substantially exceeds requirement of standards)

☒   **Meets Standard** (Substantial compliance; complies in all material ways with the standard for the relevant review period)

☐   **Does Not Meet Standard** (Requires Corrective Action)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires all inmates, including transferred inmates, be screened within 72 hours of initial intake using a checklist for risk of sexual vulnerability or risk of sexual aggression. Also required is another assessment within 30 days of intake or upon receipt of additional information that bears on an inmate's risk of victimization or abusiveness. No disciplinary action may be take should an inmate refuse to participate or answer any question. Appropriate controls on the dissemination of screening information will be in place to sensitive information is no exploited.  Policy includes ADOC form 454-C, PREA Risk Factors used for victimization and predatory risk which covers all of elements (d) & (e) and ADOC form 454-K, PREA Risk Reassessment with reason for referral check boxes such as 30-day review, request, incident of sexual abuse, receipt of additional information, six month review for transgender or intersex inmates.

**Other documentation**: Spreadsheet showing inmates arrival dates, initial assessment date, victim/predator, MH referral, date of reassessment, reason for reassessment, etc.....

**Interviews**: Two classification staff informally interviewed during tour stated they do initial risk assessments, two other classification staff formally interviewed stated they do initial risk screenings. One classification officer is assigned to screen all inmates receive the initial risk screening within 72 hours of arrival. Most random inmates interviewed stated they were screened and asked the identified questions upon arrival at the facility.  Some inmates stated they had been at SCCF for several years and had not been asked the identified questions. Classification officers stated they follow the checklist with covers things like, size of the inmate, previous criminal history, previous institutional history, is the inmate LGBTI, disabilities, previous sexual abuse or victimization, the inmate's feelings on his safety at

HIGHLY CONFIDENTIAL

the facility, etc.,... Officers review the inmate's history, observe the inmate and meet privately to answer the questions on the checklist.

**Finding:** SCCF is compliant with the elements of this standard. The screening process appears to work well identifying potential victims and/or predators.

## Standard 115.42: Use of screening information

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.42 (a)

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Housing Assignments? ☐ Yes  ☒ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Bed assignments? ☐ Yes  ☒ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Work Assignments? ☐ Yes  ☒ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Education Assignments?  ☐ Yes  ☒ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Program Assignments? ☐ Yes  ☒ No

### 115.42 (b)

- Does the agency make individualized determinations about how to ensure the safety of each inmate? ☒ Yes  ☐ No

### 115.42 (c)

- When deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, does the agency consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems (NOTE: If an agency by policy or practice assigns inmates to a male or female facility on the basis of anatomy alone, that agency is not in compliance with this standard)? ☒ Yes  ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027493

- When making housing or other program assignments for transgender or intersex inmates, does the agency consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems? ☒ Yes ☐ No

115.42 (d)

- Are placement and programming assignments for each transgender or intersex inmate reassessed at least twice each year to review any threats to safety experienced by the inmate? ☐ Yes ☐ No

115.42 (e)

- Are each transgender or intersex inmate's own views with respect to his or her own safety given serious consideration when making facility and housing placement decisions and programming assignments? ☒ Yes ☐ No

115.42 (f)

- Are transgender and intersex inmates given the opportunity to shower separately from other inmates? ☒ Yes ☐ No

115.42 (g)

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: lesbian, gay, and bisexual inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: transgender inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

HIGHLY CONFIDENTIAL

ADOC-DS027494

☒ **Does Not Meet Standard** *(Requires Corrective Action)*

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states All information obtained in screen shall be used to assist in determining institutional assignments and work, education and programs assignments with the goal of keeping separate high-risk potential victims from those at high risk of abusiveness. Policy also requires facilities to not place LGBTI inmates in dedicated units or dorms solely due to their status, reassessments of transgender and intersex inmates twice per year, consideration of transgender or intersex inmate's own view of their safety and ADOC will consider on a case-by-case basis whether the placement of an individual would ensure the inmate's health and safety, and whether the placement would present management or security problems.
ADOC SCCF SOP 83 states the ICS (movement officer) will monitor the housing, bed, and work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.

**Other documentation**: Housing placement spreadsheet showing the placement of potential victims and the placement of potential abusers.
Risk assessment forms
Referral to mental health forms

**Observations**: The facility uses the placement of potential victims on one side of a living unit and the possible abusers on the other side for both the separation of victims from abusers and for the protection against retaliation (per file documentation). The facility uses wrist bands to identify which unit and which side of the unit an inmate is assigned to. This would be a good system if the facility would actually keep the inmates separated, which they do not. Inmates were able to move freely from dorm to dorm or from side to side of a dorm disregarding the colored wrist bands. Many inmates did not have wrist bands at all and much of the time staff allowed the inmates access through a restricted access door without verifying that the inmate should be entering. This subverts the facility's policy on the separation of victims and abusers and protection from retaliation. In the "honor dorm" doors to both sides are left open anytime staff are not in the cube (reportedly due to short staffing) thereby granting all facility inmates access to the entire dorm. This was reportedly because it was an honor dorm and the inmates feared losing that status and would not violate the protocol.

**Interviews**: IPCM states potential victims are placed on one side of a unit, potential abusers on the other side. Inmates are not allowed to go from one side to the other. IPCM states transgender and intersex inmates are asked individually about their feelings on their own safety for placement and this is given serious consideration. Transgender and intersex inmates are given the opportunity to shower separately by use of a curtain or allowing showers when other inmates may not be in the shower area. Screening staff state at a certain level on the risk screening inmates are referred to mental health and the IPCM for placement decisions. Staff state transgender and intersex inmates are asked at classification/assessment about how they feel about their safety at the facility and placement concerns and are given the opportunity to shower separate from other inmates.

HIGHLY CONFIDENTIAL

One transgender inmate agreed to be interviewed and stated she was asked about her own safety concerns and does not feel she was placed in a specific unit solely because of her status. She was given the opportunity to shower separately with a curtain.

**Finding**: The facility is non-compliant in the factor based on the observations as noted above. The system of assessment and initial placement appears to be good.

**Corrective actions**: The facility needs to establish a means to keep identified high risk victims separate from high risk predators as outlined in the auditor's observations of this standard. Auditor is to be advised when the system is established and fully functional. Auditor (or alternate) will conduct a site visit after a period of time, not to exceed 90 days from implementation, to confirm a functional system and that practice is being adhered and determine an acceptable pattern of compliance for the safety of inmates from sexual abuse.

**Action taken**: The Warden has issued a directive for staff to enforce the policy/procedure on separation of inmates at high risk for victimization and those at high risk for abusiveness. Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report. Auditor will confirm pattern of compliance.

