### ALABAMA ATTORNEY GENERAL'S OFFICE
### INVESTIGATIVE DIVISION
### SUMMARY OF FINDINGS
### ALABAMA DEPARTMENT OF CORRECTIONS

On August 22, 2018, I, Special Agent ████████████, and Special Agent ██████████ were contacted by Commissioner Jefferson Dunn of the Alabama Department of Corrections. We were asked to investigate two (2) allegations against Mr. Grantt Culliver, an Associate Commission of the Alabama Department of Corrections. These two (2) allegations were:

(space) 1) From March 2010 to May 2018, Commissioner Culliver was alleged to have been involved in an inappropriate relationship with ████████████████████████████ ██████████████████ Facility. The relationship has reportedly undermined the position and authority of the warden at the ████████████ facility, and caused a negative effect on the operational climate, good order and discipline of the facility.

2) During a March 2018 phone conversation with Warden Guy Noe of the North Alabama Community Based Facility, Associate Commissioner Grantt Culliver allegedly used inappropriate language, speaking in a very threatening and disparaging manner to Warden Noe.

## FINDINGS AND SUMMARY OF INVESTIGATION

*Allegation Two: Inappropriate Language Against Warden Noe*
This report will begin with an assessment of allegation two (2) because this is the allegation that resulted in the least interviews and the least amount of reviewable evidence. In an interview with Warden Noe he explained that he had received a telephone call from Commissioner Culliver in regards to the business manager at the facility, Mr. Schultz, having emailed someone at the Central Office in Montgomery, Alabama, and asking about the purchase of microwaves for the facility. According to Warden Noe he had received a phone call in which Commissioner Culliver had told him that he should never let his f***king business manager call him asking about anything. According to Warden Noe the phone call was very tense and there were several instances in which Commissioner Culliver used threatening or harassing language. There was no one on the phone call except Commissioner Culliver and Warden Noe so the only other evidence that could be located was the statement of Commissioner Culliver. On 10/09/2018 Commissioner Culliver was interviewed at the Office of the Attorney General and he was questioned as to his conversation with Warden Noe. Commissioner Culliver stated that he did not remember the exact language of the phone call but that he had no intention of threatening or demeaning Warden Noe when they spoke on the phone. Instead it was Commissioner Culliver's assertion that he was upset when he talked with Warden Noe and that he likely did use "curse" words on the phone with Warden Noe because the issue with the microwaves was yet another in a long line of issues he was having with Warden Noe. He stated that he did not recall using any language that would be considered threatening but that he did likely use language that would be considered foul in his conversation with Warden Noe concerning the purchase of the microwaves and the business manager contacting someone at the central office directly. He further stated that

CONFIDENTIAL



EXHIBIT
14
Culliver

Page 2

while he was trying to do better with his language he did have a long history of working in the field of corrections and that he had routinely used language that would be considered "curse" words or potentially obscene language, but he did so not out of the intent to threaten or demean Warden Noe.

*Determination of Finding:* While there is little doubt that a phone call took place that contained the use of language that would be deemed inappropriate there is insufficient evidence to determine whether or not the conversation resulted in any threatening or abusive language.

*Allegation One: Inappropriate Workplace Relationship with* ███████████
In investigating this allegation Special Agent ██████ and I were exposed to numerous employees within the Alabama Department of Corrections. During interviews and statements taken with these individuals a pattern of sexual misconduct became apparent. We were able to review Commissioner Culliver's ADOC emails, as well as his work computers and cell phones. In conducting a forensic analysis of each of these devices there were emails identified by me that led me to believe that Commissioner Culliver was not only engaged in an inappropriate sexual relationship with ██████████, but with five (5) additional women inside the Alabama Department of Corrections as well. The emails led myself and Agent ████████ to identify the following six (6) women as potential sexual partners of Commissioner Culliver: ████████████████████████████████ The following pages detail the investigation and findings as they relate to each of these females.

