FILED

2025 Mar-14  PM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | | |
|---|---|---|
| LAKEISHA EZELL, as representative of the ESTATE OF TERRENCE ANDREWS, | ) ) ) | Case No.: 4:20-CV-02058-ACA |
| | ) | Hon. Judge Annemarie Carney Axon |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | |
| JEFFERSON DUNN, *et al.,* | ) ) | |
| *Defendants.* | ) ) | |

## PLAINTIFF LAKEISHA EZELL'S MOTION TO STRIKE DEFENDANTS' EXPERT OPINIONS FROM THEIR SUMMARY JUDGMENT BRIEFING

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

LEGAL STANDARD ............................................................................................ 2

ARGUMENT AND AUTHORITIES .................................................................. 4

    A. ADOC Defendants provide a recitation of expert opinions that does not follow the Court's order. ..................................................................................4

    B. Mark Inch's expert opinions should be excluded at summary judgment. .......5

    C. Kevin Myers' opinions should be excluded at summary judgment...............10

    D. Brian Zawilinski's opinions should be excluded at summary judgment. ......18

# TABLE OF AUTHORITIES

## CASES

*Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107 (S.D. Fla. 2024) ...........................14

*Broussard v. Maples*, 535 F. App'x 825 (11th Cir. 2013)........................................................2

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe*, 402 F.3d 1092 (11th Cir. 2005).....3, 7, 9, 20

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) .......................................................3

*Distributor Res. Mgmt, Inc. v. Peacock*, 2012 WL 2930787 (N.D. Ala. July 13, 2012)).........5

*Feliciano v. City of Miami Beach*, 844 F. Supp.2d 1258 (S.D. Fla. 2012)....................3, 7, 20

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ..................................................................14

*Harrell v. Wal-Mart Stores East, LP*, 724 F. Supp. 3d 1250 (N.D. Ala. 2024) ...................7

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 684183, (N.D. Fla. Feb. 11, 2021)........................................................................................................4

*In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)..................................................................5

*Jones v. Otis Elevator Corp.*, 861 F.2d 655 (11th Cir. 1988) ..........................................11, 15

*Kilpatrick v. Breg, Inc.,* 613 F.3d 1329 (11th Cir. 2010) ...................................................3, 17

*Powrzanas v. Jones Utility & Contracting Co. Inc.*, 834 F. App'x 500 (11th Cir. 2020) .........5

*Schoen v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 1323 (S.D. Ala. 2022) .........4, 5, 10

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ...............................................2, 3, 7

## STATUTES

Fed. R. Evid. 702.........................................................................1, 2, 5, 7, 10, 11, 13, 15, 18

# INTRODUCTION

Defendants rely very little on the opinions of their three retained experts in support of summary judgment. The Facility Defendants and ADOC Defendants hardly reference any retained expert testimony in their statements of fact, nor do they point to any expert opinions in their discussions of liability of the Defendants. The ADOC Defendants also include an improper summary of the defense experts' opinions in a standalone section in the middle of their brief, but do not claim to be presenting undisputed facts, and do not appear to be relying on these opinions for purposes of summary judgment. This is likely an acknowledgement that these defense expert opinions are vehemently disputed and controverted by the evidence in this case, as well as the reasoned opinions of Plaintiff's retained expert, and as such cannot support any argument that Defendants are entitled to summary judgment. For this reason alone, the defense expert opinions can be disregarded by the Court.

Yet to the extent the Court views any references to defense retained experts as pertinent to adjudication of the summary judgment motions, Defendants' experts' opinions do not satisfy the admissibility requirements of Federal Rule of Evidence 702 and should be stricken for that additional reason. As discussed in greater detail below, these opinions suffer from a variety of defects, including that the experts lack the necessary expertise to reach the opinions provided; that the experts failed to use any reliable or reasonable methodology (or sometimes any methodology at all) or to rationally connect their opinions to the facts in this case; and that the opinions are

unhelpful to the jury either because they are irrelevant or because they are squarely within the understanding of a layperson. Given the Court's important role as a gatekeeper of unsound expert opinions, this Court must strike the expert opinions discussed below.

