### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | | |
|---|---|---|
| LAKEISHA EZELL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:20-cv-02058-ACA** |
| | ) | |
| JEFFERSON DUNN, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### THE ADOC PARTIES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' EXPERT OPINIONS FROM THEIR SUMMARY JUDGMENT BRIEFING

Jefferson Dunn ("Dunn"), Edward Ellington ("Ellington"), and Karla Jones ("Jones" and together with Dunn and Ellington, the "ADOC Officials"), and Larry Baker ("Baker" and together with the ADOC Officials, the "ADOC Parties") hereby file this Response to Plaintiff's Motion to Strike Defendants' Expert Opinions from their Summary Judgment Briefing. (Doc. 384, "Plaintiff's Motion" or the "Motion"). In support of their Response, the ADOC Parties state as follows:

### INTRODUCTION

The ADOC Parties submitted reports from three experts, who clearly possess a wealth of experience and expertise in corrections, qualifying them to opine on a wide spectrum of topics related to the day-to-day operation of St. Clair Correctional Facility ("St. Clair"), the circumstances surrounding the December 29, 2018,

Incident,[1] the ADOC Parties' and St. Clair staff's actions taken, and the ADOC Parties' numerous efforts to improve conditions for those working and living at St. Clair.   Plaintiff seeks to exclude the testimony of the ADOC Parties' three experts.

Plaintiff and their purported expert continually misstate the legal standard applicable to Plaintiff's claims, as the ADOC Officials explained in their Motion for Summary Judgment and in their Motion to Strike Opinions of Plaintiff's Purported Expert Dan Pacholke.  (Docs. 183, 192, 392, 393).   Here, Plaintiff takes issue with the ADOC Parties' structure of their Briefs yet provides no support or authority indicating the ADOC Parties violated any rule of procedure or any order of this Court.  Additionally, Plaintiff faults the ADOC Parties' Experts[2] for declining to apply the incorrect legal standard misguidedly asserted by Plaintiff.   Even more, Plaintiff's Motion argues that the ADOC Parties' Experts remain unqualified to reach the opinions they provided despite over 80 years of combined experience working at every level within corrections.  To the extent Plaintiff asserts the ADOC Parties' Experts failed to use any reliable or reasonable methodology, at best Plaintiff's challenges to the ADOC Parties' Experts go to the weight of their opinions, not to their admissibility.

The Court should therefore deny Plaintiffs' Motion in its entirety for at least the following five (5) reasons:

---

[1] The "Incident" shall refer to the December 29, 2018, incident involving Terrance Andrews ("Andrews") and Cedric Davis ("Davis") at St. Clair.
[2] The "ADOC Parties' Experts" shall refer to Kevin Myers ("Myers"), Mark Inch ("Inch"), and Brian Zawilinski ("Zawilinski") collectively.

(1)      The ADOC Parties' inclusion of a summary of Myers's, Inch's, and Zawilinski' s expert opinions remains appropriate and no authority precludes such inclusion;

(2)      Inch remains qualified to offer his reliable and factually sound opinions all of which reflect his application of a reliable methodology and experience working in corrections;

(3)      Myers possesses sufficient qualifications to render his opinions, all of which reflect his application of a reliable methodology and experience working in corrections; and

(4)      Zawilinski possesses sufficient qualifications to render his opinions, all of which he based on application of reliable methodology and his experience working in corrections.

(5)      The Court may grant summary judgment in favor of the ADOC Officials without reference to the ADOC Officials' expert testimony.

Although Plaintiff remains free to cross-examine the ADOC Parties' Experts at trial as to the challenges raised in their Motion, none of those challenges warrant either the exclusion or the limitation of any testimony from any of the ADOC Parties' Experts at summary judgment.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c)(2), provides that material used to support or dispute a fact for summary judgment purposes must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). See, e.g., Bell v. Swift Adhesives, Inc., 804 F. Supp. 1577, 1579 (S.D. Ga. 1992). To determine whether the ADOC Parties presented the ADOC Parties' Experts'

opinions in a form that would be admissible in evidence, the Court analyzes their opinions under Rule 702 of the <u>Federal Rules of Evidence</u>, which governs the admissibility of expert testimony.  Under <u>Federal Rule of Evidence</u> 702, a qualified expert may offer opinion testimony when the proponent demonstrates to the court that it is more likely than not that: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects reliable application of the principles and methods to the facts of the case.  <u>Fed. R. Evid. 702</u>.  Thus, to determine whether an expert's testimony is admissible courts consider whether "the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact."  <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1308 (11th Cir. 1999)); <u>see also</u> <u>Fed. R. Evid.</u> 702.

Because Plaintiff attacks the qualifications of the State's Experts, as well as the factual basis for their opinions, the reliability of their opinions, and the helpfulness of their opinions, the State emphasizes the legal standards applicable to Plaintiff's challenges here, which fall into four broad categories: (1) the factual basis for, and reliability of, expert opinions; (2) expert qualifications; and (3) the helpfulness of the expert's opinions to the trier of fact in understanding the evidence or resolving a

material fact at issue.