## Standard 115.43: Protective Custody

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.43 (a)**

- Does the facility always refrain from placing inmates at high risk for sexual victimization in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers? ☒ Yes ☐ No

- If a facility cannot conduct such an assessment immediately, does the facility hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment? ☒ Yes ☐ No

**115.43 (b)**

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Programs to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Privileges to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Education to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Work opportunities to the extent possible? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027496

- If the facility restricts access to programs, privileges, education. or work opportunities, does the facility document: The opportunities that have been limited? ☒ Yes ☐ No

- If the facility restricts access to programs, privileges, education, or work opportunities. does the facility document: The duration of the limitation? ☒ Yes ☐ No

- If the facility restricts access to programs, privileges, education, or work opportunities. does the facility document: The reasons for such limitations? ☒ Yes ☐ No

## 115.43 (c)

- Does the facility assign inmates at high risk of sexual victimization to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged? ☒ Yes ☐ No

- Does such an assignment not ordinarily exceed a period of 30 days? ☒ Yes ☐ No

## 115.43 (d)

- If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document: The basis for the facility's concern for the inmate's safety? ☒ Yes ☐ No

- If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document: The reason why no alternative means of separation can be arranged? ☒ Yes ☐ No

## 115.43 (e)

- In the case of each inmate who is placed in involuntary segregation because he/she is at high risk of sexual victimization, does the facility afford a review to determine whether there is a continuing need for separation from the general population EVERY 30 DAYS? ☒ Yes ☐ No

## Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance, complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does*

HIGHLY CONFIDENTIAL

*not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states the Warden is responsible to ensure inmates at high-risk for sexual victimization are not placed in involuntary segregation unless an assessment of all available alternative means have been made. This policy requires the procedure be as outlined above and states in cases that segregated housing is the only means to protect an inmate, the inmate will have access to all programs, privileges, education and work opportunities to the extent possible and with a time limit to not ordinarily exceed 30 days.
ADOC AR 435 establishes a validation committee comprised of the Warden/designee, classification supervisor, classification specialist and a security supervisor to investigate the validity of placing an inmate in protective custody which is then to be reviewed by the central review board for a final decision. By policy, this is only for segregation of inmates at the inmate's request. This policy states protective custody status inmates will be granted the same opportunities as inmates in general population as security permits and male inmates will be housed at Limestone Correctional Facility.

**Other documentation**: Memo stating SCCF does not house inmates for protective custody. Several memos in file indicating no inmates were placed in involuntary segregation due to sexual victimization.

**Observations**: SCCF reportedly does not house inmates in involuntary segregation due to sexual victimization but will house inmates requesting protective custody due to fear of being placed in general population. The procedure appears to be a victim is placed in the medical infirmary for up to 2 weeks then given the opportunity to be placed in a housing unit separate from potential abuser or other threats. If the inmate refuses to return to general population he is placed in restrictive housing as a voluntary placement for protective custody.

**Interviews**: The Warden states SCCF does not place inmates in involuntary restrictive housing due to sexual victimization unless no other alternative is available. All inmates in restricted housing are reviewed for continued placement every 30 days or less. Some inmates are in restrictive housing because they refuse to leave. Any involuntary segregation for the protection of inmate due to sexual victimization would be less than 30 days.
Segregation staff state inmates in restrictive housing have access to mental health and a program titled "Taking a Chance." No other programs are provided inmates in restrictive housing. Any involuntary segregation for the protection of inmate due to sexual victimization would be less than 30 days.

**Finding**: While the facility shows compliance with this standard as, per policy #435, inmates involuntarily segregated due to sexual victimization would be housed at Limestone, the auditor is concerned with the inconsistency of staff knowledge on the subject. Auditor could not get a clear view of restrictive housing placement criteria and how/when reviews are actually conducted to ensure an inmate is segregated for refusing to leave segregation or he is being held involuntarily due to sexual victimization. Also of concern is the lack of programming, etc… in restrictive housing in general.

## REPORTING

### Standard 115.51: Inmate reporting

HIGHLY CONFIDENTIAL

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.51 (a)**

- Does the agency provide multiple internal ways for inmates to privately report: Sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency provide multiple internal ways for inmates to privately report: Retaliation by other inmates or staff for reporting sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency provide multiple internal ways for inmates to privately report: Staff neglect or violation of responsibilities that may have contributed to such incidents? ☒ Yes ☐ No

**115.51 (b)**

- Does the agency also provide at least one way for inmates to report sexual abuse or sexual harassment to a public or private entity or office that is not part of the agency? ☒ Yes ☐ No

- Is that private entity or office able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials? ☒ Yes ☐ No

- Does that private entity or office allow the inmate to remain anonymous upon request? ☒ Yes ☐ No

- Are inmates detained solely for civil immigration purposes provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security? ☒ Yes ☐ No

**115.51 (c)**

- Does staff accept reports of sexual abuse and sexual harassment made verbally, in writing, anonymously, and from third parties? ☒ Yes ☐ No

- Does staff promptly document any verbal reports of sexual abuse and sexual harassment? ☒ Yes ☐ No

**115.51 (d)**

- Does the agency provide a method for staff to privately report sexual abuse and sexual harassment of inmates? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

HIGHLY CONFIDENTIAL

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires inmates are to be provided the opportunity to report sexual abuse or harassment verbally, in writing, through a third party and/or anonymously. PREA hotline is provided for the inmate phone system, a PREA drop box is available, inmates may report to any staff or contact the IPCM, inmates may report to I & I verbally and the inmates are provided pre-addressed envelopes to I & I.

**Other documentation**: Memo stating SCCF did not have a grievance system in place for this review period.
MOU with the Alabama Department of Economic and Community Affairs (ADECA) which provides for inmates to report to a public or private entity that is not part of ADOC and allows for the inmate to remain anonymous. ADECA agrees to receive and forward reports to ADOC.
Zero Tolerance posters which informs inmates how to report including the hotline number #66, report to staff, volunteer, contractor or medical mental health staff, submit a grievance or submit a sick call slip, tell a family member, friend, legal counsel or anyone else outside the facility. The poster then tells the inmate how the 3rd party could report.
Copy of pre-addressed envelop to I & I and stamped "Legal Inmate Mail".

**Observations**. One way for inmates to report is to report directly to the IPCM who, based on auditor observation, is well known by the inmates and she makes regular rounds throughout the facility.
The poster and the AR provide for inmates to report by filing a grievance, however a memo in the file indicates SCCF does not have a grievance system in place.
Auditor also looked at the posters throughout the facility and at the inmate handbook.
Auditor did perform a test call on the #66 hotline number which was reported to the PREA Director.

**Interviews**: The majority of random inmates interviewed gave at least two ways to report with may inmates giving several ways to report. All serious responders knew they could call the #66 number, tell staff, use the PREA box and tell a family member or friend to report it. Several inmates were also aware of the pre-address envelope.
The majority of random staff interviewed stated they could privately report sexual abuse of inmates by reporting to the supervisor, the IPCM or up the chain of command. Some stated they could use the hotline or 1-800 number or write a letter/report. Staff stated inmates could report anonymously in writing or verbally through letter to I & I or use the hotline. Inmates could also report by telling a staff member and most staff knew about 3rd party reporting. Staff stated thy would document any report of sexual abuse or harassment in an incident report and would do so immediately.

**Finding**: Based on policy, inmate knowledge, staff knowledge and observed posters and inmate handbook the facility is compliant with this standard.

HIGHLY CONFIDENTIAL

## Standard 115.52: Exhaustion of administrative remedies

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.52 (a)

- Is the agency exempt from this standard? NOTE: The agency is exempt ONLY if it does not have administrative procedures to address inmate grievances regarding sexual abuse. This does not mean the agency is exempt simply because an inmate does not have to or is not ordinarily expected to submit a grievance to report sexual abuse. This means that as a matter of explicit policy, the agency does not have an administrative remedies process to address sexual abuse. ☒ Yes ☐ No ☐ NA

### 115.52 (b)

- Does the agency permit inmates to submit a grievance regarding an allegation of sexual abuse without any type of time limits? (The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse.) (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- Does the agency always refrain from requiring an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

### 115.52 (c)

- Does the agency ensure that: An inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- Does the agency ensure that: Such grievance is not referred to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

### 115.52 (d)

- Does the agency issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance? (Computation of the 90-day time period does not include time consumed by inmates in preparing any administrative appeal.) (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- If the agency claims the maximum allowable extension of time to respond of up to 70 days per 115.52(d)(3) when the normal time period for response is insufficient to make an appropriate decision, does the agency notify the inmate in writing of any such extension and provide a date by which a decision will be made? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

ADOC-DS027501

- At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly noticed extension, may an inmate consider the absence of a response to be a denial at that level? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