Page 3



CONFIDENTIAL

Page 4



CONFIDENTIAL

Page 5



CONFIDENTIAL

Page 6



*Determination of Finding:* Based on the digital evidence and interviews conducted it appears that ███ was involved in an ongoing relationship with Commissioner Culliver from at least 2010 until the initiation of this investigation. At no time did ███ nor Culliver adhere to ADOC policy and inform their supervisor about this relationship. It also appears that ███ engaged in the routine use of her cellular phone inside of a secure facility without permission from her warden and occasionally in direct contradiction to the instructions of her warden. She also used state vehicles and equipment to travel to unknown locations during the course of her relationship with Culliver. It also appears that ███ was not taking comprehensive time nor was she requesting off time for these activities and was travelling unapproved while on the clock and billing the ADOC for her time.

### *ADOC AR Violations:*

#### AR# 235: Fraternization Policy

It is the policy of the ADOC that employees must maintain a professional work environment where clear boundaries are established between employees' personal and work interactions and that their actions maintain ADOC workplace integrity.

All ADOC employees share the responsibility for maintaining professional relationships. All employees are responsible for the proper adherence to the AR and Institutional SOPs.

Tangible Employment Action; Action taken that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

ADOC-TP-008999

Inappropriate Relationships:  Relationships of whatever nature that compromise the integrity of supervisory authority or the chain of command; cause partiality or unfairness; involve the improper use of rank or position for personal gain; are exploitative or coercive in nature; create an actual or clearly predictable adverse impact on discipline, authority, morale or the ability of the ADOC to accomplish its mission.

235.III.V.  All personal relationships between supervisors and an employee in his/her chain of command are prohibited.

V.B. All personal or social relationships are prohibited if they;
1. Cause actual preference or unfairness; or
2. Involve the improper use of position for personal gain; or
3. Are unethical and threatening in nature; or
5. Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the ADOC to accomplish its mission.

235.C. 1. Supervisors including Executive Staff, must disclose immediately the existence of any relationship with an employee in his/her chain of command that has progressed, or is likely to progress, beyond a professional or social relationship to a personal relationship.
5.  Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

**AR# 208 Employees Standards of Conduct Annex H:**
5. Unauthorized use of telephones, bulletin boards or other state property.
11. Failure to follow supervisor instructions, non-compliance with policies and procedures.
17. Taking into any ADOC facility any article, item, or property which is not authorized by regulation, or without the approval of the Warden/Director.
18. Serious violations of rules, policies, procedures, regulations, laws, or reasonable conduct expectations.
23. Abusive or misuse of authority, including but not limited to departmental property and/or ADOC identification cards/items.

**AR #208.III.U Employees Standards of Conduct**
Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.
1.  Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.
2.  Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.

CONFIDENTIAL

Page 8

3. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

AR# 208.V.  All ADOC employees shall adhere to the following standards:
6. Protect and conserve funds, property, equipment and materials.
7. Observe all laws, rules and regulations.
8. Uphold, with integrity, the public's trust involved in their position.
12. Promptly report any incidents of sexual misconduct.
13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

AR# 208.O

The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary.  At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table.  To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner.  The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.



During the course of our investigation into the allegations concerning Culliver and ▮▮▮▮ it was brought to my attention that there had been whispers of another relationship involving ▮▮▮▮ and Culliver that had circulated in early 2016 ▮▮▮▮

CONFIDENTIAL

ADOC-TP-009001

Page 9



CONFIDENTIAL

Page 10



*Determination of Finding:* Based on the evidence available it is believed that ███████ was engaged in a sexual relationship with Culliver that spanned in time from 2014 until the initiation

Page 11

*her*

of our investigation into Culliver. It does not appear that at any time during the relationship did
███████ nor Culliver report this relationship to her supervisor nor did she alert anyone with the
ADOC of her ongoing relationship with Culliver ███████████████████████████████████████
█████████████████████████████████████ There is no way to determine whether or not promotional, or
any other, decisions were made on the basis of the relationship or the discovery of the
relationship by ███████████████ However, the fact that these decisions were overseen by
Culliver during a time in which he was engaged in a sexual relationship with ███████ warrants
consideration.