## LEGAL STANDARD

Expert opinions may not be used to support a party's claims or defenses either at summary judgment or at trial  unless they meet the standards set out in Rule 702 of the Federal Rules of Evidence. See *Broussard v. Maples,* 535 F. App'x 825 (11th Cir. 2013). "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert [scientific and technical] evidence." *United States v. Frazier*, 387 F.3d 1244, 1250 (11th Cir. 2004). This is a critically important function. *Id.* To determine whether an expert's testimony is admissible, district courts consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* The proponent of the expert testimony bears the burden of establishing each of these three requirements–qualification, reliability, and helpfulness. *Id.*

To determine whether an expert is qualified, a court should "examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Feliciano v. City of Miami Beach*, 844 F. Supp.2d 1258, 1262 (S.D. Fla. 2012).

To establish reliability, a court considers the following non-exhaustive factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)). "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for that opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261. A court should exclude expert opinions that are connected to the underlying evidence only by ipse dixit, or are otherwise "imprecise and unspecific." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe*, 402 F.3d 1092, 1111 (11th Cir. 2005).

Finally, an opinion assists the trier of fact if it "concerns matters that are beyond the understanding of the average lay person"; in contrast, an opinion "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1252-63; *accord Cook*, 402 F.3d at 1111. An expert may not offer opinions that are legal conclusions. *Cook*, 402 F.3d at

3

1112 n.8. An expert is not permitted to "simply parrot[] another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion." *Schoen v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 1323, 1334 (S.D. Ala. 2022) (quoting *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 684183, at *2 (N.D. Fla. Feb. 11, 2021)).

## ARGUMENT AND AUTHORITIES[1]

### I. ADOC Defendants provide a recitation of expert opinions that does not follow the Court's order.

The ADOC Defendants provide a section of their brief called "Expert Testimony." This section appears to provide background on Defendants' experts and ADOC Defendants' explanation of their experts' opinions. This section does not set out facts in line with the Court's order (ECF 107 at 14-16), nor do the ADOC Defendants cite to this section or the expert opinions discussed therein elsewhere in their brief. To the extent ADOC Defendants intend to argue in reply that these opinions support summary judgment on behalf of any individual Defendant in some way, any such argument has been forfeited and waived because it was not made as such in ADOC Defendants' opening brief in support of any Defendants' claim to

---

[1] To serve the purposes of efficiency and conservation of resources, Plaintiff moves to strike here only opinions of Defendants' experts that were actually discussed in Defendants' summary judgment briefing. Pursuant to the parties' agreement and joint understanding, as emailed to the Court on February 17, 2025, Plaintiff reserves the right to raise prior to trial in a motion *in limine* broader arguments to exclude Defendants' experts' testimony at trial.

summary judgment. *Powrzanas v. Jones Utility & Contracting Co. Inc.*, 834 F. App'x 500, 510 n.9 (11th Cir. 2020); *In re Egidi,* 571 F.3d 1156, 1163 (11th Cir. 2009); *Distributor Res. Mgmt, Inc. v. Peacock*, 2012 WL 2930787 (N.D. Ala. July 13, 2012). Moreover, Defendants do not, and cannot, argue that Defendants' expert opinions are undisputed—these opinions are clearly controverted by Plaintiff's statement of facts and supporting evidence, as well as the opinions of Plaintiff's expert Dan Pacholke (ECF 376-1; ECF 185-36).[2] As such, the defense expert opinions cannot establish a basis for summary judgment, which requires Defendants and the Court to take the evidence in the light most favorable to Plaintiff. Finally, many if not all of the opinions discussed in this section should be excluded under Federal Rule of Evidence 702.

## II.   <u>Mark Inch's expert opinions should be excluded at summary judgment</u>

Defendants discuss or rely on several of Inch's opinions at summary judgment that do not satisfy Rule 702's standards. First, ADOC Defendants cite to Inch's recitation of other documents; but Inch cannot be used simply to parrot the information from other evidence. *Schoen*, 638 F. Supp. 3d at 1334.  For example, ADOC Defendants' Fact No. 71 cites Inch's recitation of Dunn's own testimony that

---

[2] For example, ADOC Defendants assert that Inch concluded that "St. Clair staff responded quickly and appropriately to the discovery of the inmate-on-inmate assaults at issue in these cases." *But see* ECF 376-1 ¶¶ 20, 25, 29, 30 (no rover was on duty in the cellhouse; Davis was permitted to run from P1 to P2; staff witnesses left the prison before they were interviewed and the crime scene was not preserved; the housing unit was supposed to be on lockdown, but prisoners were moving freely about after the murder and no one was punished).

during Dunn's tenure, the ADOC budget increased. ECF 192 at 19 ¶ 71; ECF 185-31. To the extent Defendants want to introduce evidence from documents or testimony of non-experts in evidence, they are required to cite to that evidence. This is not a proper subject of expert testimony. These citations should be stricken.