## I.    LEGAL STANDARDS UNDER RULE 702 RELEVANT TO PLAINTIFF'S MOTION

### A.    Factual Basis for, and Reliability of, the State's Expert Opinions.

First, although Rule 702 requires the Court to perform a "gatekeeping" function to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," Daubert v. Merrell-Dow Pharms., 509 U.S. 579, 597 (1993), the Rule 702 inquiry remains "a flexible one." Id. at 594. Moreover, "the question of 'whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case are a matter that the law grants the trial judge broad latitude to determine.'" United States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153 (1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," "rather than wholesale exclusion," remain "the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." Daubert, 509 U.S. at 596; see also Ramirez v. E.I. DuPont de Nemours & Co., 579 F. App'x 878, 882 (11th Cir. 2014) (court does not "require absolute certainty from expert testimony," and deficiencies in factual "foundations" of expert testimony "go to the weight" of the "testimony, not its admissibility"); Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988) (any "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility"); United States v. 0.161 Acres of Land, 837 F.2d 1036, 1040 (11th

Cir. 1988) (court should admit expert testimony unless it "amounts to no more than a mere guess or speculation"); <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) ("it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence") (quoting <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1257 (11th. Cir 2002)) (internal quotation marks and alterations omitted).

Additionally, an expert may rely on his experience within a field when drawing expert conclusions and formulating his opinions. <u>Woienski v. United Arilines, Inc.</u>, 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019). If an expert relies on their experience as a basis for their opinions, they must "explain how that experience leads to the conclusion reached…and how that experience is reliably applied to the facts." (<u>Id.</u>). "In determining the admissibility of expert evidence, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence…the district court must analyze the expert's credentials 'in light of the subject matter' and 'consider whether [the] expert is qualified to testify competently regarding the matters he intends to address.'" (<u>Id.</u>) (quoting <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004)). All the State's Experts offer reliable and factually supported opinions related to the facts at issue in this action.

### B. Expert Qualifications.

Second, "experts may be qualified in various ways." <u>In re Disposable Contact Lens Antitrust</u>, 329 F.R.D. 336, 369 (M.D. Fla. 2018) (quoting <u>Frazier</u>, 387 F.3d 1260

(11th Cir. 2004)).  "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."  Id. (quoting Frazier, 1260–61).  However, "[t]he qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility."  Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting Kilpatrick v. Breg, Inc., Case No. 08–10052–CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009)). See also Hendrix v. Evenflo Co., 255 F.R.D. 568, 578 (N.D. Fla. 2009) (quoting Leathers v. Pfizer, Inc., 233 F.R.D. 687, 692 (N.D. Ga. 2006)) (pointing out that an expert may achieve "minimal[] qualif[ication] in his field … based on any combination of 'knowledge, skill, experience, training, or education; he need not be a leading authority in the field" and that "gaps in his qualifications generally will not preclude admission of his testimony").  All the ADOC Parties' Experts possess more than sufficient qualifications to render their opinions.

### C.    The Expert's Opinions Helpfulness to the Trier of Fact to Understand the Evidence or Determine a Fact at Issue.

Under Rule 702, expert opinions must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. Evid. 792. "Expert testimony assists the trier of fact by explaining something that is "beyond the understanding of the average lay person." Griffin v. Coffee Cnty., 623 F. Supp. 3d 1365, 1374 (S.D. Ga. 2022).  Expert testimony must also be sufficiently tied to the facts of the case. (Id.).  The helpfulness requirement under Rule 702 mainly concerns the relevance of

7

the expert testimony and whether the testimony is "sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute." Korsing v. United States, No. 16-22190-CIV, 2017 WL 7794276, at *3 (S.D. Fla. Aug, 24, 2011); see also McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004).

## **ARGUMENT**

### I. THE ADOC PARTIES' INCLUSION OF A SUMMARY OF THE ADOC PARTIES' EXPERT OPINIONS REMAINS APPROPRIATE AND NO AUTHORITY PRECLUDES SUCH INCLUSION.

Initially, Plaintiff misguidedly takes issue with the ADOC Parties' structure of their brief, arguing that the "ADOC Defendants provide a section of their brief called "Expert Testimony," and "[t]his section does not set out facts in line with the Court's order." (Doc. 384 at 7). Much like in their Response in Opposition to the ADOC Officials' Motion for Summary Judgment (doc. 385), Plaintiff wastes the Court's time raising inappropriate and irrelevant arguments not supported by any authority. Appendix II to the Court's Scheduling Order (doc. 125-1) provides requirements for the "Manner of Stating Facts;" however, nothing in this Court's Scheduling Order or Appendix II thereto forbids the ADOC Parties from including a section detailing their experts' opinions used in support of the ADOC Parties' motion for summary judgment. Moreover, Plaintiff fails to provide, and cannot provide, a single authority which precludes the ADOC Parties from including their expert opinions in their Brief in Support of Summary Judgment and relying upon those opinions in their argument.