## 115.52 (e)

- Are third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- Are those third parties also permitted to file such requests on behalf of inmates? (If a third-party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.) (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- If the inmate declines to have the request processed on his or her behalf, does the agency document the inmate's decision? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

## 115.52 (f)

- Has the agency established procedures for the filing of an emergency grievance alleging that an inmate is subject to a substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, does the agency immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken? (N/A if agency is exempt from this standard.). ☐ Yes ☐ No ☒ NA

- After receiving an emergency grievance described above, does the agency provide an initial response within 48 hours? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- After receiving an emergency grievance described above, does the agency issue a final agency decision within 5 calendar days? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- Does the initial response and final agency decision document the agency's determination whether the inmate is in substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

- Does the initial response document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

HIGHLY CONFIDENTIAL

ADOC-DS027502

- Does the agency's final decision document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

**115.52 (g)**

- If the agency disciplines an inmate for filing a grievance related to alleged sexual abuse, does it do so ONLY where the agency demonstrates that the inmate filed the grievance in bad faith? (N/A if agency is exempt from this standard.) ☐ Yes ☐ No ☒ NA

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (Substantially exceeds requirement of standards)

☒ **Meets Standard** (Substantial compliance; complies in all material ways with the standard for the relevant review period)

☐ **Does Not Meet Standard** (Requires Corrective Action)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Other documentation:** Memo in file stating SCCF does not have administrative procedures to address inmate grievances regarding sexual abuse.

**Finding:** ADOC only has grievance procedures for female facilities at this time. All elements are therefore not applicable for SCCF and the facility is compliant.

## Standard 115.53: Inmate access to outside confidential support services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.53 (a)**

- Does the facility provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations? ☐ Yes ☒ No

HIGHLY CONFIDENTIAL

- Does the facility provide persons detained solely for civil immigration purposes mailing addresses and telephone numbers, including toll-free hotline numbers where available of local, State, or national immigrant services agencies? ☒ Yes ☐ No

- Does the facility enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible? ☒ Yes ☐ No

## 115.53 (b)

- Does the facility inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws? ☐ Yes ☒ No

## 115.53 (c)

- Does the agency maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual abuse? ☒ Yes ☐ No

- Does the agency maintain copies of agreements or documentation showing attempts to enter into such agreements? ☒ Yes ☐ No

## Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☒ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Other Documentation:** MOU with ACAR to provide victim advocates and confidential emotional support services to ADOC inmates.
Poster with victim support line provided by ACAR.
Poster with support line to provide survivors of abuse with emotional support through the #66 number.
Cards given to inmates with Victim Support Line 1-800 number.

HIGHLY CONFIDENTIAL

**Observations:** Auditor did observe posters, in all housing areas and near inmate phones, with the ACAR provided numbers. No addresses could be found and no information to inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.

**Interviews:** Some random inmates interviewed were not aware emotions support services were available and were not aware the conversations could be confidential. Some inmates were aware via the inmate newsletter and/or posters.

Inmates who reported sexual abuse--both stated they were provided with contact information for emotional support services and knew it was confidential. One stated it was confidential unless someone else was in danger.

**Finding:** Non-compliant with elements (a) and (b). Nothing in file to reflect address are made available to inmates for emotional support services and nothing to show the inmates advised of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.

**Corrective Actions:** Facility needs to provide inmates with addresses to local, State, or National victim advocacy or crisis organizations and provide information to inmates of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws. Evidence of notification to current inmates and plan of action to consistently inform inmates needs to be provided to the auditor.

**Action taken:** Facility reports it has added the above information to the inmate orientation to provide the information to new arrivals. Documentary evidence of orientation and evidence of notification to current inmates in way of photos of updated posters and flyers posted throughout the housing units and other places and copy of updated orientation with signature pages were provided to the auditor prior to submitting the original report. Facility now compliant.

## Standard 115.54: Third-party reporting

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.54 (a)

HIGHLY CONFIDENTIAL

- Has the agency established a method to receive third-party reports of sexual abuse and sexual harassment? ☒ Yes ☐ No

- Has the agency distributed publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires inmates are to be provided the opportunity to report sexual abuse or harassment verbally, in writing, through a third party and/or anonymously. PREA hotline is provided for the inmate phone system, a PREA drop box is available, inmates may report to any staff or contact the IPCM, inmates may report to I & I verbally and the inmates are provided a pre-addressed envelopes to I & I.

**Other documentation**: Snap shot of reporting form found on website http://www.doc.state.al.us
Poster with contact information to ADECA
MOU indicating ADECA receives reports and forwards the reports to I & I.

**Finding**: Based on policy and the noted website the facility is compliant. Auditor did access the website without issue.

---

# OFFICIAL RESPONSE FOLLOWING AN INMATE REPORT

## Standard 115.61: Staff and agency reporting duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

HIGHLY CONFIDENTIAL

**115.61 (a)**

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency? ☒ Yes ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding retaliation against inmates or staff who reported an incident of sexual abuse or sexual harassment? ☒ Yes ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding any staff neglect or violation of responsibilities that may have contributed to an incident of sexual abuse or sexual harassment or retaliation? ☒ Yes ☐ No

**115.61 (b)**

- Apart from reporting to designated supervisors or officials, does staff always refrain from revealing any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions? ☒ Yes ☐ No

**115.61 (c)**

- Unless otherwise precluded by Federal, State, or local law, are medical and mental health practitioners required to report sexual abuse pursuant to paragraph (a) of this section? ☒ Yes ☐ No

- Are medical and mental health practitioners required to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services? ☒ Yes ☐ No

**115.61 (d)**

- If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, does the agency report the allegation to the designated State or local services agency under applicable mandatory reporting laws? ☒ Yes ☐ No

**115.61 (e)**

- Does the facility report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

HIGHLY CONFIDENTIAL

ADOC-DS027507

☐    **Does Not Meet Standard** *(Requires Corrective Action)*

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires all staff (which includes all medical and mental health employees or contractors) to immediately report, through the chain of command, any information as outlined in element (a), (b), (d) & (e) above.

**Observations**: SCCF does not house youthful inmates.

**Interviews**: The majority of random staff interviewed stated they were aware they were required to report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment and any retaliation for reporting or staff neglect. Staff stated they would only report to their immediate supervisor or up the chain of command. Medical and mental health staff state they disclose the limitation of confidentiality and duty to report and do understand they are required to report. One staff has reported sexual assault by an inmate and the other had not.

**Finding**: Compliant. Based on the policy and interview with staff, the facility meets the standard.

## Standard 115.62: Agency protection duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.62 (a)**

- When the agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, does it take immediate action to protect the inmate? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐    **Exceeds Standard** *(Substantially exceeds requirement of standards)*

☒    **Meets Standard** *(Substantial compliance; complies in all material ways with the standard for the relevant review period)*

☐    **Does Not Meet Standard** *(Requires Corrective Action)*

**Instructions for Overall Compliance Determination Narrative**

HIGHLY CONFIDENTIAL

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 requires the IPCM to take immediate action when an inmate is subject o a substantial risk of imminent abuse.

**Interviews:** The agency head designee states the inmate would be moved to alternate housing or to another facility. RHU would be a last resort until other placement could be arranged.
The warden stated all are taken seriously and the facility would affect a housing move or transfer to include restrictive housing temporarily.
Random staff interviewed all stated the inmate would be removed from the area and the incident would be reported up the chain of command or to the supervisor.

**Finding:** While there is little in the file, based on policy to include staff first actions should an incident occur and interviews with staff indicating good knowledge the facility is compliant.