### *ADOC AR Violations:*
**AR# 235: Fraternization Policy**

> It is the policy of the ADOC that employees must maintain a professional work
> environment where clear boundaries are established between employees' personal
> and work interactions and that their actions maintain ADOC workplace integrity.
>
> All ADOC employees share the responsibility for maintaining professional
> relationships.  All employees are responsible for the proper adherence to the AR
> and Institutional SOPs.
>
> Tangible Employment Action; Action taken that constitutes a significant change
> in employment status, such as hiring, firing, failing to promote, reassignment with
> significantly different responsibilities, or a decision causing a significant change
> in benefits.
>
> Inappropriate Relationships:  Relationships of whatever nature that compromise
> the integrity of supervisory authority or the chain of command; cause partiality or
> unfairness; involve the improper use of rank or position for personal gain; are
> exploitative or coercive in nature; create an actual or clearly predictable adverse
> impact on discipline, authority, morale or the ability of the ADOC to accomplish
> its mission.

**235.III.V.**  All personal relationships between supervisors and an employee in his/her
chain of command are prohibited.
> V.B. All personal or social relationships are prohibited if they:
> 1. Cause actual preference or unfairness; or
> 2. Involve the improper use of position for personal gain; or
> 3. Are unethical and threatening in nature; or
> 5. Create an actual or clearly predictable adverse impact on discipline,
> authority, morale, or the ability of the ADOC to accomplish its mission.

**235.C.** 1. Supervisors including Executive Staff, must disclose immediately the existence
of any relationship with an employee in his/her chain of command that has
progressed, or is likely to progress, beyond a professional or social relationship to
a personal relationship.

ADOC-TP-009004

Page 12

5. Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

**AR #208.III.U Employees Standards of Conduct**

Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.

4. Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.

5. Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.

6. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

**AR# 208.V.  All ADOC employees shall adhere to the following standards:**

6. Protect and conserve funds, property, equipment and materials.

7. Observe all laws, rules and regulations.

8. Uphold, with integrity, the public's trust involved in their position.

12. Promptly report any incidents of sexual misconduct.

13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

**AR# 208.O**

The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary.  At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table.  To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner.  The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.

During the course of our investigation Agent █████████nd I discovered a series of emails that led us to believe that Culliver was likely engaged in a sexual relationship with ███████

Page 13

CONFIDENTIAL

ADOC-TP-009006

Page 14



**Determination of Finding:** Based on the evidence available it appears that ▮▮▮▮ and Culliver had a long running relationship that stretched almost a decade in length. At no point did ▮▮▮▮ nor Culliver ever report their relationship to a supervisor and at no point did she attempt to end the relationship. Instead it appears that she used her relationship with Culliver as a means of circumventing her chain of command when conveying complaints and/or concerns about the administration of the ▮▮▮▮ facility.

Page 15

*ADOC AR Violations:*
### AR# 235: Fraternization Policy

It is the policy of the ADOC that employees must maintain a professional work environment where clear boundaries are established between employees' personal and work interactions and that their actions maintain ADOC workplace integrity.

All ADOC employees share the responsibility for maintaining professional relationships. All employees are responsible for the proper adherence to the AR and Institutional SOPs.

Tangible Employment Action; Action taken that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Inappropriate Relationships: Relationships of whatever nature that compromise the integrity of supervisory authority or the chain of command; cause partiality or unfairness; involve the improper use of rank or position for personal gain; are exploitative or coercive in nature; create an actual or clearly predictable adverse impact on discipline, authority, morale or the ability of the ADOC to accomplish its mission.