Inch also provides opinions that he lacks any specialized experience or credentials to provide, and which do not assist the trier of fact because they are within the understanding of the average lay person. As an example, the Facility Defendants rely on opinions from Inch that Andrews's murder was spontaneous and not premeditated, and that it would have been impossible to prevent the murder: "I can reasonably conclude that Davis' attack on Andrews did not constitute a premeditated, planned attack, and therefore, remained virtually impossible for staff to prevent, especially given that the assault happened inside the cell" (ECF 185-31 at 46); "Davis's assault of Andrews remains a particularly random and unforeseen attack" (ECF 185-31 at 33); and, "Davis's actions do not appear premeditated. Rather, this seems to represent a spontaneous altercation between cell mates due to a disagreement over the use of the cell as a spot for sexual relations" (ECF 185-31 at 6). *See* ECF 269 at 13, ¶¶ 16 & 19 (citing ECF 185-31 at 5, 33, 46); ECF 269 at 40 (citing ECF 185-31 at 46).

Inch is disclosed as an expert in management of corrections agencies (ECF 185-31 at 2), and he lacks any experience investigating murders or assessing the mental state of individuals who commit murder (ECF 185-31 at 3-4); nor does he

provide any explanation of how any specialized knowledge or experience he might have allowed him to reach his opinion about the nature of Andrews's murder (ECF 185-31 at 5, 33, 46). Moreover, Inch does not provide any explanation of how he reached this opinion based on the facts, or tie it to the underlying facts and evidence in this case.[3] Additionally, whether a murder is premeditated is something that a lay person can determine without any specialized knowledge; indeed, our justice system has delegated this task to juries in criminal homicide cases. Issues of causation and whether Defendants could have taken any action to prevent this murder likewise fall within the understanding of a lay person and present a quintessential jury question. See *Harrell v. Wal-Mart Stores East, LP*, 724 F. Supp. 3d 1250, (N.D. Ala. 2024). Inch's opinion about the spontaneous nature of the crime should thus be excluded under all three Rule 702 factors. *See Feliciano*, 844 F. Supp.2d at 1262 (opinions should be excluded if subject matter is not within scope of qualifications); *Cook,* 402 F.3d at 1111 (conclusory or unexplained opinions should be excluded); *Frazier*, 387 F.3d at 1252-63 (opinions within understanding of average lay person should be excluded).

ADOC Defendants also lay out several broad opinions about Inch that are not based on any sound methodology and therefore must be excluded as unreliable. For example, Inch opines that staffing levels, inmate population levels, inmate

---

[3]  Inch even concedes that in reaching his opinions in this case, to determine the facts about the underlying murders he relied only on the I&I summary report rather than the underlying incident reports or witness interviews. ECF 185-31 at 5 (stating that he reviewed the I&I report, and based upon that report alone, determined that the murder did not appear to be premeditated); ECF 351 at 79:6-81:1.

supervision, unauthorized movement, classification and housing policies, and contraband search protocols did not cause Andrews's assault. ECF at 192. But in preparing his report and reaching his opinions, Inch did not review the incident reports or witness statements related to Andrews's assault (ECF 351 at 80:5-81:1);  did not do any analysis of unauthorized movement at St. Clair in 2018 and early 2019 and whether staff were complying with policies related to inmate movement control (ECF 351 at 90:3-8, 91:206); did not review or rely on the St. Clair classification manual, instead relying only on deposition testimony from defendants that the manual exists and was used (ECF 351 at 92:16-93:3); and did not review any ADOC or St. Clair records documenting contraband levels or reflecting contraband searches at the facility–again, his opinion about contraband was based solely on defendants' self-serving deposition testimony (ECF  351 at 84:9-25). Inch's failure to review the underlying (and available) records relating to the conditions, policies, and practices at St. Clair undermines any claim that his opinions are reliable or based on any sound methodology. Rather, as Inch admits, he was simply crediting and relying on the testimony of Defendants themselves. ECF 351 at 150:10-151:23. This opinion must be excluded.