### II. INCH POSSESSES SUFFICIENT QUALIFICATIONS AND EXPERIENCE TO PROVIDE HIS OFFERED OPINIONS.

As noted above, an expert need only possess minimal qualifications based upon knowledge, skill, experience, training, and/or education in order to offer opinions related to facts at issue in the action. Frazier, 387 F.3d 1260-61; Pfizer, Inc., 233 F.R.D. 692. Inch clearly possesses extensive experience, knowledge, training, and education in corrections to offer opinions related to this action. Inch served as a military police officer for thirty-five years, as the senior military police officer in the U.S. Army, the Provost Marshal General, as the Commandant (Warden) of the United States Disciplinary Barracks, the Department of Defense's only maximum-security prison, as the ninth Director of the Federal Bureau of Prisons, the largest corrections agency in the nation, and as Secretary of the Florida Department of Corrections. (Doc. 185-31 at 3-4). Additionally, Inch served as the Chief of the U.S. Army Corrections and Internment Branch, the Director of Detainee Operations, and the Commanding General of the United States Criminal Investigation Command. (Doc. 185-31 at 55).

Plaintiff argues that Inch's "citation of Dunn's own testimony that during Dunn's tenure, the ADOC budget increased," remains improper and the citations should be stricken because Plaintiff contends the ADOC Parties were required to introduce evidence from documents or testimony of non-experts and cite to that evidence. (Doc. 384 at 9). However, Plaintiff fails to acknowledge the numerous paragraphs of the ADOC Officials' Statement of Facts that include citations to the evidentiary record, including Dunn's testimony, which support the same facts. (See, e.g., Doc. 192 at 13-14 ¶¶ 68 (citing doc. 185-73 at 14); 70; 83; 84). Moreover, Inch

cites to each portion of Dunn's testimony he relied upon in reaching his conclusions in his report, and as noted above, the ADOC Officials' submitted Dunn's deposition transcript at doc. 185-11.    Therefore, the ADOC Officials provided citations to evidence from their evidentiary submission in support of the underlying facts Inch relied upon in reaching his opinions related to Dunn's efforts to increase funding for the ADOC during his tenure.    Also, Inch does not simply recite or parrot Dunn's testimony, Inch cited Dunn's testimony, among other evidence, as a basis for and in support of Inch's ultimate opinion that Dunn "identified challenges facing the ADOC and responded reasonably, by developing a comprehensive strategic plan, and taking concerted actions to implement his plan to realize long-term positive change for ADOC." (Doc. 185-31 at 35-40).    As such, Inch appropriately analyzed the evidence and testimony produced in this case, applied his experience and expertise to that evidence, and developed his opinion based on the application of his vast experience working in corrections, specifically serving as the Secretary for the Florida Department of Corrections and Director of the Federal Bureau of Prisons, to the evidence in this case.    Therefore, Inch's expert opinions, the ADOC Parties citation to Inch's report, and the evidentiary record remain appropriate and should not be stricken.

### III.    INCH OFFERS HELPFUL AND FACTUALLY SOUND OPINIONS.

In Plaintiff's Motion, Plaintiff attempts to inaccurately select Inch's opinions and takes them out of context to better advance her challenges to his testimony. (Doc. 384 at 6-10).  Notwithstanding Plaintiff's immaterial and trivial disputes over Inch's

interpretation of the evidence, Inch offers opinions based on his review of the evidence in this case, his years of correctional experience, and his knowledge and expertise in corrections achieved over decades of work within military, state, and federal corrections agencies. Plaintiff's arguments lack merit, and the Court should admit Inch's testimony in full under Rule 702.

### A.    Inch Properly Applied his Experience to the Facts of the Case.

Plaintiff takes issue with Inch's interpretation of evidence, his reliance on certain evidence over others, and his ultimate conclusions reached as a result of his analysis and review. However, none of Plaintiff's disagreements render Inch's testimony or opinions inadmissible. Plaintiff first argues that the Court should strike Inch's expert opinion—informed by his decades of experience in military law enforcement and corrections—that "Davis' attack on Andrews did not constitute a premeditated, planned attack, and therefore, remained virtually impossible for staff to prevent especially given that the assault happened inside the cell…Davis's assault of Andrews remains a particularly random and unforeseen attack," and "Davis's actions do not appear premeditated. Rather this seems to represent a spontaneous altercation between two cell mates due to a disagreement over the use of the cell as a spot for sexual relations." (Doc. 384 at 9). Plaintiff argues that Inch "lacks any specialized experience or credentials to provide" these opinions and they "do not assist the trier of fact because they are within the understanding of the average lay person." (Id.). Plaintiff's argument that Inch lacks the experience or credentials to

11

reach his conclusions remains disingenuous at best. As noted above, Inch possesses decades of experience both working as a military police officer and as a corrections official at various levels. (Doc. 185-31 at 53-59).

Pertinent to these specific opinions, Inch completed the Military Police Officer Basic Course, Military Police Officer Advanced Course, and served as the Provost Marshal General over the United States Criminal Investigation Command. (Id. at 55). Additionally, Inch served in various leadership roles within corrections, including as the Warden of the United States Disciplinary Barracks at Fort Leavenworth, Kansas, a maximum-security facility, and later in his career as the Director of the Federal Bureau of Prisons and the Secretary of the Florida Department of Corrections. Inch clearly possesses ample experience both in the investigation of crimes, and specific experience with crimes occurring within correctional institutions. Inch appropriately reached this opinion from the application of his education, training, and experience to the facts of this case, thus Inch's opinion remains admissible.