## Standard 115.63: Reporting to other confinement facilities

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.63 (a)

- Upon receiving an allegation that an inmate was sexually abused while confined at another facility, does the head of the facility that received the allegation notify the head of the facility or appropriate office of the agency where the alleged abuse occurred? ☒ Yes ☐ No

115.63 (b)

- Is such notification provided as soon as possible, but no later than 72 hours after receiving the allegation? ☒ Yes ☐ No

115.63 (c)

- Does the agency document that it has provided such notification? ☒ Yes ☐ No

115.63 (d)

- Does the facility head or agency office that receives such notification ensure that the allegation is investigated in accordance with these standards? ☒ Yes ☐ No

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

ADOC-DS027509

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR states the Warden shall notify the head of another facility of any allegation that an inmate was sexually abused while confined at that facility and will do so within 72 hours of receiving the report. Attached to this AR is ADOC Form 454-F, Reporting to Other Confinement Facilities, which requires the notification and that I & I is notified for investigation.

**Other documentation**: Completed form 454.

**Interviews**: The Warden indicted he was very knowledgeable of the process and they had reported to other facilities.

**Finding**: Policy is in place and staff were knowledgeable of the process and has completed it.

## Standard 115.64: Staff first responder duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.64 (a)

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Separate the alleged victim and abuser?
  ☒ Yes  ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence? ☒ Yes  ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence? ☒ Yes  ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth,

ADOC-DS027510

changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence? ☒ Yes __ No

**115.64 (b)**

- If the first staff responder is not a security staff member, is the responder required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

  ☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

  ☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

  ☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 outlines first responder duties to include separation, protect scene, request victim not bathe, brush teeth, eat, drink, smoke, urinate, defecate; ensure alleged aggressor does same. If not a security staff, request the victim not take any action that would destroy evidence and notify security staff.

**Other documentation:** PREA Investigations Mapping Form
First responder checklist card that outlines duties on a pocket-sized card

**Observation:** All first responders are security staff and all security (COs) staff are first responders. All security staff are issued the 1st responder card.

**Interviews:** As all COs are or can be first responders, those questions were asked of random staff that are COs. Most staff interviewed were knowledgeable of their responsibilities as first responders. Many staff produced their checklist card either to refer to or show the auditor.

**Finding:** Based on the above policy, the mapping process, the checklist cards and staff knowledge of their responsibilities, the facility is compliant with this standard.

## Standard 115.65: Coordinated response

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

HIGHLY CONFIDENTIAL

**115.65 (a)**

- Has the facility developed a written institutional plan to coordinate actions among staff first responders, medical and mental health practitioners, investigators, and facility leadership taken in response to an incident of sexual abuse? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 outlines the duties required for a coordinated response. SCCF SOP 230 is facility specific and outlines the duties of first responders, medical and mental health staff, investigators and facility leadership in coordinated response to an incident of sexual abuse.

**Other documentation**: First responder checklist card
Investigative Mapping form

**Interviews**: The Warden stated they do have a coordinated response plan and process.

**Findings**: The above noted investigation mapping document outlines much of the requirements for what needs done and some of who is responsible. The SOP further defines who is responsible for what actions. The checklist card issued to all security staff is an excellent quick reference.

## Standard 115.66: Preservation of ability to protect inmates from contact with abusers

All Yes/No Questions Must Be Answered by the Auditor to Complete the Report.

**115.66 (a)**

HIGHLY CONFIDENTIAL

- Are both the agency and any other governmental entities responsible for collective bargaining on the agency's behalf prohibited from entering into or renewing any collective bargaining agreement or other agreement that limits the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted? ☐ Yes ☒ No

**115.66 (b)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Interviews**: Per Warden, ADOC does not have unions and no collective bargaining or other agreements are needed.

**Finding**: Compliant

## Standard 115.67: Agency protection against retaliation

All Yes/No Questions Must Be Answered by the Auditor to Complete the Report.

HIGHLY CONFIDENTIAL

## 115.67 (a)

- Has the agency established a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff? ☒ Yes  ☐ No

- Has the agency designated which staff members or departments are charged with monitoring retaliation? ☒ Yes  ☐ No

## 115.67 (b)

- Does the agency employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations? ☐ Yes  ☒ No

## 115.67 (c)

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates or staff who reported the sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes  ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes  ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Act promptly to remedy any such retaliation? ☒ Yes  ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor any inmate disciplinary reports? ☒ Yes  ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate housing changes? ☒ Yes  ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate program changes? ☒ Yes  ☐ No

HIGHLY CONFIDENTIAL

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor negative performance reviews of staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor reassignments of staff? ☒ Yes ☐ No

- Does the agency continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need? ☒ Yes ☐ No

**115.67 (d)**

- In the case of inmates, does such monitoring also include periodic status checks? ☒ Yes ☐ No

**115.67 (e)**

- If any other individual who cooperates with an investigation expresses a fear of retaliation, does the agency take appropriate measures to protect that individual against retaliation? ☒ Yes ☐ No

**115.67 (f)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☒ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states retaliation in any form for reporting or cooperation with sexual abuse or harassment is prohibited. The Arden and IPCM shall ensure inmates and staff who report are protected from retaliation. The IPCM is responsible for this monitoring (including all elements in this standard) for at least 90 days which may be extended.

HIGHLY CONFIDENTIAL

**Other documentation**: Housing assignment of inmates identifying victim on one side of a unit and aggressors on the other side.
Completed retaliation monitoring forms
Handwritten, signed notes from inmates stating they were doing okay as part of the monitoring.

**Observations**: The facility uses the placement of potential victims on one side of a living unit and the possible abusers on the other side for both the separation of victims from abusers and for the protection against retaliation (per file documentation). The facility uses wrist bands to identify which unit and which side of the unit an inmate is assigned to. This would be a good system if the facility would actually keep the inmates separated, which they do not. Inmates were able to move freely from dorm to dorm or from side to side of a dorm disregarding the colored wrist bands. Many inmates did not have wrist bands at all and much of the time staff allowed the inmates access through a restricted access door without verifying that the inmate should be entering. This subverts the facility's policy on the separation of victims and abusers and protection from retaliation. In the "honor dorm" doors to both sides are left open anytime staff are not in the cube (reportedly due to short staffing) thereby granting all facility inmates access to the entire dorm. This was reportedly because it was an honor dorm and the inmates feared losing that status and would not violate the protocol.

**Interviews**: Agency head designee states he is aware of the retaliation monitoring process but also recognizes with the short staffing issues, facilities struggle with maintaining protective measures. The Warden states they do monitor for retaliation and move inmates for staff if necessary. The IPCM states she is responsible for retaliation monitoring and meets with those inmates weekly, completes the form and gets signed statements from the inmates. States she monitors housing changes, disciplinary reports, program changes, etc., and watches for behavioral changes for inmates. She has staff progress reports monitored for staff.

**Finding**: Non-compliant. Based on the observations as noted above and interviews with staff, the facility may place an inmate who reported sexual abuse, who may also be a victim of sexual abuse, in a specific side of a unit and potential aggressors on the other side. In doing so, they do not meet (b) above "does the agency employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims" as the facility does not keep the two sides' inmates from going to the other side. (see115.42 above)

**Corrective Action**: The facility needs to establish a means to keep identified high risk victims separate from high risk predators. Auditor is to be advised when the system is established and fully functional. Auditor (or alternate) will conduct a site visit after a period of time, not to exceed 90 days from implementation, to confirm a functional system and that practice is being adhered and determine an acceptable pattern of compliance for the safety of inmates from sexual abuse.

**Action taken:** The Warden has issued a directive for staff to enforce the policy/procedure on separation of inmates at high risk for victimization and those at high risk for abusiveness. Signature pages that all relevant staff have been informed were provided to the auditor prior to submitting the original report. PREA Director and ADOC IT have developed a plan of action to upgrade the IMAS to have PREA specific identifiers added to the system, making it simpler and quicker to identify at risk persons by those who need the info. Auditor will confirm pattern of compliance.