235.III.V. All personal relationships between supervisors and an employee in his/her chain of command are prohibited.
V.B. All personal or social relationships are prohibited if they;
1. Cause actual preference or unfairness; or
2. Involve the improper use of position for personal gain; or
3. Are unethical and threatening in nature; or
5. Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the ADOC to accomplish its mission.

235.C. 1. Supervisors including Executive Staff, must disclose immediately the existence of any relationship with an employee in his/her chain of command that has progressed, or is likely to progress, beyond a professional or social relationship to a personal relationship.
5. Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

### AR #208.III.U Employees Standards of Conduct

Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.
7. Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any

CONFIDENTIAL

Page 16

party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.

8. Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.

9. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

AR# 208.V. All ADOC employees shall adhere to the following standards:

6. Protect and conserve funds, property, equipment and materials.

7. Observe all laws, rules and regulations.

8. Uphold, with integrity, the public's trust involved in their position.

12. Promptly report any incidents of sexual misconduct.

13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

AR# 208.O

The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary. At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table. To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner. The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.

During the course of our investigation Agent ▮▮▮▮ and I discovered a series of communications between Culliver and ▮▮▮▮▮ that indicated that the two (2) had been or were currently involved in an ongoing sexual relationship.

Page 17

CONFIDENTIAL

ADOC-TP-009010

Page 18

CONFIDENTIAL

ADOC-TP-009011

Page 19

███████████████████████████████████████████████

*Determination of Finding:* Based on the evidence reviewed and the interviews conducted it appears that ████ and Culliver were also engaged in a long running sexual relationship that may or may not have ended prior to this investigation. Regardless, at no point did ████ nor Culliver inform anyone in their chain of command that ~~she was involved~~ in a sexual relationship ~~with Culliver~~. *they were* Further, this relationship led to a situation in which ████ felt comfortable enough with Culliver that she was willing, and did so on several occasions, to engage in negative commentary with Culliver about her direct supervisor, ████. As a result the efficiency of the organization was negatively affected because of this relationship. Additionally, while all parties involved claimed that no one benefited from the sexual relationship there is some question as to whether the expenditures to repair the housing at ████ would have been approved if requested by a warden not currently or formerly engaged in a sexual relationship with Culliver. This statement is based off Culliver's own statement that the housing at ████ was in bad shape, yet he had not approved nor moved to make any of these repairs under the former warden.

## *ADOC AR Violations:*
### AR# 235: Fraternization Policy

It is the policy of the ADOC that employees must maintain a professional work environment where clear boundaries are established between employees' personal and work interactions and that their actions maintain ADOC workplace integrity.

All ADOC employees share the responsibility for maintaining professional relationships. All employees are responsible for the proper adherence to the AR and Institutional SOPs.

Tangible Employment Action; Action taken that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Inappropriate Relationships: Relationships of whatever nature that compromise the integrity of supervisory authority or the chain of command; cause partiality or unfairness; involve the improper use of rank or position for personal gain; are exploitative or coercive in nature; create an actual or clearly predictable adverse impact on discipline, authority, morale or the ability of the ADOC to accomplish its mission.

235.III.V. All personal relationships between supervisors and an employee in his/her chain of command are prohibited.
V.B. All personal or social relationships are prohibited if they;
   1. Cause actual preference or unfairness; or

Page 20

2. Involve the improper use of position for personal gain; or
3. Are unethical and threatening in nature; or
5. Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the ADOC to accomplish its mission.

235.C. 1. Supervisors including Executive Staff, must disclose immediately the existence of any relationship with an employee in his/her chain of command that has progressed, or is likely to progress, beyond a professional or social relationship to a personal relationship.
5. Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

**AR #208.III.U Employees Standards of Conduct**
Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.
10. Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.
11. Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.
12. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

**AR# 208.V. All ADOC employees shall adhere to the following standards:**
6. Protect and conserve funds, property, equipment and materials.
7. Observe all laws, rules and regulations.
8. Uphold, with integrity, the public's trust involved in their position.
12. Promptly report any incidents of sexual misconduct.
13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

**AR# 208.O**
The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary. At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table. To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner. The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.