Similarly, Inch opines that, "Dunn identified challenges facing the ADOC and responded reasonably, by developing a comprehensive strategic plan and taking concerted actions to implement his plan to realize long-term positive change for ADOC" and that "The ADOC Officials responded reasonably to the risk of violence

at St. Clair by repairing or replacing damage and aging infrastructure, establishing controlled movement measures, and taking various steps to addressing staffing challenges." ECF 192 at 27. But Inch did not review documents reflecting assessments or data about the conditions at St. Clair in 2018 and early 2019, including PREA Audit reports, the 2018 ASCA audit report, the annual St. Clair Institutional Vulnerability Analysis, reports of assaults and the spreadsheet of incident reports, or contraband search results. ECF 185-41 at 61-63. Indeed, Inch's report does not contain any opinions about the underlying conditions and how the conditions affect risks of violence at St. Clair. ECF 185-31. For example, he did not consider or reach opinions on whether staff were complying with the classification manual requirements (ECF 351 at 93:-9:21), or whether staff were complying with written policies including those relating to the Special Safety Unit (ECF 351 at 125:11-127:1). Nor did he provide any opinions or analysis about the levels of violence, uncontrolled movement or contraband at St. Clair in 2018 and early 2019, or consider underlying data or reports regarding these issues. *Id.* at 76:9-77:1, 83:17-84:25, 90:3-15; ECF 185-31. As such, any opinion that Dunn or any other Defendant acted reasonably in response to the conditions (including levels of violence and contraband, and lack of policy enforcement) or risks posed at St. Clair is unreliable and not based on any sound methodology or reasoned assessment of the record. *See Cook*, 402 F.3d at 1111. Inch cannot provide anything more than a conclusory, unsupported conclusion that

Defendants acted reasonably in response to risks and conditions he did not assess, consider, or review data about. *Id.* This opinion must be stricken.

Additionally, Inch opines that "ADOC operates under a robust set of policies and procedures guiding the practice of every individual from Commissioner to correctional officer within the ADOC." ECF 192 at 27 (citing ECF 185-31 at 46-49). But Inch did not do any methodological or systemic analysis of line staff compliance with St. Clair's written policies, nor did he consider reports or data about compliance with policy. ECF 351 at 86:1-87:21, 90:10-92:15; ECF 185-31 at 60-63 (material reviewed, omitting PREA and ASCA audits, vulnerability analysis reports, monitoring reports, incident report spreadsheet and incident reports relating to other incidents, Quality Improvement Team meeting minutes, security team meeting minutes). Accordingly, there is no reasonable basis for this opinion, and it should be stricken and excluded as unreliable.

## III.   Kevin Myers' opinions should be excluded at summary judgment

Defendants discuss or rely on several of Myer's opinions at summary judgment that do not satisfy Rule 702's standards. First, the ADOC Defendants' Fact Nos. 13, 23, 24, 26, 27, 61, 90 and 91 cite information that Defendants identify as facts from Mr. Andrews's underlying criminal history and classification by ADOC (ECF 192 at 9-11, 17, 23), but none of those are the proper topic of expert opinion. *Schoen*, 638 F. Supp. 3d at 1334. Myers cannot be used simply to parrot factual information from other sources, particularly when Defendants do not include the underlying evidence in

the first place. To the extent Defendants wanted to introduce evidence from documents or testimony of non-experts about Mr. Andrews's criminal history or classification, they had the opportunity to do so through appropriate evidence. These expert citations should be stricken. *See id.*

For example, in Fact No. 95, ADOC Defendants rely exclusively on a Myers expert report citation for the proposition that "ADOC and St. Clair's classification system complies with nationally accepted standards." ECF 192 at 24. Yet this opinion is unreliable. First, at best, Myers looked only at information that bore on whether, on paper, the classification system complied with standards—not whether the way it was implemented complied with policy and/or standards. See *Jones v. Otis Elevator Corp.*, 861 F.2d 655, 662-63 (11th Cir. 1988) ("[R]elevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); Fed. R. Evid. 702 (adv. cmte. note to 2023 amendments) (confirming that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," go to admissibility, not merely to weight). During his deposition, Myers admitted that he "didn't do any analysis of classification records to assess whether the classification manual was being followed, other than looking at the classification records of Terrence Andrews and Cedrick Davis." ECF 348 at 89:3-21; *id.* at 201:21-202:12 (Myers did not conduct any analysis of how Standard Operating Procedure 126 was implemented aside from looking at Cedric Davis and Terrence Andrews's

classification decisions); *id.* at 76:20-25 (Myers did not do any analysis of line staff compliance with St. Clair's written policies other than as expressly stated); ECF 185-32 at 48-49 (list of materials reviewed does not include any classification records for any prisoners other than Mr. Andrews and Mr. Davis); ECF 348 at 71:13-72:11 (list of materials reviewed contains all documents relied upon by Myers to reach his opinions). As such, he does not present a sufficient basis to opine about operation of the classification system in practice at St. Clair.