Plaintiff next argues that Inch's opinion should be stricken because "whether a murder is premeditated is something that a lay person can determine without any specialized knowledge" and, therefore, Inch's opinion remains unhelpful to the trier of fact. (Doc. 384 at 10). Again, Plaintiff's arguments take Inch's opinions out of context and fail to establish a basis to exclude Inch's opinions. Contrary to Plaintiff's assertion, Inch provides explanation for how he reached his opinion that

the Andrews assault appeared to be spontaneous and therefore unforeseen.

Inch explained that Davis and Andrews possessed no documented history of altercations or issues between the two inmates, the assault occurred within the inmates' assigned cells, and that Davis acted without forewarning or indication that he planned to assault Andrews. (Doc. 185-31 at 5-6, 47). Moreover, Inch explained that he relied on his experience in corrections, his experience with violent incidents within corrections settings, and his review of the investigative file and incident reports in this case to reach his opinion. (Id.). Although, as Plaintiff points out, juries determine the guilt or innocence of individuals for premeditated murder within our criminal justice system, this does not mean that an average lay person can make that evaluation within the context of violent incidents occurring within a correctional facility.

Inch does not simply opine on Davis's mental state at the time of the incident, he explains the specific considerations and factors within a correctional facility that inform his opinion that the evidence shows Davis acted without premeditation. (Id.). Plaintiff must show that the ADOC Parties and staff at St. Clair possessed actual notice of the specific risk of harm posed to Andrews by Davis. Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024). Therefore, Inch's testimony and opinions related to whether evidence existed to place St. Clair staff, and more specifically the ADOC Parties, on notice that Davis intended to assault Andrews, remains helpful to the Court and the trier of fact.

Next, Plaintiff argues that Inch reached certain opinions not based on any sound methodology and, therefore, the Court should exclude Inch's opinions.  (Doc. 384 at 10).  Plaintiff contends that Inch's opinions that "staffing levels, inmate population levels, inmate supervision, unauthorized movement, classification and housing policies, and contraband search protocols did not cause Andrews's assault" should be stricken because Plaintiff claims Inch failed to "review the incident report or witness statements related to Andrews's assault; did not do any analysis of unauthorized movement at St. Clair in 2018 and early 2019 and whether staff were complying with policies related to inmate movement control; did not review or rely on the St. Clair classification manual, instead relying only on deposition testimony from defendants that the manual exists and was used; and did not review any ADOC or St. Clair records documenting contraband levels or reflecting contraband searches at the facility–again, his opinion about contraband was based solely on defendants' self-serving deposition testimony." (Doc. 384 at 11).  Plaintiff's arguments fail for the reasons below.

First, all of Plaintiff's disputes identified above go to the weight given to the expert's testimony and the juries determination of credibility, not to the admissibility of Inch's expert opinions and testimony.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153 (1999); see also Ramirez v. E.I. DuPont de Nemours & Co., 579 F. App'x 878, 882 (11th Cir. 2014) (court does not "require absolute certainty from expert testimony," and deficiencies in factual "foundations" of expert testimony "go to the weight" of the "testimony, not its admissibility"); Jones v. Otis Elevator Co., 861

F.2d 655, 663 (11th Cir. 1988) (any "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility"); <u>United States v. 0.161 Acres of Land</u>, 837 F.2d 1036, 1040 (11th Cir. 1988) (court should admit expert testimony unless it "amounts to no more than a mere guess or speculation"); <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) ("it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence") (quoting <u>McCorvey Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1257 (11th. Cir 2002)) (internal quotation marks and alterations omitted).

Second, Plaintiff mischaracterizes Inch's testimony on multiple occasions taking it out of context to better support Plaintiff's arguments. Inch testified that he reviewed the incident reports, the investigative file, and numerous other documents produced in this case; however, in drafting his report and reaching his conclusions, Inch testified that he identified *specific* documents he believed were *most* important to his analysis and relied heavily on the investigative report of the Andrew's incident. (Doc. 351 at 21 (77:14-78:3); 28 (107:9-110:2) (explaining although Inch did not perform a "trend's analysis" of inmate movement and staff compliance with movement policies, Inch visited St. Clair on two occasions and observed the practices in person); 24 (92:16-20) (explaining that Inch reviewed ADOC's classification manual in the past, but did not do a specific review again for this case).

Lastly, Plaintiff takes issue with the sources of evidence Inch chose to rely

upon when forming his opinions. As an expert, Inch possesses the experience to review documents in this case, identify the documents and evidence he believes is most important, and rely upon those documents and evidence in reaching his conclusion. Simply because Plaintiff disagrees with Inch's choice to credit certain evidence over other evidence provides no basis for striking his opinions or testimony. Inch explained in his report and during his testimony the specific documents and fact witness testimony he relied upon. Again, Plaintiff's disputes over what weight should be given to Inch's testimony or the evidence he relied upon in reaching his conclusions fail to provide a basis for exclusion. Because Inch relied on evidence, he deemed most relevant and important to the issues in this case and analyzed that evidence appropriately through the lens of his expertise and experience to reach his expert opinions, Inch's opinions remain appropriate and should not be stricken.