## Standard 115.68: Post-allegation protective custody

HIGHLY CONFIDENTIAL

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.68 (a)

- Is any and all use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse subject to the requirements of § 115.43? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states the Warden is responsible to ensure inmates at high-risk for sexual victimization are not placed in involuntary segregation unless an assessment of all available alternative means have been made. This policy requires the procedure be as outlined above and states in cases that segregated housing is the only means to protect an inmate, the inmate will have access to all programs, privileges, education and work opportunities to the extent possible and with a time limit to not ordinarily exceed 30 days.

ADOC AR 435 establishes a validation committee comprised of the Warden/designee, classification supervisor, classification specialist and a security supervisor to investigate the validity of placing an inmate in protective custody which is then to be reviewed by the central review board for a final decision. By policy, this is only for segregation of inmates at the inmate's request. This policy states protective custody status inmates will be granted the same opportunities as inmates in general population as security permits and male inmates will be housed at Limestone Correctional Facility.

**Other documentation**: Memo from Warden stating SCCF does not house inmates for protective custody.

**Interviews**: The Warden states inmates may be placed in involuntary segregation as a last resort and then only for 30 days or less. Each is reviewed weekly. We have had no involuntary placement due to sexual victimization this year.

Staff who supervise segregation state they have no inmates in restricted housing for involuntary segregations due to sexual victimization.

**Finding**: Compliant. See findings in 115.43

HIGHLY CONFIDENTIAL

ADOC-DS027517

# INVESTIGATIONS

## Standard 115.71: Criminal and administrative agency investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.71 (a)

- When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, does it do so promptly, thoroughly, and objectively? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

- Does the agency conduct such investigations for all allegations, including third party and anonymous reports? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

### 115.71 (b)

- Where sexual abuse is alleged, does the agency use investigators who have received specialized training in sexual abuse investigations as required by 115.34? ☒ Yes ☐ No

### 115.71 (c)

- Do investigators gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data? ☒ Yes ☐ No

- Do investigators interview alleged victims, suspected perpetrators, and witnesses? ☒ Yes ☐ No

- Do investigators review prior reports and complaints of sexual abuse involving the suspected perpetrator? ☒ Yes ☐ No

### 115.71 (d)

- When the quality of evidence appears to support criminal prosecution, does the agency conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution? ☒ Yes ☐ No

### 115.71 (e)

- Do agency investigators assess the credibility of an alleged victim, suspect, or witness on an individual basis and not on the basis of that individual's status as inmate or staff? ☒ Yes ☐ No

ADOC-DS027518

- Does the agency investigate allegations of sexual abuse without requiring an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding? ☒ Yes ☐ No

**115.71 (f)**

- Do administrative investigations include an effort to determine whether staff actions or failures to act contributed to the abuse? ☒ Yes ☐ No

- Are administrative investigations documented in written reports that include a description of the physical evidence and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings? ☒ Yes ☐ No

**115.71 (g)**

- Are criminal investigations documented in a written report that contains a thorough description of the physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible? ☒ Yes ☐ No

**115.71 (h)**

- Are all substantiated allegations of conduct that appears to be criminal referred for prosecution? ☒ Yes ☐ No

**115.71 (i)**

- Does the agency retain all written reports referenced in 115.71(f) and (g) for as long as the alleged abuser is incarcerated or employed by the agency, plus five years? ☒ Yes ☐ No

**115.71 (j)**

- Does the agency ensure that the departure of an alleged abuser or victim from the employment or control of the agency does not provide a basis for terminating an investigation? ☒ Yes ☐ No

**115.71 (k)**

- Auditor is not required to audit this provision.

**115.71 (l)**

- When an outside entity investigates sexual abuse, does the facility cooperate with outside investigators and endeavor to remain informed about the progress of the investigation? (N/A if an outside agency does not conduct administrative or criminal sexual abuse investigations. See 115.21(a).) ☐ Yes ☐ No ☒ NA

**Auditor Overall Compliance Determination**

HIGHLY CONFIDENTIAL

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon to making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires an investigation be completed on any allegation by I & I who does have the authority to conduct criminal investigations for sexual abuse. I & I shall refer all substantiated criminal cases to the DA and shall inform the inmate whether a case is substantiated, unsubstantiated or unfounded. This policy also requires all criminal and administrative investigation records shall be retained for as long as the alleged abuser is incarcerated or employed the agency, plus five (5) years. Investigation and Intelligence (I & I) SOP 306 outlines evidence and contraband control.

**Other documentation** Examples of I & I investigative reports of sexual abuse
Sexual Abuse Incident Review forms, AR Form 454-E
Spreadsheet identifying reported cases, names, date, type of investigation, MH referral, SANE, retaliation monitoring, I & I report to the victim, date of review and date notification letter sent to victim.
See 115.34 for--Training outline for Wardens and IPCM
Completion certificates for IPCM
DOJ PREA Training outline
ACAR memo notice and outline of training on PREA Investigations
Sign in logs for ADOC Investigations Training—PREA—Sexual Harassment
Training certificates for investigators from NIC PREA Investigators Training
Training certificates for investigators from 19" Judicial Circuit of Alabama

**Interviews**: Two criminal investigators from I & I were interviewed. Both stated they have received training specific to sexual abuse investigations, interviewing techniques, evidence collection, etc.. All reports regardless of origin are promptly, thoroughly, and objectively investigated to conclusion. They collect all evidence, interview persons involved, review histories, etc.. and document all actions. Referral to DA is automatic, DA determines whether to charge or not. Departure from the agency or facility does not affect whether to continue the investigation or not. Inmates are not compelled to submit to a polygraph. All persons are considered credible until proven otherwise. Evidence includes physical, historical, trace, photographic, video, audio, circumstantial, etc.,..One investigator states compelled interviews are only conducted after consultation with the DA the other said no, they do not consult with the DA.
Three administrative investigators were interviewed. Written reports are generated and there is an effort to determine if staff actions or inactions contributed to the act. This is re-reviewed by the Incident Review Team.

HIGHLY CONFIDENTIAL

**Findings:** Based primarily on the interviews and other documentation, the facility is compliant with this standard.

**Recommendation:** The agency need to ensure all investigators understand the need to conduct compelled interviews after consulting with the DA to ensure not jeopardizing a criminal case.

## Standard 115.72: Evidentiary standard for administrative investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.72 (a)**

* Is it true that the agency does not impose a standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance, complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy:** ADOC AR 454 requires the standard of proof in all investigations of sexual abuse and harassment is the preponderance of evidence.

**Interviews:** Investigators indicated they were aware that to deem a case substantiated or not required a preponderance of evidence.

**Finding:** Based on policy and interviews, the facility is compliant with this standard.

HIGHLY CONFIDENTIAL

## Standard 115.73: Reporting to Inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.73 (a)**

- Following an investigation into an inmate's allegation that he or she suffered sexual abuse in an agency facility, does the agency inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded? ☒ Yes ☐ No

**115.73 (b)**

- If the agency did not conduct the investigation into an inmate's allegation of sexual abuse in an agency facility, does the agency request the relevant information from the investigative agency in order to inform the inmate? (N/A if the agency/facility is responsible for conducting administrative and criminal investigations.) ☐ Yes ☐ No ☒ NA

**115.73 (c)**

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer posted within the inmate's unit? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer employed at the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been indicted on a charge related to sexual abuse in the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been convicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

**115.73 (d)**

- Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

ADOC-DS027522

- Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

## 115.73 (e)

- Does the agency document all such notifications or attempted notifications? ☒ Yes ☐ No

## 115.73 (f)

- Auditor is not required to audit this provision.