CONFIDENTIAL

Page 21

In reviewing Culliver's ADOC emails for evidence of sexual relationships with ████ and ████, myself and Agent ████ came across a series of flirtatious emails between Culliver and ████, the



Page 22

*Determination of Finding:* Based on the evidence available and reviewed it appears that Culliver and ████ engaged in a sexual relationship for an undetermined, albeit likely very brief, time period before they broke off the relationship. During the course of this relationship there was no attempt by either party to report the relationship to an immediate supervisor or any other personnel within the ADOC.

### *ADOC AR Violations:*
### AR# 235: Fraternization Policy

It is the policy of the ADOC that employees must maintain a professional work environment where clear boundaries are established between employees' personal and work interactions and that their actions maintain ADOC workplace integrity.

All ADOC employees share the responsibility for maintaining professional relationships. All employees are responsible for the proper adherence to the AR and Institutional SOPs.

Tangible Employment Action; Action taken that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Inappropriate Relationships: Relationships of whatever nature that compromise the integrity of supervisory authority or the chain of command; cause partiality or unfairness; involve the improper use of rank or position for personal gain; are exploitative or coercive in nature; create an actual or clearly predictable adverse impact on discipline, authority, morale or the ability of the ADOC to accomplish its mission.

235.III.V.  All personal relationships between supervisors and an employee in his/her chain of command are prohibited.
V.B. All personal or social relationships are prohibited if they;
1. Cause actual preference or unfairness; or
2. Involve the improper use of position for personal gain; or
3. Are unethical and threatening in nature; or
5. Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the ADOC to accomplish its mission.

235.C. 1. Supervisors including Executive Staff, must disclose immediately the existence of any relationship with an employee in his/her chain of command that has progressed, or is likely to progress, beyond a professional or social relationship to a personal relationship.

CONFIDENTIAL

Page 23

5. Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

**AR #208.III.U Employees Standards of Conduct**

Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.

13. Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.
14. Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.
15. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

**AR# 208.V. All ADOC employees shall adhere to the following standards:**

6. Protect and conserve funds, property, equipment and materials.
7. Observe all laws, rules and regulations.
8. Uphold, with integrity, the public's trust involved in their position.
12. Promptly report any incidents of sexual misconduct.
13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

**AR# 208.O**

The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary. At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table. To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner. The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.

During the course of our investigation there were several instances in which Agent ████ and I came across information that led us to believe that ████ and Culliver may have been involved in a sexual relationship of an unknown length of time. There were no direct emails between ████ and Culliver as there were with other females identified during the course of this investigation. Rather, there was a pattern of behavior consistent with the behavior of these other women – i.e. ████████ – in which ████ seemed to feel very comfortable approaching Culliver for routine and personal discussions. Of particular note was a series of emails

CONFIDENTIAL



Page 24



*Determination of Finding:* Based on the evidence available there is insufficient evidence to show that ███ and Culliver were involved in any sexual relationship. There is, however, information that would show that ███ and Culliver were perhaps not being the best stewards of the state's money in that they were not only refurbishing state-owned housing but they were then adding a monthly service fee for security services that could be deemed unnecessary.

### Miscellaneous Findings – Grantt Culliver

In talking with Culliver in his interview there was an admission of at least one (1) other temporary sexual relationship with a female ███████ employed at ███████ Facility. However, Culliver acknowledged that the relationship was short lived and very limited;

Page 25

so much so that he could not even recall the female's name and only remembered her occupation at the facility. I have since discovered that the female is most likely  and that she is no longer employed with the ADOC and has potentially left the state.