As for the reliability of Myers's opinions about classification of Andrews and his assailant, Cedric Davis, those are flatly unreliable in their methodology. As set forth in Plaintiff's response (ECF 376-1 at 25-26), ADOC's classification manual required use of a Risk Assessment tool that indicated closed custody for prisoners with either: (a) a total of 12 points or more for the entire set of 8 questions, or (b) 10 points or more in total on the first 4 questions. ECF 185-18 at 75-76; ECF 366-1 at 51:2-12. Davis's risk assessments on August 12, 2017 and January 30, 2018 both assessed Davis at 22 points in all, with 13 points on the first four questions, and thus he required close custody according to both metrics in the Risk Assessment tool. ECF 185-17 at 10, 24, 36; ECF 185-18 at 75-76; ECF 366-1 at 51:2-12. By October 4, 2018, Davis's documented classification risk level had risen to 24 risk level points, with 13 points in total on the first four questions. ECF 198-6 at 10. Thus, Davis again required close custody according to both metrics in the Risk Assessment. ECF 185-18 at 75-76; ECF 366-1 at 51:2-12, 88:9-16. Yet Defendant Warden Jones signed off on a

recommendation that Davis be held in medium custody during an October 2018 review. ECF 198-6 at 10-11; ECF 366 at 96:17-21. When asked about St. Clair's fidelity to the risk assessment tool at his deposition, Myers was not even aware of any departures from the risk assessment tool's dictates. ECF 328 at 226:6-227:17 (Myers did not recall any overrides for Cedric Davis or Clarence Jackson); id. at 201:15-20 (Myers believed ADOC complied with the classification manual as to those individuals). Myers's classification  opinions are not only disputed, but also unreliable in their methodology.

In the center of their brief, impermissibly, ADOC Defendants also sketch out several broad opinions by Myers that they cite nowhere in the remainder of their brief, not referencing these opinions as to any particular defendant. ECF 192 at 25-26. As set forth above, *supra* at 4, this discussion fails to set out facts in line with the Court's order (ECF 107 at 14-16); Defendants do not rely upon it anywhere in their discussion of defendant liability, and thus, it has no bearing on Defendants' liability. Moreover, these opinions are hotly disputed, including by evidence including Plaintiff's expert Dan Pacholke, and Defendants do not even claim otherwise, having omitted them from the statement of undisputed facts.  As such, these opinions cannot support summary judgment. Thus, this Court need not consider this section.

Yet if the Court does consider these facts, the opinions discussed in this section should be excluded under Federal Rule of Evidence 702 as well because they are unreliable and rely on insufficient sources and methods. For example, Defendants cite

Myers's opinion that, "[t]he ADOC Officials established appropriate policies and procedures for identification and removal of contraband, and St. Clair staff conducted appropriate searches for contraband and disciplined inmates in possession of contraband items." ECF 192 at 25. Yet at his deposition, Myers admitted that he merely relied on Defendants' claims that contraband searches pursuant to rule, and did not do any sort of independent review of records to assess the level of searches done in practice. ECF 348 at 95:23-96:25; *see also id.* at 157:14-158:15 &76:15-25. Myers did not do any independent analysis of the level of contraband at the facility. ECF 348 at 226:1-5. Nor did Myers look at incident reports documenting contraband searches or discipline for failure to conduct contraband searches. ECF 348 at 95:4-16; ECF 185-32 at 48-49. Nor, besides looking at the underlying incident, did Myers assess whether St. Clair staff complied with the safety and security policies that were on paper. ECF 348 at 157:14-158:15. Myers's methodology is unreliable to support his broader systemic opinion; a district court need not "admit opinion evidence which is connected to existing data only by the ipse dixit of the expert," such as when "there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 114–15 (S.D. Fla. 2024) ("an opinion is not reliable when there is 'too great an analytical leap between the [supporting] data and the opinion proffered'").