The remainder of Plaintiff's contentions related to Inch's opinions and testimony remain nothing more than disagreements with the evidence Inch relied upon or the conclusions he reached. Plaintiff fails to identify any reason under Fed. R. Evid. 702, 703, or Daubert, to exclude Inch's opinions and testimony. Instead, Plaintiff's disputes relate to the weight attributable to Inch's testimony, not whether Inch's testimony is admissible. (Doc. 384 at 11 (arguing that Inch did not review documents reflecting assessments or data about the conditions at St. Clair in 2018 and early 2019; arguing Inch failed to consider "whether staff were complying with

the classification manual requirements; and arguing Inch failed to provide…analysis about the levels of violence, uncontrolled movement or contraband at St. Clair)). Although Plaintiff remains demonstrably wrong on several of these points, none render Inch's testimony unreliable or inadmissible.  As Inch explained, he analyzed ADOC, and specifically Dunn, Ellington, and Jones's, actions in response to various issues raised by Plaintiff and related to the incident involving Davis and Andrews from a state-wide leadership perspective to determine their "appropriateness, reasonableness, and whether [the actions] constituted deliberate indifference" based upon his own expertise and experience.  (Doc. 351 at 8 (25:10-26:4)).  None of these opinions necessarily required Inch to perform a data or trend analysis in order to analyze whether the actions Dunn and ADOC's leadership took to address issues such as staffing, violence, contraband, etc. remain appropriate and reasonable actions for correctional leaders to take in order to address each specific issue.  In fact, as noted in the ADOC Officials' Motion to Strike Plaintiff's Expert Opinions, (doc. 393) Plaintiff's own purported expert, Dan Pacholke, failed to perform the same "data analysis" that Plaintiff contends provides the basis to exclude Inch's opinions.  (Doc. 393-1 at 8 (23:8-19); 10 (31:23-33:16); 11 (35:19-37:5); 12 (38:12-39:21); 19 (69:21-70:2); 38 (142:19-22); 51 (195:5-20).

Drawing from Inch's depth of experience, he conducted a detailed review of the documents produced in this case, applied his experience and expertise to those facts, and developed his opinions based on the application of his knowledge and

experience to the evidence. (Doc. 185-31 at 50-51). Plaintiff's Motion ignores Inch's detailed analysis and instead cursorily dismisses his proposed testimony as unreliable. (See Doc. 384 at 8-13). In addition to directly tying his experience to his conclusions in his report, Inch also confirmed at his deposition that his opinions flow directly from his experience. (Doc. 352 at 8, 18-19, 20 49, (25:10-16; 66:24-70:21; 73:7-14; 188:15-189:15)). Inch appropriately tied his experience to the facts of this case. Such analysis remains entirely permissible for expert witnesses.

Plaintiff's demand that the Court exclude Inch's opinions and testimony on the grounds that he lacks the requisite expertise, failed to apply sound methodologies, and failed to rely upon reliable evidence constitute nothing more than Plaintiff's quibbles with Inch's conclusions and the evidence he chose in his expert opinion to rely upon. As such, Inch's opinions and testimony remain appropriate expert testimony and the Court should not strike Inch's opinions or testimony in this case.

## IV.    MYERS OFFERED RELIABLE AND FACTUALLY SOUND OPINIONS.

Similar to Plaintiff's tactics attacking Inch's expert opinions and testimony, Plaintiff merely quibbles with Myers's interpretation of evidence, the conclusions he reached, and the evidence he determined most relevant for purposes of his expert opinions. Plaintiff's arguments simply address the weight Myers's testimony and opinions should be given, not their admissibility. Plaintiff fails to, and cannot, establish any basis to exclude Myers opinions. Myers remains well qualified to offer his opinions, and Plaintiff's arguments fail to support exclusion. Myers's testimony

and opinions satisfy Rule 702 and, therefore, the Court should deny Plaintiff's motion to strike Myers's testimony and opinions.

### A. The ADOC Parties Appropriately Cited Myers's Expert Report and Provided Factual Support for Myers's Opinions.

First, Plaintiff argues that the ADOC Officials use Myers to "simply parrot factual information from other sources," and contend that "[t]o the extent the [ADOC Officials] wanted to introduce evidence from documents or testimony of non-experts…they had the opportunity to do so through appropriate evidence." (Doc. 384 at 14). Plaintiff points to paragraphs 13, 23-24, 26-27, 61, and 91 of the ADOC Officials Statement of Facts and argues that "none of those are the proper topic of expert opinion." (Id. at 13). However, the ADOC Officials provide citations to the evidentiary record beyond Myers's report to support their factual assertions. For example, in support of paragraphs 23-27 the ADOC Officials cite to excerpts from Davis's institutional history and classification summaries. (Doc. 192 at 11-12 (citing Doc. 185-17 at 17, 30-35, 37)). Additionally, in support of paragraph 91 of the ADOC Officials' Statement of Facts, the ADOC Officials cite to doc. 185-15 which consists of a memorandum from Karla Jones to the St. Clair staff warning that failure to secure doors and locks, and failure to control inmate movement will result in officers receiving corrective action. (Doc. 192 at 23 (citing doc. 185-15 at 6-25)).