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (Substantially exceeds requirement of standards)

☒ **Meets Standard** (Substantial compliance: complies in all material ways with the standard for the relevant review period)

☐ **Does Not Meet Standard** (Requires Corrective Action)

### Instructions for Overall Compliance Determination Narrative

The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.

**Policy:** ADOC AR requires the I & I director to inform the inmate when the reported employee aggressor is no longer with ADOC, no longer employed at the institution, has been indicted on a charge related to the abuse and/or the employee has been convicted on a charge related to the abuse. The PREA Director will ensure I &I inform the reported victim when a case is determined to be substantiated, substantiated or unfounded.

**Other documentation:** Examples of letters to reported victims that cases were substantiated, unsubstantiated or unfounded.

**Interviews:** The Warden designee stated inmates are advised via a letter. Investigative staff state the inmate is given a letter. Inmates who reported sexual abuse—one stated he received a notice, the other said he had not but his case is still on-going.

**Findings:**

---

## DISCIPLINE

---

HIGHLY CONFIDENTIAL

## Standard 115.76: Disciplinary sanctions for staff

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.76 (a)

- Are staff subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies? ☒ Yes ☐ No

### 115.76 (b)

- Is termination the presumptive disciplinary sanction for staff who have engaged in sexual abuse? ☒ Yes ☐ No

### 115.76 (c)

- Are disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories? ☒ Yes ☐ No

### 115.76 (d)

- Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Law enforcement agencies (unless the activity was clearly not criminal)? ☐ Yes ☒ No

- Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Relevant licensing bodies? ☐ Yes ☒ No

### Auditor Overall Compliance Determination

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☒ **Does Not Meet Standard** (*Requires Corrective Action*)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

HIGHLY CONFIDENTIAL

**Policy**: ADOC AR 454 states employees shall be subject to disciplinary sanctions up to and including termination for violating sexual abuse or sexual harassment policies. ADOC Table of Infractions and Level of Discipline states first offence violations of Alabama Title 13A-6-65 of 14-11-31 (sexual misconduct) is termination.

**Finding**: Nothing in the file to indicate compliance with (d) above.

**Corrective Action**: ADOC/SCCF need to produce policy and/or practice that law enforcement and/or licensing bodies are notified in the case of employee/contractor termination for violating sexual abuse or sexual harassment policies.

## Standard 115.77: Corrective action for contractors and volunteers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.77 (a)**

- Is any contractor or volunteer who engages in sexual abuse prohibited from contact with inmates? ☒ Yes ☐ No

- Is any contractor or volunteer who engages in sexual abuse reported to: Law enforcement agencies (unless the activity was clearly not criminal)? ☒ Yes ☐ No

- Is any contractor or volunteer who engages in sexual abuse reported to: Relevant licensing bodies? ☒ Yes ☐ No

**115.77 (b)**

- In the case of any other violation of agency sexual abuse or sexual harassment policies by a contractor or volunteer, does the facility take appropriate remedial measures, and consider whether to prohibit further contact with inmates? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's*

HIGHLY CONFIDENTIAL

*conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454—All contractors/volunteers acknowledge receipt of this AR.

**Other documentation**: Volunteer/contractor required PREA Lesson plan states any contractor who engages in sexual abuse shall be prohibited from contact with inmates and shall be reported to law enforcement agencies and to relevant licensing bodies. Also states the facility shall take appropriate remedial measures and consider whether to prohibit further contact with inmates in the case of sexual harassment policies.

Memos stating there were no cases of incident reports involving contractors or volunteers being involved in sexual abuse or sexual harassment.

**Observations**: All volunteers and contractors are required to complete the above training and sign acknowledging understanding of the orientation.

**Interviews**: The Warden states a contractor or volunteer would be barred from the facility pending investigation. If substantiated, the person would be barred permanently and referred for criminal prosecution if appropriate.

**Finding**: Based on policy, training curriculum and interviews, the facility is compliant.

## Standard 115.78: Disciplinary sanctions for inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.78 (a)

- Following an administrative finding that an inmate engaged in inmate-on-inmate sexual abuse, or following a criminal finding of guilt for inmate-on-inmate sexual abuse, are inmates subject to disciplinary sanctions pursuant to a formal disciplinary process? ☒ Yes ☐ No

115.78 (b)

- Are sanctions commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories? ☒ Yes ☐ No

115.78 (c)

- When determining what types of sanction, if any, should be imposed, does the disciplinary process consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior? ☒ Yes ☐ No

115.78 (d)

HIGHLY CONFIDENTIAL

- If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, does the facility consider whether to require the offending inmate to participate in such interventions as a condition of access to programming and other benefits? ☒ Yes ☐ No

### 115.78 (e)

- Does the agency discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact? ☒ Yes ☐ No

### 115.78 (f)

- For the purpose of disciplinary action does a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred NOT constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation? ☒ Yes ☐ No

### 115.78 (g)

- Does the agency always refrain from considering non-coercive sexual activity between inmates to be sexual abuse? (N/A if the agency does not prohibit all sexual activity between inmates.) ☒ Yes ☐ No ☐ NA

### Auditor Overall Compliance Determination

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 403 outlines inmate disciplinary procedures including a mental health referral prior to the disciplinary process. Sexual assault and sexual offense (non-forcible)/soliciting and indecent exposure/exhibitionism/lewd conduct are high level offenses.
ADOC AR 454 prohibits all sexual activity between inmates and indicates an inmate swill not face disciplinary charges for filing a report in good faith.

**Other documentation**: Examples of inmate disciplinary reports for sexual abuse violations.

HIGHLY CONFIDENTIAL

Male inmate handbook indicating rule violations are separated into high, medium and low levels. Sexual assault and sexual offense (non-forcible)/soliciting are high level offenses.
Memo (email) stating there were no case within the last year of inmate sexual contact with staff.

**Interviews**: The Warden states disciplinary sanctions for inmates violating sexual abuse or harassment policy could include loss of good time, disciplinary segregations, etc. ... Mental health is considered in all disciplinary cases including sexual abuse or harassment.
Medical and mental health staff both state counselling and therapy is available for abusive inmates but is not a condition of access to programming or other benefits.

**Findings**: Based on policy, practice and interviews, the facility meets the standard.

---

## MEDICAL AND MENTAL CARE

### Standard 115.81: Medical and mental health screenings; history of sexual abuse

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.81 (a)

- If the screening pursuant to § 115.41 indicates that a prison inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.)
  ☒ Yes ☐ No ☐ NA

115.81 (b)

- If the screening pursuant to § 115.41 indicates that a prison inmate has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.) ☒ Yes ☐ No ☐ NA

115.81 (c)

- If the screening pursuant to § 115.41 indicates that a jail inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? ☒ Yes ☐ No

115.81 (d)

ADOC-DS027528

- Is any information related to sexual victimization or abusiveness that occurred in an institutional setting strictly limited to medical and mental health practitioners and other staff as necessary to inform treatment plans and security management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law? ☒ Yes ☐ No

## 115.81 (e)

- Do medical and mental health practitioners obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18? ☐ Yes ☒ No

## Auditor Overall Compliance Determination

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**. ADOC AR 454 states if the assessment checklist indicates all offenders determined to be at high risk for victimization or abusiveness, they are referred to mental health before a housing assignment is made and within 14 days. The checklist, Form 454-C, change 5 notes that if an inmate answers yes to "have you ever experienced sexual victimization" the inmates is referred to mental health within 14 days. If an inmate answers the he has prior acts of sexual abusiveness he must be referred to mental health within 14 days. The checklist has a statement that the information is confidential for departmental use only. The AR also has a statement that appropriate controls on the dissemination of screening information so as to ensure each inmates' sensitive information is not exploited.