In interviewing Culliver he was very cooperative and professional in his behavior. I talked with him about how the personnel within the ADOC viewed him and his skills in the area of correctional management, to which he then admitted that he had a weakness for women and that he had allowed that weakness to place him in the position that he was in. When I asked how he felt it would be possible to return to the ADOC and supervise personnel who were now aware of his indiscretions, Culliver admitted that he did not feel that he could return to the ADOC and then stated that he had perhaps overstayed his time in the correctional field. It is worth noting that while none of the females that Agent ▇▇▇▇▇ and I interviewed reported these relationships to their supervisors or command staff, in no instance did Culliver ever report these relationship to his supervisors – with his sexual relationships going back to very early in his ADOC career. Further, the relationships that Culliver maintained with these women have cast a cloud of doubt over many of the decisions that he made in his day-to-day activities. Culliver repeatedly claimed that the relationships that he was in with these various women did not affect his decision making and that he never used his position to benefit any of these ladies. However, there are instances in which this could be questioned. Additionally, while Culliver claimed that he did not use his position within the ADOC to facilitate or further any of these relationships he did use state-issued equipment such as his cellular phone, ADOC email and state-issued vehicle to not only initiate these relationships but to maintain the relationships with these women. In the case of his state-issued vehicle – and later his state-provided residence – he actually used that equipment and those facilities to facilitate sexual relationships with these women.

## *ADOC AR Violations:*

### AR# 235: Fraternization Policy

It is the policy of the ADOC that employees must maintain a professional work environment where clear boundaries are established between employees' personal and work interactions and that their actions maintain ADOC workplace integrity.

All ADOC employees share the responsibility for maintaining professional relationships. All employees are responsible for the proper adherence to the AR and Institutional SOPs.

Tangible Employment Action; Action taken that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

CONFIDENTIAL

Page 26

Inappropriate Relationships: Relationships of whatever nature that compromise the integrity of supervisory authority or the chain of command; cause partiality or unfairness; involve the improper use of rank or position for personal gain; are exploitative or coercive in nature; create an actual or clearly predictable adverse impact on discipline, authority, morale or the ability of the ADOC to accomplish its mission.

## 235.III.V.

All personal relationships between supervisors and an employee in his/her chain of command are prohibited.

V.B. All personal or social relationships are prohibited if they;
1. Cause actual preference or unfairness; or
2. Involve the improper use of position for personal gain; or
3. Are unethical and threatening in nature; or
5. Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the ADOC to accomplish its mission.

## 235.C.

1. Supervisors including Executive Staff, must disclose immediately the existence of any relationship with an employee in his/her chain of command that has progressed, or is likely to progress, beyond a professional or social relationship to a personal relationship.
5. Failure of a supervisor to voluntarily disclose the existence of any such relationship and allow the ADOC to take reasonable steps to mitigate the situation shall be subject to corrective action.

## 208.Annex H.

13. Disagreeable behavior, including lack of cooperation and insubordination.
17. Taking into any ADOC facility any article, item, or property which is not authorized by regulation, or without the approval of the Warden/Director.
18. Serious violations of rules, policies, procedures, regulations, laws, or reasonable conduct expectations.
20. Use of abusive, profane or threatening language to other employees, inmates, or the public.
23. Abusive or misuse of authority, including but not limited to departmental property and/or ADOC identification cards/items.

## AR #208.III.U Employees Standards of Conduct

Sexual Misconduct: Any behavior or act of sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative.
16. Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.
17. Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.

Page 27

18. Any act of sexual conduct as described in Code of Alabama 1975. Section 14-11-30.

**AR# 208.V. All ADOC employees shall adhere to the following standards:**
6. Protect and conserve funds, property, equipment and materials.
7. Observe all laws, rules and regulations.
8. Uphold, with integrity, the public's trust involved in their position.
12. Promptly report any incidents of sexual misconduct.
13. Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

**AR# 208.O**
The Annex H table, Tale of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary. At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table. To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner. The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.



CONFIDENTIAL

Page 28



CONFIDENTIAL

ADOC-TP-009021