14

Likewise, Myers' opinions that Defendants "took reasonable and appropriate steps" to respond to the violence at St. Clair, or "acted in [a] thoughtful and creative way to address challenges in ADOC facilities (including St. Clair) with staffing, contraband, inmate-on-inmate violence, inmate misconduct, physical plant, and operation of the ADOC system with limited resources," are unsound in their underlying data and methodology. ECF 192 at 20. First, without conducting any analysis on the violence and underlying conditions at St. Clair, Myers lacks a solid basis upon which to opine on whether the response to that violence or condition(s)—that he did not assess—was "reasonable and appropriate." *See Jones v*, 861 F.2d at 662-63 ("[R]elevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); Fed. R. Evid. 702 (adv. cmte. note to 2023 amendments) (confirming that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," go to admissibility, not merely to weight).

As it relates to violence and "inmate-on-inmate misconduct," for example, Myers admitted repeatedly that he did not look at incident reports (apart from the underlying incident) or data on violence at St. Clair. ECF 348 at 80:9-14, 76:10-14, 80:9-19. When asked why he had opined in his report that the level of violence at St. Clair was consistent with other similar facilities, he could not identify what source that conclusion was based on other than that it must be somewhere in his list of materials

reviewed. ECF 328 at 180:8-182:1. This is insufficient to develop an opinion on the scope of the underlying condition of systemic violence. The same absence of a factual evidentiary basis is true of the rest of the underlying conditions referenced by Myers. *See, e.g., supra* at 2-3 (Myers made no assessment of level of contraband or searches at St. Clair in practice); ECF 348 at 93:7-11 (Myers made no assessment of the sufficiency of staffing in practice); *id.* at 77:1-5 (Myers made no assessment of staffing levels in practice at St. Clair other than what is in his report); ECF 185-32 (Myers's report does not describe any such analysis of St. Clair staffing levels in practice);  ECF 348 at 158:16-24 & 90:18-24 (Myers did not conduct any analysis into whether line staff were actually complying in practice with any of St. Clair's written policies); *id.* at 85:9-86:24 (Myers reviewed only references to staffing audits, not the audits or even summaries of those audits).

Second, as to Myers's assessment that Defendants acted appropriately in response to these conditions (which, again, Myers did not assess), Myers relied only on those documents provided to him by the defense. ECF 348 at 73:3-74:25; ECF 185-32 at 48-49. He did not ask to review any documents himself. ECF 348 at 73:3-74:25. As is evident from the "Materials Reviewed" list in his report, the documents he reviewed and relied upon were almost exclusively those created by ADOC employees, or consisting of Defendants' deposition testimony. ECF 185-32 at 48-49. Myers did not rely on any outside audits or reports about St. Clair from non-ADOC sources, other than a single PREA audit and a few references (not even summaries) to

16

other audits that he did not review. ECF 185-32 at 48-49; ECF 348 at 71:17-72:18, 83:7-86:24, 158:16-24. He was not given to review any ASCA audits, vulnerability analysis reports, monitoring reports, incident report spreadsheet and incident reports relating to other incidents, Quality Improvement Team meeting minutes, or security team meeting minutes, for example. ECF 185 at 48-49. This approach also presents an unsupportable methodology, as looking at one-sided data is unreliable and scientifically unsound. *Kilpatrick*, 613 F.3d at 1336 (district court must scrutinize the reliability of the expert's "sources and methods"); *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1371-72 (N.D. Ga. 2021).

As another example, Myers's opinions that "ADOC Officials maintained a comprehensive classification system; ADOC staff appropriately classified Andrews and Davis; and the ADOC Officials implemented an appropriate system to address safety concerns, including separating dangerous inmates from the general population" are unreliable for the reasons explained *supra* at 2-3, including that Myers did not have a sufficient basis to opine at a systemic level based on a review strictly limited to the underlying incident; and his conclusions about Davis were unreliable and unsupported. In short, Myers' failure to review the underlying (and available) records relating to the conditions and practices at St. Clair undermines any claim that his opinions are reliable or based on any sound methodology. Rather, Myers was simply crediting and relying on the testimony of Defendants and ADOC employees. These

17

opinions must be excluded, and in any case, no Defendant relies on them in any statement of fact or any discussion of any Defendant's liability.