Moreover, Plaintiff raises immaterial disputes regarding facts in the ADOC Officials' Statement of Facts that she herself agrees remain undisputed. For example,

Plaintiff takes issue with the ADOC Officials' citation to Myers's Expert Report in support of the fact that "Andrews received a twenty-five-year sentence for Robbery I and Burglary III and entered ADOC custody on June 20, 2013." (Doc. 384 at 13). However, Plaintiff acknowledges in her Response in Opposition to the ADOC Officials' Motion for Summary Judgment that Andrews "entered prison in 2013 at the age of 19, with a sentence of 25 years." (Id. at 20). Moreover, the ADOC Parties and Plaintiff filed the December 29, 2018, Duty Officer Report from the incident involving Andrews which states that Andrews received convictions for "Assault II, Burglary III, and Robbery I" and served a twenty-five-year sentence. (Doc. 198-2 at 1; Doc. 315 at 1). The same documents Myers's relied upon in making the same conclusion in his report. (Doc. 185-32 at 8). Similarly, Plaintiff's take issue with the ADOC Officials' statement of fact in paragraph 61 of the ADOC Officials' Statement of Facts asserting that:

> "St. Clair's Internal Classification Board ("ICB"), which consists of a Captain or above, a classification specialist, and psychological associate or mental health professional, meets weekly and on an as needed basis to review housing assignments and determines the "needs and requirements of an inmate," including custody level, programming, and housing unit placement for inmates housed at St. Clair."

(Doc. 192 at 17). However, Plaintiff does not dispute this fact in her Opposition, instead only disputing the implementation of the policy. (Doc. 385 at 15). Thus, Plaintiff wastes the Court's time "disputing" the ADOC Officials' citations to the evidentiary record for facts that she ultimately does not dispute.

Plaintiff spends an entire page arguing that Myers's determination that ADOC's Classification System complied with nationally accepted standards remains unreliable because Plaintiff asserts Myers did not address the way ADOC staff implemented the classification system and procedures.  (Doc. 384 at 14).  Plaintiff confuses Myers's opinion.  Myers applied his experience in corrections, specifically with regards to developing and implementing classification procedures and his knowledge of nationally accepted standards for classification procedures, to determine that ADOC's classification system (i.e., policies and procedures) conform to national standards based on his review of ADOC's classification manual and St. Clair Standard Operating Procedures.  (Doc. 185-32 at 16-17, 19-20).

Plaintiff's "disputes" fail to even address Myers's actual opinion; instead, Plaintiff simply argues Myers did not do any analysis as to whether staff followed ADOC's manual.  (Doc. 384 at 14).  Despite the fact that Plaintiff remains incorrect, as Myers opines at length that staff appropriately assessed and classified Andrews and Davis explaining his reasoning for that opinion (doc. 185-32 at 19-20), Plaintiff's argument fails to provide a basis for exclusion and remains nothing more than disagreements with Myers's conclusions.  Myers appropriately based his opinion on his years of experience working in corrections, his expertise and knowledge of national standards for correctional classification systems, and his review of the evidence in this case.  Therefore, the Court should deny Plaintiff's motion to strike Myers's opinions.  Contrary to Plaintiff's contentions, the ADOC Officials provided citations in support

21

of their factual assertions and did not simply rely on recitations from Myers's Report. To the extent Plaintiff disagrees with the opinions or conclusions Myers drew from the evidence, Plaintiff's disagreements fail to support exclusion of the ADOC Officials' facts or Myers's testimony.

Next, Plaintiffs argue that the Court should exclude Myers's testimony because, Plaintiff argues Myers should have reached a different conclusion. (Doc. 384 at 15-16). Plaintiff confusingly cites to doc. 328 purportedly referencing Myers's deposition testimony; however, doc. 328 is not Myers's deposition transcript and only consists of an internal memorandum from former St. Clair Warden DeWayne Estes. Assuming Plaintiff meant to cite doc. 348, Myers testified that the classification manual and classification system at St. Clair provides a recommendation for classification designations that can be overridden by staff when they believe it appropriate. (Doc. 348 at 58 (226:6-13)). Myers explained that, from his review of Andrews' and Davis' classification records, ADOC appropriately classified Andrews and Davis. (Id. (226:14-20)). Myers also explained that classification determinations and housing designations represent two separate processes. (Id. (227:6-17)). Myers testified that he reviewed portions of ADOC's classification manual he believed to be pertinent to the case and explained that ADOC utilizes the Ohio Risk Assessment System ("ORAS"), which Myers explained he knew very well from his years of experience working in corrections. (Id. at 23 (87:8-21)).

22

Moreover, Myers explained he reviewed the classification records related to Andrews and Davis in reaching his opinions related to their classification decisions. (Id. at 24 (89:3-6)). Myers explained that he believed he did not need to assess the classification decisions of inmates other than Andrews and Davis because ADOC correctly classified them; therefore, Myers's concluded any alleged inappropriate classification procedures did not contribute to Andrews's death. (Id. (89:7-90:5); Doc. 185-32 at 19-20, 27-30). As explained above, Myers based his opinions on the application of his experience, knowledge, and expertise to the evidence he reviewed in this case.

Similarly, Plaintiff identifies several of Myers's opinions arguing for various reasons that Myers's opinions "should be excluded because they are unreliable and rely on insufficient sources and methods." (Doc. 384 at 16-18). For example, Plaintiff contends that Myers "made no assessment of level of contraband or searches at St. Clair in practice," and "Myers made no assessment of staffing levels in practice at St. Clair other than what is in his report." (Id. at 19). In fact, Myers testified that although he did not perform an independent quantitative analysis of the levels of contraband or contraband searches at St. Clair, he reviewed the documentation provided in the case including multiple deposition transcripts and exhibits and determined these sources sufficient to analyze the frequency and adequacy of contraband searches at St. Clair in late 2018 and early 2019. (Doc. 348 at 25 (95:17-96:25)).