**Other documentation**: Several completed screenings showing inmate is to be referred to mental health.
Several examples of referrals to mental health due to risk screening.
Several responses from Corizon Health to mental health referrals
Classification data spreadsheet indicating inmate name, reasoning for screening, and reason for referral to mental health.

**Interviews**: Inmates who reported previous sexual victimization at screening-- One offender was a new arrival; one stated he was referred; one stated he sees mental regularly and one did not remember being asked about seeing mental health.

HIGHLY CONFIDENTIAL

Staff responsible for risk screening stated the inmates are immediately referred to mental health for evaluation immediately if they report previous victimization or abusiveness.
Medical staff state they do obtain informed consent before reporting information about prior sexual victimization that did not occur in an institution.

**Finding:** SCCF has a good screening tool and does very good at referring to mental health as appropriate. Mental health provides input to high level victim prone or abusive prone inmates prior to placement. Auditor watched this process and feel the facility exceeds the standard.

## Standard 115.82: Access to emergency medical and mental health services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.82 (a)

- Do inmate victims of sexual abuse receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment?
  ☒ Yes  ☐ No

### 115.82 (b)

- If no qualified medical or mental health practitioners are on duty at the time a report of recent sexual abuse is made, do security staff first responders take preliminary steps to protect the victim pursuant to § 115.62? ☒ Yes  ☐ No

- Do security staff first responders immediately notify the appropriate medical and mental health practitioners? ☒ Yes  ☐ No

### 115.82 (c)

- Are inmate victims of sexual abuse offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate? ☒ Yes  ☐ No

### 115.82 (d)

- Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident?
  ☒ Yes  ☐ No

### Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

HIGHLY CONFIDENTIAL

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

### Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires victims sexual be referred immediately to medical and shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services. The IPCM will also refer victim to ADOC mental health for treatment and counseling. Policy requires 1st responders to take steps to protect the victim and notify medical and mental health. Treatment services will be at no cost to the inmate.

**Other documentation**: MOU with Crisis Center, Inc. to provide SANE and medical treatment. MOU with ACAR to provide emergency medical and crisis intervention services.

**Interviews**: Medical staff stated inmates do receive timely and unimpeded access to emergency care to include access to sexually transmitted infections prophylaxis. and crisis intervention. The rape crisis center may begin treatment with follow-up instructions for the facility medical.
First responders state inmates are escorted to medical immediately.
Inmates who reported sexual abuse—All three stated they saw medical immediately at either the facility or at the rape crisis center. Two stated they did receive information about STI prophylaxis, and the other stated no, he did not.

**Finding**: Based on the above policy, MOU and interviews the facility is compliant.

## Standard 115.83: Ongoing medical and mental health care for sexual abuse victims and abusers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.83 (a)

- Does the facility offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility? ☒ Yes ☐ No

ADOC-DS027531

**115.83 (b)**

- Does the evaluation and treatment of such victims include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody? ☒ Yes ☐ No

**115.83 (c)**

- Does the facility provide such victims with medical and mental health services consistent with the community level of care? ☒ Yes ☐ No

**115.83 (d)**

- Are inmate victims of sexually abusive vaginal penetration while incarcerated offered pregnancy tests? (N/A if all-male facility.) ☐ Yes ☐ No ☒ NA

**115.83 (e)**

- If pregnancy results from the conduct described in paragraph § 115.83(d), do such victims receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services? (N/A if all-male facility.) ☐ Yes ☐ No ☒ NA

**115.83 (f)**

- Are inmate victims of sexual abuse while incarcerated offered tests for sexually transmitted infections as medically appropriate? ☒ Yes ☐ No

**115.83 (g)**

- Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident? ☒ Yes ☐ No

**115.83 (h)**

- If the facility is a prison, does it attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners? (NA if the facility is a jail.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

HIGHLY CONFIDENTIAL

ADOC-DS027532

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 states medial and mental health evaluations and treatment shall be offered to all inmates who have been victimized by sexual abuse to include follow-up services, treatment plans, and continued care following transfer to other facilities or upon release without cost to the inmate. Policy also states an attempt shall be made to conduct a mental health evaluation of known abusers within 80 days of learning of abuse history and offer treatment.

**Other documentation**: MOU with ACAR and Rape Crisis Center

**Interviews**: Medical staff stated inmates do receive timely and unimpeded access to emergency care to include access to sexually transmitted infections prophylaxis, and crisis intervention. The rape crisis center may begin treatment with follow-up instructions for the facility medical. Medical and mental health staff state the Crisis Center notifies facility medical of required follow up, treatment plans etc., as appropriate. Mental health sees offender as soon as he is returned to the facility and establishes plans and follow up. Medical staff state they feel the care is consistent with community level of care or better due to proximity to care. Mental health staff indicate evaluation of known abusers is completed and treatment offered within 7 to 10 days of notification.

Inmates who reported sexual abuse—Of three, two stated they have treatment plans and have regular follow up meetings. One stated no. When asked about STI testing, one stated yes he was offered STI tests after requesting. The other two stated they were offered tests. When asked about being charge financially, two stated they were not charged the other stated he was charged a medical co-pay.

**Finding**: Policy and practice appear to be good. MOU is good. Facility meets the standard.

---

## DATA COLLECTION AND REVIEW

### Standard 115.86: Sexual abuse incident reviews

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.86 (a)

- Does the facility conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded? ☒ Yes ☐ No

ADOC-DS027533

**115.86 (b)**

- Does such review ordinarily occur within 30 days of the conclusion of the investigation? ☒ Yes ☐ No

**115.86 (c)**

- Does the review team include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners? ☒ Yes ☐ No

**115.86 (d)**

- Does the review team: Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse? ☒ Yes ☐ No

- Does the review team: Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; gang affiliation; or other group dynamics at the facility? ☒ Yes ☐ No

- Does the review team: Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse? ☒ Yes ☐ No

- Does the review team: Assess the adequacy of staffing levels in that area during different shifts? ☒ Yes ☐ No

- Does the review team: Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff? ☒ Yes ☐ No

- Does the review team: Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to §§ 115.86(d)(1) – (d)(5), and any recommendations for improvement and submit such report to the facility head and PREA compliance manager? ☒ Yes ☐ No

**115.86 (e)**

- Does the facility implement the recommendations for improvement, or document its reasons for not doing so? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

HIGHLY CONFIDENTIAL

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires facilities within 30 days of the conclusion of the I & I investigation convene an incident review team to review all substantiated and unsubstantiated allegations. For 454-E, Sexual Abuse Incident Review is to be used. The form outlines who attends and what is examined. Element (d) of this standard is covered on the form. Findings are reported to the Warden and the PREA Director who implement appropriate recommendations or document why not. Policy requires all PREA documents be retained for 10 years except investigation records which will be retained as long as the abuser is incarcerated or employed plus 5 years.

**Other documentation**: Several completed incident reviews with recommendations and implementations.
Investigation spreadsheet showing each investigation, when it was completed, date of incident review and date completed.

**Interviews**: The Warden states the have and use an incident review team which includes appropriate level of staff form appropriate areas. He stated they use and established checklist.
The IPCM is part of the review team and states they follow the checklist then she meets with the Warden to review.
Three team members were interviewed. They all stated they follow the checklist which covers the factors. Not all team members examine the area of the incident, but some do.