## IV. Brian Zawilinski's opinions should be excluded at summary judgment.

The ADOC Defendants' brief makes broad references to two of Brian Zawilinki's opinions, but they do not withstand scrutiny.[4] ECF 192 at 18 & 27. First, ADOC Defendants cite Mr. Zawilinski's opinion that places the blame for St. Clair's problems on staffing. ECF at 192 at 27 (citing to ECF 185-35 at 29-31 (Zawilinski report)). Second, they reference Zawilinski's sweeping statements that "[a]ll maximum security prisons" are dangerous, hostile, and volatile environments. ECF 192 at 22 (citing Dkt. 185-35 at 34 (Zawilinksi report)). But Mr. Zawilinski does not possess the specialized knowledge and expertise to testify as to either opinion under Rule 702, and thus both should be excluded.

Mr. Zawilinski's opinion that St. Clair experienced a severe staffing shortage attempts to lay blame for St. Clair's problems on staffing issues. ECF 185-35 at 28-32. In his words: the "significant staffing shortage is likely the single greatest contributor of the issues plaguing SCCF for approximately the last decade." ECF 185-35 at 23. Setting aside that this opinion is plainly disputed (including by Defendants' own testimony, as set out in Plaintiff's statements of fact), Mr. Zawilinski offered these staffing opinions without conducting any analysis to determine whether, and to what

---

[4] The Facility Defendants do not cite to their own expert's opinion in their summary judgment brief.

extent, St. Clair even had a staffing shortage in practice. ECF 362 at 97:7-25. He did

not employ any methodology for his opinion. *Id.* at 176:15-177:12. Nor did he believe

it was necessary. *Id.* ("you don't need any methodology"). Such an approach clearly

does not pass muster. *See supra* at 2-3.

      In addition, ADOC Officials cite Mr. Zawilinski's opinion where he makes a

sweeping statement painting "[a]ll maximum-security prisons" as "dangerous, volatile,

and stressful environments," to argue that such an environment negates the

"leverage" staff have to address inmate behavior. ECF 192 at 22 (citing to Dkt. 185-

35 at 34 (Zawilinksi report)). This opinion should be stricken too because Mr.

Zawilinski simply does not have any specialized knowledge or expertise in maximum

security prisons. At deposition, he admitted that he has only stepped foot inside of

one maximum security prison, St. Clair, in order to provide an expert opinion. ECF

362 at 145:15-24; 147:10-13; 147:21-148:12. Throughout Mr. Zawilinski's entire

career at the Connecticut Department of Corrections, he was never stationed in a

maximum security prison; rather, he would visit only when he was assigned because

he worked with a statewide unit, or needed to investigate an incident. *Id.* at 80:16-20;

112:16-24; 82:23-83:3-12; 91:22-92:4. Connecticut had only a single maximum

security prison while Mr. Zawilinski was employed with the Department. *Id.* at 80:16-

20.

      Nor can Mr. Zawilinski give an opinion on the state of "[a]ll maximum

prisons." He did not evaluate any other Alabama prisons' levels of violence to

compare it with St. Clair. ECF 362 at 160:3-9. Moreover, this opinion is premised on pure ipse dixit reasoning. Accordingly, Zawilinski's opinions should be stricken both because he is not qualified to provide them and because they are unreliable. *See, e.g.*, *Cook*, 402 F.3d at 1111; *Feliciano*, 844 F. Supp.2d at 1262.

WHEREFORE, for the reasons explained, Plaintiff respectfully asks this Court to strike Defendants' expert opinions as set forth above.

Respectfully submitted,

BY: /s/ Megan Pierce
*One of Plaintiff's Attorneys*

BY: /s/ Anil Mujumdar
*Local Counsel*

*Ruth Z. Brown (pro hac vice)
Megan Pierce (pro hac vice)
Quinn Rallins (pro hac vice)
Attorneys for Plaintiff
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
Telephone: 312-243-5900
Fax: 312-243-5902
Email: ruth@loevy.com,
       megan@loevy.com
       rallins@loevy.com
*Counsel of Record

Anil A. Mujumdar (ASB-2004-L65M)
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Megan Pierce, an attorney, hereby certify that on March 14, 2025, I caused the foregoing to be filed using the Court's CM/ECF system, thereby effecting service on all counsel of record.

/s/Megan Pierce
*One of Plaintiff's Attorneys*