23

Likewise, Myers testified that from his review of St. Clair's staffing plan, and other documentation produced in this case, he believed ADOC possessed adequate staff at the time of the incident in December 2018, to follow the ADOC policies and staff the facility in compliance with ADOC and St. Clair policy. (Doc. 348 at 39 (151:17-152:20)). Myers even identified the various actions Dunn and others took to supplement staff, hire additional staff, and create new positions that required less training to free up more highly trained security staff for contact security positions. (Id.). Myers reached these conclusions based on his review of the evidence in this matter, and the application of his experience and knowledge to the evidence. Plaintiff's arguments once again boil down to disagreements with Myers' review process and his conclusions. However, as noted above, Plaintiff's arguments go to the weight applied to Myers's testimony not to its admissibility.

Plaintiff again misguidedly takes issue with the ADOC Parties' structure of their briefs, arguing that the "ADOC Defendants also sketch out several broad opinions by Myers that they cite nowhere in the remainder of their brief…" (Doc. 384 at 16). As noted above, Plaintiff wastes the Court's time raising inappropriate and irrelevant arguments not supported by any authority. Appendix II to the Court's Scheduling Order (doc. 125-1) provides requirements for the "Manner of Stating Facts" however, nothing in this Court's Scheduling Order or Appendix II thereto forbids the ADOC Parties from including a section detailing their experts' opinions used in support of the ADOC Parties' motions for summary judgment. Moreover,

24

Plaintiff fails to provide, and cannot provide, a single authority which precludes the ADOC Parties from including their expert opinions in their Brief in Support of Summary Judgment and relying upon those opinions in their argument.

Plaintiff's arguments as to the factual bases for Myers's conclusions fail to provide the Court with any reason to exclude his testimony. Plaintiff's dispute with Myers's conclusions goes to the weight of those conclusions, not to their admissibility. Therefore, the Court should deny Plaintiff's motion to exclude Myers's testimony.

## V.    ZAWILINSKI OFFERED RELIABLE AND FACTUALLY SOUND OPINIONS.

Plaintiff contends that Zawilinski failed to conduct any "analysis" and employed unreliable methodologies to reach his opinions in this case. However, Zawilinski explained both in his expert report and during his deposition testimony the specific methodology he employed and the evidence he relied upon in reaching his opinions. Plaintiff fails to establish any basis to exclude Zawilinski's testimony and opinions. In fact, Plaintiff's arguments address the weight Zawilinski's testimony and opinions should be given, not their admissibility. Zawilinski remains well qualified to offer his opinions, and Plaintiff's arguments fail to support exclusion. Because Zawilinski's testimony and opinions satisfy Rule 702, the Court should deny Plaintiff's motion.

Plaintiff claims that Zawilinski reached his opinions related to staffing without conducting any "analysis" and did not employ any reliable "methodology" (Doc.

384 at 18-19 (citing Doc. 362 at 97:7-25 and 176:15-177:12)).  To the contrary,
Zawilinski explained his methodology and how he conducted his analysis of security
staffing numbers.  (Id. at 94:1-95:15).  Zawilinski explained further that he believed
a formal analysis remained unnecessary for his purposes because by touring the
facility, speaking with staff, reviewing staffing rosters, reviewing efforts made by
ADOC and St. Clair to augment staff at St. Clair, and knowing DOC utilized the
CERT teams to man security posts and conduct searches and shakedowns, showed
that, "[n]o analysis was needed to determine [St. Clair] had a severe staffing shortage
for many years."  (Id. at 97:14-25.).  Zawilinski explained ADOC and St. Clair
leadership undertook numerous efforts to increase staffing levels at St. Clair,
including: reducing and capping the inmate population; making upgrades to the
physical infrastructure; efforts to increase recruiting and retention; a ten percent pay
raise for St. Clair staff; approval for six additional lieutenant positions at St. Clair;
and implementation of the Correctional Cubicle Operator position all represent
reasonable and appropriate actions for correctional leaders to take when  faced with
staffing challenges. (Doc. 185-35 at 27).  Additionally, Zawilinski explained that he
reviewed the pertinent documentation related to staffing at St. Clair, applied his
experience, knowledge and expertise from years working in corrections, and
developed his conclusions based on the evidence he reviewed.  (Doc. 185-35 at 3-
4).

      Zawilinski explained the "methodology" he used "to determine that the

staffing shortage at St. Clair was the single – single greatest contributor to the issues plaguing St. Clair, or approximately, in the past decade" and he explained that throughout his 27 years of experience the greatest obstacle he faced was staffing. (Doc. 362 at 40 (150:18-151:15)). Zawilinski testified that in his experience speaking with correctional professionals from across the United States staffing shortages affect the majority of corrections systems across the country. (Doc. 362 at 41-42 (157:15-162:14)). Zawilinski explained further "you don't need any methodology. You don't need any training. If you want to have a bad day; you go into work as a shift commander, look at your staffing roster, and realize half of them ain't there. Good luck." (Id. at 45-46 (176:21-177:6-12)). Zawilinski relied on his experience working in corrections, his communications with dozens of correctional officials from across the country, and his review of the relevant evidence in this case to reach his conclusion that staffing represented one major challenge facing ADOC and St. Clair even despite the numerous efforts ADOC and St. Clair took to increase staffing numbers. In his opinion a formal "methodology" or "analysis" remains unnecessary because the staffing numbers are readily discernible from the evidence and application of his experience and knowledge to that evidence.