**Finding**: Good policy, practice and documentation. Compliant.

## Standard 115.87: Data collection

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

115.87 (a)

- Does the agency collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions? ☒ Yes ☐ No

115.87 (b)

- Does the agency aggregate the incident-based sexual abuse data at least annually?
  ☒ Yes ☐ No

115.87 (c)

ADOC-DS027535

- Does the incident-based data include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice? ☒ Yes ☐ No

**115.87 (d)**

- Does the agency maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews? ☒ Yes ☐ No

**115.87 (e)**

- Does the agency also obtain incident-based and aggregated data from every private facility with which it contracts for the confinement of its inmates? (N/A if agency does not contract for the confinement of its inmates.) ☐ Yes ☐ No ☒ NA

**115.87 (f)**

- Does the agency, upon request, provide all such data from the previous calendar year to the Department of Justice no later than June 30? (N/A if DOJ has not requested agency data.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOIC AR 454 states the PREA Director is responsible for compiling records and data from previous year to complete the DOJ Survey of Sexual Violence (SSV) and shall review data to assess and improve the effectiveness of ADOC policy/procedure and prepare a report for the Commissioner identifying problem area, suggestion corrective action and providing comparison from the previous year.

**Other documentation**: 2016 ADOC Annual PREA Report signed 7/2017.

**Finding**: ADOC PREA Director collects data for every allegation from every facility and uses it to complete the SSV and prepare the annual report. ADOC is compliant with this standard.

HIGHLY CONFIDENTIAL

## Standard 115.88: Data review for corrective action

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.88 (a)

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Identifying problem areas? ☒ Yes ☐ No

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Taking corrective action on an ongoing basis? ☒ Yes ☐ No

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Preparing an annual report of its findings and corrective actions for each facility, as well as the agency as a whole? ☒ Yes ☐ No

### 115.88 (b)

- Does the agency's annual report include a comparison of the current year's data and corrective actions with those from prior years and provide an assessment of the agency's progress in addressing sexual abuse ☒ Yes ☐ No

### 115.88 (c)

- Is the agency's annual report approved by the agency head and made readily available to the public through its website or, if it does not have one, through other means? ☒ Yes ☐ No

### 115.88 (d)

- Does the agency indicate the nature of the material redacted where it redacts specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility? ☒ Yes ☐ No

### Auditor Overall Compliance Determination

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

HIGHLY CONFIDENTIAL

☐ **Does Not Meet Standard** *(Requires Corrective Action)*

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR requires the PREA Director for reporting statistical data for PREA related incidents and ensuring all aggregated sexual abuse data is posted on the ADOC website. PREA Director shall review data collected to assess and improve the effectiveness of appropriate policies and procedures.

**Other documentation:** 2014, 2015 and 2016 SSVs
Annual assessment of agency's progress concerning sexual abuse (2013/2014)
**Observations:** The 2013/2014 comparison in the file is simple but good. Recommend adding that to annual reports for each subsequent year. Auditor struggled to find year to year comparison data by reviewing SSVs.

**Finding:** Data review for corrective action is compliant.

## Standard 115.89: Data storage, publication, and destruction

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.89 (a)**

- Does the agency ensure that data collected pursuant to § 115.87 are securely retained?
  ☒ Yes ☐ No

**115.89 (b)**

- Does the agency make all aggregated sexual abuse data from facilities under its direct control and private facilities with which it contracts, readily available to the public at least annually through its website or, if it does not have one, through other means? ☒ Yes ☐ No

**115.89 (c)**

- Does the agency remove all personal identifiers before making aggregated sexual abuse data publicly available? ☒ Yes ☐ No

**115.89 (d)**

ADOC-DS027538

- Does the agency maintain sexual abuse data collected pursuant to § 115.87 for at least 10 years after the date of the initial collection, unless Federal, State, or local law requires otherwise? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

- ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

- ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

- ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

**Policy**: ADOC AR 454 requires the PREA Director to securely retain all PREA related documents for 10 years. A review of the annual reports available to the public indicated no personal identifying information.

**Other documentation**: A review of the annual reports available to the public indicated no personal identifying information.

**Observation**: ADOC does have one contract agency with a contract dated 7/2017 therefore no annual data from that facility is available.

**Finding**: The agency is compliant.

# AUDITING AND CORRECTIVE ACTION

## Standard 115.401: Frequency and scope of audits

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report.**

115.401 (a)

- During the prior three-year audit period, did the agency ensure that each facility operated by the agency, or by a private organization on behalf of the agency, was audited at least once? (*Note: The response here is purely informational. A "no" response does not impact overall compliance with this standard.*) ☒ Yes ☐ No

HIGHLY CONFIDENTIAL

## 115.401 (b)

- Is this the first year of the current audit cycle? (*Note: a "no" response does not impact overall compliance with this standard.*) ☒ Yes ☐ No

- If this is the second year of the current audit cycle, did the agency ensure that at least one-third of each facility type operated by the agency, or by a private organization on behalf of the agency, was audited during the first year of the current audit cycle? (N/A if this is not the *second* year of the current audit cycle.) ☐ Yes ☐ No ☒ NA

- If this is the third year of the current audit cycle, did the agency ensure that at least two-thirds of each facility type operated by the agency, or by a private organization on behalf of the agency, were audited during the first two years of the current audit cycle? (N/A if this is not the *third* year of the current audit cycle.) ☐ Yes ☐ No ☒ NA

## 115.401 (h)

- Did the auditor have access to, and the ability to observe, all areas of the audited facility? ☒ Yes ☐ No

## 115.401 (i)

- Was the auditor permitted to request and receive copies of any relevant documents (including electronically stored information)? ☒ Yes ☐ No

## 115.401 (m)

- Was the auditor permitted to conduct private interviews with inmates, residents, and detainees? ☒ Yes ☐ No

## 115.401 (n)

- Were inmates permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel? ☒ Yes ☐ No

## Auditor Overall Compliance Determination

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

## Instructions for Overall Compliance Determination Narrative

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's*

HIGHLY CONFIDENTIAL

ADOC-DS027540

conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.

ADOC AR 454 requires one third of the ADOC's facilities be audited each year.

## Standard 115.403: Audit contents and findings

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.403 (f)

* The agency has published on its agency website, if it has one, or has otherwise made publicly available, all Final Audit Reports within 90 days of issuance by auditor. The review period is for prior audits completed during the past three years PRECEDING THIS AGENCY AUDIT. In the case of single facility agencies, the auditor shall ensure that the facility's last audit report was published. The pendency of any agency appeal pursuant to 28 C.F.R. § 115.405 does not excuse noncompliance with this provision. (N/A if there have been no Final Audit Reports issued in the past three years, or in the case of single facility agencies that there has never been a Final Audit Report issued.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Type text here...

HIGHLY CONFIDENTIAL

# AUDITOR CERTIFICATION

I certify that:

- ☒    The contents of this report are accurate to the best of my knowledge.

- ☒    No conflict of interest exists with respect to my ability to conduct an audit of the agency under review; and

- ☒    I have not included in the final report any personally identifiable information (PII) about any inmate or staff member, except where the names of administrative personnel are specifically requested in the report template.

## Auditor Instructions:

Type your full name in the text box below for Auditor Signature. This will function as your official electronic signature. Auditors must deliver their final report to the PREA Resource Center as a searchable PDF format to ensure accessibility to people with disabilities. Save this report document into a PDF format prior to submission.[1] Auditors are not permitted to submit audit reports that have been scanned.[2] See the PREA Auditor Handbook for a full discussion of audit report formatting requirements.

Dave Cotten                    June 11, 2018

**Auditor Signature**                  **Date**

---

[1] See additional instructions here: https://support.office.com/en-us/article/Save-or-convert-to-PDF-d85a16c5-7d77-4a2d6-a216-6f4gf7c7c110

[2] See PREA Auditor Handbook, Version 1.3, August 2017, Pages 68-69.

HIGHLY CONFIDENTIAL

ADOC-DS027542