Plaintiff takes Zawilinski's testimony out of context arguing that Zawilinski "admitted that he has only stepped foot inside of one maximum security prison, St. Clair, in order to provide an expert opinion" and contending that Zawilinski therefore lacks sufficient experience or knowledge to reach his conclusions. (Doc. 384 at 19).

Zawilinski actually testified, St. Clair is the only maximum-security prison he visited in order to provide an expert opinion however, Zawilinski testified that he worked in a Level V maximum-security prison during his time with the Connecticut Department of Corrections.  (Doc. 362 at 21 (78:23-25)). Zawilinski stated that in addition to visiting St. Clair he previously worked at two maximum-security prisons (Green Haven and Northern) and visited another (Rikers Island).  (Id. at 38 (145:15-22)). Therefore, Zawilinski possesses ample experience and expertise to offer his opinions in this case.

Plaintiff's demand that the Court exclude Zawilinski's opinions and testimony on the grounds that he lacks the requisite expertise, failed to apply sound methodologies, and failed to rely upon reliable evidence constitute nothing more than Plaintiff's disagreements with Zawilinski's conclusions and the evidence he chose to rely upon in his expert opinion.  As such, Zawilinski's opinions and testimony remain appropriate expert testimony, and the Court should deny Plaintiff's Motion.

## VI. THE COURT MAY GRANT SUMMARY JUDGMENT FOR THE ADOC PARTIES' WITHOUT REFERENCE TO THE ADOC PARTIES' EXPERT TESTIMONY.

Finally, the Court need not strike either Inch's, Myers's, and Zawilinski's opinions from the summary judgment record, because the Court may grant summary judgment to the ADOC Parties without reference to either Inch's, Myers's, or Zawilinski's opinions.  For example, Plaintiff argues that the Court should strike Myers's opinion related to the ADOC Officials' response to the risk of violence at St.

28

Clair because the ADOC Officials "do not rely upon it anywhere in their discussion of defendant [*sic*] liability[.]" (Doc. 368 at 17). However, the ADOC Parties supported their summary judgment argument that the ADOC Parties responded reasonably to any risk of violence at St. Clair with facts independent of the ADOC Parties' expert testimony. (<u>See</u> Doc. 166 at 39–55). Indeed, as Plaintiff herself admitted throughout her Motion to Strike, the ADOC Parties "rely very little on the opinions of their three retained experts in support of summary judgment." (Doc. 368 at 5; <u>see also</u> <u>id.</u> (pointing out that the "ADOC Defendants hardly reference any retained expert testimony in their statement[] of fact[s], nor do they point to any expert opinions in their discussions of liability of" the ADOC Officials)).

While the Court should not strike the ADOC Parties' expert testimony from the summary judgment record for the reasons explained above, even if it does, the Court may still grant summary judgment to the ADOC Parties without considering the ADOC Parties' expert testimony. The ADOC Parties reserve the right to defend their admissibility of their experts' testimony at any trial in this case.

## CONCLUSION

Plaintiff's Motion reflects a misguided attempt to suppress the ADOC Parties' subject matter experts' opinions based on nothing more than disagreements with the evidence reviewed and conclusions reached by Inch, Myers, and Zawilinski. Plaintiff's arguments fail to provide any basis for exclusion of the ADOC Parties' Experts' testimony or expert opinions. For the reasons explained above, the ADOC Parties carried their

burden of establishing the admissibility of their Experts' testimony under Rule 702.

The Court should therefore deny Plaintiff's Motion.

Dated: April 4, 2025.

/s/ William J. Cranford

*One of the Attorneys for the ADOC Officials*

William R. Lunsford
Matthew B. Reeves
William J. Cranford
Daniel J. Chism
**BUTLER SNOW, LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
will.cranford@butlersnow.com
daniel.chism@butlersnow.com

*Attorneys for Dunn, Ellington, and Jones*

/s/ William Allen Sheehan

*One of the attorneys for Larry Baker*

Robert F. Northcutt
James N. Walter, Jr.
C. Richard Hill, Jr.
William Allen Sheehan
Cailin E. Cobb
**Capell & Howard P.C.**
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
T: (334)241-8043

F: (334)-241-8243
E: bob.northcutt@chlaw.com
E: jimmy.walter@chlaw.com
E: rick.hill@chlaw.com
E: allen.sheehan@chlaw.com
E: caitlin.cobb@chlaw.com

*Attorneys for Larry Baker*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by email on this 4th day of April, 2025:

Ruth Z. Brown
Megan Pierce
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
E: ruth@loevy.com
E: megan@loevy.com

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: (205) 590-6986
F: (205) 809-7899
E: anil@dagneylaw.com

*Attorneys for Plaintiff*

*/s/ William J. Cranford*
Of Counsel