FILED
2025 Jun-18  AM 08:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **LAKEISHA EZELL** as **Representative of the Estate of Terrence Andrews,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.** |
| | ) | **4:20-cv-2058-ACA** |
| **v.** | ) ) | |
| **JEFFERSON DUNN,** *et al.*, | ) ) | |
| **Defendants.** | ) ) ) | |

| | | |
|---|---|---|
| **LORI GUY WILLS,** as **Administrator of the Estate of Steven Mullins,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.** |
| | ) | **4:21-cv-0264-ACA** |
| **v.** | ) ) | |
| **JEFFERSON DUNN,** *et al.*, | ) ) | |
| **Defendants.** | ) ) ) | |

## RESPONSE AND OBJECTION TO ORDER TO SHOW CAUSE

**COME NOW**, William R. Lunsford, Matthew B. Reeves, Daniel J. Chism,

William J. Cranford, III, and Kenneth Steely, (collectively the "Respondents") by

1

and through their undersigned counsel, Gregory H. Hawley and Jerome C. Chapman IV, and object and respond to the Court's show cause orders [Ezell Doc. 403; Guy Doc. 387]. The Respondents state as follows:

1.      As an introductory matter, the Respondents state that they sincerely apologize to the Court regarding the confusion created by circumstances currently before this Court and the circumstances generally described in the Court's Show Cause Orders (Ezell Doc. 403; Guy Doc. 387, collectively, the "Orders"). As evidenced in the filings before this Court, no Respondent intended in any way to mislead the Court, to fail to cite the evidentiary support within the evidentiary record before the Court, or to report incorrectly any set of facts. Furthermore, with the utmost respect for this Court, the Respondents must object to the "Orders" on due process grounds, as the Orders (1) do not provide specific notice of the allegedly improper conduct, and, (2) do not permit sufficient time (after receipt of such notice) to investigate the specific allegations and prepare a meaningful response by the time scheduled for the hearing, given the extensive record which is potentially implicated by the language in the Orders.

2.      The Orders generally appear to reference four discrete issues (or categories of issues) which will be the subject of the show cause hearing. Due to the manner in which the Orders generally raise these issues, the Respondents are uncertain as to the precise problematic aspects of the briefing identified in the Orders. Because of

this difficulty understanding the issues raised in the Orders, the Respondents cannot adequately prepare a response to the allegations and therefore must take the position that the Orders are defective and improper as a predicate to the imposition of Rule 11 sanctions, inherent authority sanctions, and/or sanctions under Local Rule 83.1(f)/Alabama Rule of Professional Conduct 3.3.

3.    The Respondents closely reviewed the language of the Court's Orders and made a good-faith effort to interpret same. The undersigned counsel and a small team of Butler Snow LLP lawyers not involved in the underlying litigation also conducted an independent review of the Orders and the submissions at issue. While the Orders reference portions of the briefs which contain statements of fact and involve expert reports or expert testimony, the Orders neither identify the specific statements nor the expert(s) in question. The Orders appear to identify the following four categories of issues:

  a.    "The court finds that the Administrative Supervisors' narratives of "undisputed facts" include statements that cite only to the "Factual Background" section of an expert's reports, but the "Factual Background" in that expert's reports cite to materials that the expert did not review."

  b.    "The court also finds that at least one expert report refers only to select portions of a document it cites and flatly ignores portions of the same document that substantially undermine or contradict the expert's opinion. Moreover, that specific document is otherwise included in the Administrative Supervisors' evidentiary submission, which suggests that the decision to cite to the expert report and not the document itself was an intentional decision made for the purpose of misleading the court."

c.      "In addition, the court identified at least one "undisputed fact" in the Administrative Supervisors' brief for which the court cannot find *any* basis in their evidentiary submission despite its best efforts."

d.      "The Administrative Supervisors filed their brief in support of summary judgment before the deposition of one of its experts. At that deposition, the expert repeatedly and unequivocally stated that the basis for one of his opinions was a fact that is— indisputably—incorrect."

[Ezell Doc. 403; Guy Doc. 387].

4.      As detailed in the Declaration of William J. Cranford, III, attached hereto and more extensively discussed below, the Respondents have discovered a broader issue in their briefs and hereby disclose same to the Court and opposing counsel. For the same reasons which warrant the foregoing objection, the Respondents are not certain as to whether the issue they now disclose is partially or wholly responsive to the issues alluded to in the Orders.

### REGARDING THE IMPOSITION OF RULE 11 SANCTIONS

5.      Without waiving any objections, the Respondents infer from the Orders that the Court intends to rely upon Rule 11(b)(3). This portion of Rule 11 reads as follows:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
[…]

(3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery […].

Fed. R. Civ. P. 11 [emphasis supplied].

6.     "Due process requires notice and an opportunity to respond if Rule 11 sanctions are imposed." <u>Attwood v. Singletary</u>, 105 F.3d 610, 613 (11th Cir. 1997) (*citing* <u>Didie v. Howes</u>, 988 F.2d 1097, 1105 n. 8 (11th Cir. 1993)). Due process requires, on a fundamental level, that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and, in this context, "[d]ue process requires that the attorney (or party where applicable) has fair notice of the possible imposition of Rule 11 sanctions **and of the reasons for their imposition.**" <u>Donaldson v. Clark</u>, 819 F.2d 1551, 1559 (11th Cir. 1987) (*quoting* <u>Mullane v. Central Hanover Trust Co.</u>, 339 U.S. 306, 314 (1950)) [emphasis supplied].

7.     In <u>Donaldson</u>, the Eleventh Circuit also underscored the importance and benefit of early and fair notice in the case of an alleged Rule 11 violation in the interest of both substantive and procedural concerns:

> Early notice can deter continuing violations, thereby saving monetary and judicial resources. […] The Advisory Committee Note instructs a party seeking sanctions to "give notice to the court and the offending party promptly upon discovering a basis for doing so;" a failure to do so may result in a corresponding reduction in the amount of any costs and attorneys' fees awarded.

> Notice can come from the party seeking sanctions, or from the court, or from both. We see no basis for requiring that in all instances notice be in writing and with the formality of pleadings. But to avoid misunderstanding and permit appellate review, the notice given, or evidence of the giving of notice, should be made a part of the record.
>
> The accused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions.

Donaldson, 819 F.2d 1551, 1560 (11th Cir. 1987) [internal citations omitted].

8.    In the penultimate paragraph of the Orders, they clearly enumerate the conclusion that the Respondents made "misrepresentations" (i.e. written statements made for the purpose of deception) to the Court.  As discussed further below, the Respondents urge the Court to consider the facts enumerated in the most recent filings to the Court. To the extent that Orders reflect a final decision on whether actual "misrepresentations" occurred, the Respondents had neither notice nor an opportunity to be heard before that finding.

9.    In response to the Court's Orders, the Respondents conducted a comprehensive review of the factual citations in the motions for summary judgment filed in the Guy and Ezell matters. The Respondents discovered mistakes in their briefs including citations that have incorrect page ranges, citations made to an expert report which should have instead cited to the underlying record, and inaccurate citations. The Respondents believe, but are not certain, that some of the Court's concerns may arise from this disconnect.

10.    By way of explanation and not excuse, unexpected circumstances on the eve of filing these motions caused the Respondents to make substantial revisions to the briefs and the evidentiary submission which had been all-but-ready to file. The Respondents overlooked the extent to which these contemporaneous, emergency revisions introduced a significant divergence in the briefs and evidentiary submissions. As a result, briefs – most particularly at the citations supporting the statements of facts – were not of "final draft" quality and were well beneath the standard of work product the Respondents always strive to deliver. Attached to this Response are the Declarations of William J. Cranford, III, (hereinafter "Cranford"), the attorney among the Respondents principally responsible for the revision process discussed above, explaining in greater detail what led to this error.

11.    As set forth by Cranford, the bulk of the drafting of these briefs occurred while a motion for leave to file under seal remained pending before the Court. Leave was denied the same day these briefs were due, January 27, 2025, at approximately 2:00 pm.

12.    The Respondents mistakenly (and regrettably) assumed that the Court would grant leave to file the evidentiary submissions under seal and, therefore, structured both the briefs and evidentiary submission in anticipation of that result. The evidentiary submission which the Respondents planned to file under seal was "joint" in that it would have supported dispositive briefing by the Respondents as well as

the codefendants represented by Capell & Howard, P.C. When leave was denied, the Respondents were precluded from using the evidentiary submission as then-assembled, because they were compelled to remove large portions of the evidentiary submission to protect sensitive information from publication. Thus, the Respondents commenced a fire-drill effort to contemporaneously create an evidentiary submission acceptable for public filing and to reconfigure brief citations to that still-developing record. Amid that effort, and unbeknownst to the Respondents, a nationwide outage of the CM/ECF system occurred which itself delayed the filing of the reworked evidentiary record and the linking of these documents. The resulting work product was sub-par, to say the least, but not intentionally misleading.

13.    The Respondents apologize to the Court and opposing counsel alike for creating this confusion but must make clear that this error constitutes an innocent mistake made under difficult and unanticipated circumstances. As Cranford explains, this frantic effort resulted in decisions that, absent context, might appear arbitrary. As an example, Cranford determined that publicly filing a 954-page Inmate File was an unacceptable liability under these emergent circumstances, and, as an alternative, he modified the briefs to cite to an expert's summary of said Inmate File. While hindsight proves this was an ineffective means of substantiating the factual proposition, the Respondents submit that under the totality of the circumstances

existing at the time Cranford made this decision, it should be interpreted as problem solving that was guided by good intentions.

14.   In the time since the Court entered the Orders, the Respondents (working together with a larger team from Butler Snow LLP) have begun preparing amended briefs which correct the discovered issues. The Respondents plan to file motions for leave to file those amended briefs and will include red-lined versions showing all changes made.

15.   The Respondents respectfully submit that the proffered explanation speaks to haste, inattention, emergency circumstances, and the peril of assumption. The Respondents respectfully submit that the emergency effort which seems to have caused these issues was, at root, an effort by Respondents to comply with unusual circumstances: the summary judgment deadline, the requirement to file evidentiary submissions in advance, the order denying leave to file a sealed evidentiary submission and a nationwide outage of the Court's electronic filing system.

16.   Apart from the Respondents' objection to the Orders' notice and the Respondents' corrective action, the Respondents respectfully submit that the Rule 11 sanctions should not be imposed for a factual contention that has support in the record: "In order for a factual contention to be sanctionable under Rule 11, it must be utterly lacking in support." StreetEasy, Inc. v. Chertok, 752 F.3d 298, 308 (2d Cir. 2014).

17.    The Respondents concede that the briefs at issue contain citation errors and inaccuracies that they inadvertently introduced. The Respondents apologize for these errors and take complete responsibility. The Respondents submit that, under the Eleventh Circuit's Rule 11 frivolity analysis, their errors do not rise to the level of subjective bad faith which would support the issuance of sanctions in a *sua sponte* Rule 11 review:

> Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion. When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." A factual claim is frivolous when it has no reasonable factual basis. A legal claim is frivolous when it has no reasonable chance of succeeding. When the attorney's evidence is "merely weak," but supports a claim under existing law after a reasonable inquiry, sanctions are unwarranted. Sanctions are warranted, however, when the attorney exhibits "a deliberate indifference to obvious facts."

> If the attorney failed to make a reasonable inquiry, then "the court must impose sanctions despite the attorney's good faith belief that the claims were sound." The reasonableness of the inquiry depends on the circumstances of the case.

Gulisano v. Burlington, Inc., 34 F.4th 935, 942 (11th Cir. 2022) (*internally citing* Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991); Mike Ousley Prods., Inc. v. WJBF-TV, 952 F.2d 380, 382 (11th Cir. 1992); Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998); *and,* Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996)) [internal citations extracted].

18.    The Respondents respectfully submit that because this Rule 11 review was

commenced *sua sponte*, a higher standard of culpability is required if sanctions are

to be imposed:

> Court-initiated sanctions under Rule 11(c)(1)(B) do not involve the
> "safe harbor" provision contained in Rule 11(c)(1)(A). That provision
> ordinarily gives a lawyer or litigant 21 days within which to correct or
> withdraw the challenged submission.

> Because "no 'safe harbor' opportunity exists to withdraw or correct a
> submission challenged in a court-initiated proceeding," Rule 11's
> drafters commented on Rule 11(c)(1)(B)'s compensating protections:
> The initiating court must employ (1) a "show-cause" order to provide
> notice and an opportunity to be heard; and (2) a higher standard ("akin
> to contempt") than in the case of party-initiated sanctions.

> Other circuits apply the "akin to contempt" rationale to court-initiated,
> Rule 11 sanctions. Sua sponte Rule 11 sanctions, then, must be
> reviewed with "particular stringency."

Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003) (*internally*

*citing* In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003); Hunter v.

Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002); Barber v. Miller, 146

F.3d 707, 711 (9th Cir. 1998); MHC Inv. Co. v. Racom Corp., 323 F.3d 620, 623 (8th

Cir. 2003); *and,* United National Insurance Co. v. R & D Latex Corp., 242 F.3d 1102,

1115 (9th Cir. 2001)) [internal citations extracted].

19.    Insofar as the Respondents' concede mistakes, and are in the process of

completing comprehensive revisions which they will request leave to file, the

Respondents would urge the Court to apply the reasoning of the Fourth Circuit in

this context: "Rule 11 punishes the filing of a 'pleading, motion, or other paper' that

a reasonable attorney would recognize as frivolous. It does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact'". <u>Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n</u>, 831 F.2d 1238, 1245 (4th Cir. 1987) (*internally citing* <u>Stevens v. Lawyers Mutual Liability Insurance Co. of North Carolina</u>, 789 F.2d 1056, 1060 (4th Cir. 1986); <u>Chu by Chu v. Griffith</u>, 771 F.2d 79, 81 (4th Cir.1985)) [internal citations extracted].

20.    Given the Respondents' objections and due process concerns, given the conceded mistakes and proffered explanation of the circumstances which led to same, and given that Respondents have provided the Court with substantial authority tending to show that this sort of conduct should not warrant Rule 11 sanctions, the Respondents respectfully submit that no sanctions should be imposed pursuant to Rule 11.

### REGARDING THE IMPOSITION OF INHERENT AUTHORITY SANCTIONS

21.    The Orders also reference the Court's inherent authority to sanction as a vehicle for punishment. The inherent authority or inherent power to sanction requires a finding of bad faith on the part of the offending party. The Eleventh Circuit summarized the inherent power, its purpose, and the circumstances under which same should be used in 2017:

> Courts have the inherent power to police those appearing before them. A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." This power

"must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." A court may exercise this power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." The dual purpose of this power is to vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole. The key to unlocking a court's inherent power is a finding of bad faith.

Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017) (*internally citing* Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); Link v. Wabash R.R., 370 U.S. 626, 630–31, (1962); *and*, Marx v. Gen. Revenue Corp., 568 U.S. 371 (2013)) [internal citations extracted].

22.     The due process concern remains the same: the Respondents are unclear as to the precise conduct subject of the Orders and therefore cannot prepare specific response and defenses. And to the extent that complained of conduct arises from the citations errors identified above, this simply does not amount to the "bad faith" required to warrant sanction.

23.     As discussed above, the Respondents have identified significant issues in these briefs and have undertaken to correct all of them. As set forth by Cranford, the issues which the Respondents seek to amend (and possibly all issues raised by the Court) are purely the product of hasty revision under unexpected and challenging circumstances and in no way reflect abuse of the judicial process or bad faith.

24.     As the evidentiary submissions in these matters are extensive, the emergency revision was an enormous undertaking. The difficulties presented by completing and

then filing the emergency revisions during a nationwide CM/ECF outage of this record is reflected in the filings made by the codefendants, which were impacted by near identical circumstances and were delayed until after the Court's deadline as a result.

25.    The Respondents respectfully submit that neither their own errors, nor any similar errors in briefs filed by other parties, are properly interpreted as the product of bad faith, wantonness, or willful disregard for the Court. Where a District Court sitting within the Eleventh Circuit considers imposing inherent authority sanctions, the existence of similar conduct by other parties should be considered. Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1225 (11th Cir. 2017) ("In assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties.").

26.    Where the Seventh Circuit had an occasion to discuss the analysis of sanctions in the context of all parties behavior it found:

> These requests seem to be based on Vital's claim that Moore and his counsel misrepresented the factual record. After reading the parties' briefs and scouring the record, we find that each side took liberties with the record throughout its brief. Similarly, each side has incorrectly stated, interpreted, or applied the relevant law at some point in its brief. Put simply, neither side can claim the high ground. Neither side, however, has misconstrued the record or misstated the law to a degree that compels us to issue sanctions.

Moore v. Vital Prods., Inc., 641 F.3d 253, 259 (7th Cir. 2011). *See also* Dorr-Oliver Inc. v. Fluid-Quip, Inc., 834 F. Supp. 1008, 1017 (N.D. Ill. 1993) ("Imposing Rule

11 sanctions on defendants would be inappropriate here, since both sides have arguably offended the rule.")

27.    The Respondents submit that the Court should consider the Respondents' conduct in the context of all parties' conduct, including the analysis of response briefing discussed in Respondents' Reply Briefs (Ezell Doc. 392; Guy Doc. 376).

28.    As a final point on inherent authority sanctions: where bad faith is not found and formal sanctions are not warranted, the party defending against the imposition of inherent authority sanctions is nevertheless "punished" by the associated reputational damage, financial impact, and time expended. Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1228 (11th Cir. 2017) ("No party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants.")

29.    The Respondents are embarrassed to have created this confusion, are mortified to learn that the Court thought there had been a misrepresentation, and have already affirmatively commenced an extensive and exhaustive effort to correct these briefs.

30.    The Respondents respectfully submit that investigation and corrective action prompted by the Orders has prompted reflection on how these events unfolded, and

what safeguards can be implemented by the Respondents' practice to ensure similar issues do not arise in the future.

31.    In light of the proffered explanation and in view of the totality of the circumstances, the Respondents respectfully submit that the analysis in <u>Purchasing Power</u> leads to the same result in this case: "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority. None of these concerns are present here." <u>Purchasing Power, LLC v. Bluestem Brands, Inc.</u>, 851 F.3d 1218, 1225 (11th Cir. 2017).

32.    To the extent the Court is inclined to utilize its inherent powers to make the plaintiffs whole, the Respondents respectfully submit that it would be appropriate to authorize plaintiffs to file amended oppositions to the amended briefs, so that the Respondents' earlier errors cannot impact the quality of plaintiffs' oppositions.

### REGARDING THE IMPOSITION OF SANCTIONS UNDER LOCAL RULE 83.1(f), ALABAMA RULE OF PROFESSIONAL CONDUCT 3.3, AND ABA MODEL RULE 3.3

33.    The final vehicles for sanctions contemplated by the Court are Alabama Rule of Professional Conduct 3.3 and Local Rule 83.1(f), which incorporates the Alabama Rules of Professional Conduct together with the American Bar Association's Model Rules.

34.    The Respondents again object to the failure of Court's Orders to specifically identify the conduct which the Court believes may violate these rules, and the

Respondents state that they cannot prepare a full response to the accusations without more specific notice. The Respondents note that Local Rule 83.1, at subsections (g) and (h), outlines the procedure under which disciplinary referrals are evaluated by the Grievance Committee, and that said procedure contains strong due process protections for the accused (including the availability of hearings, limited discovery, and some degree of confidentiality). The Respondents respectfully suggest that due to the notice issues previously discussed, any sanctions entered under the Court's own authority under Local Rule 83.1(f) would be contrary to the clear intent of the Local Rules to afford due process rights to the accused in disciplinary matters.

35.    Alabama Rule of Professional Conduct 3.3 relates to candor towards the tribunal, and commands in relevant part as follows:

> (a) A lawyer shall not knowingly: (1) Make a false statement of material fact or law to a tribunal; […] or (3) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures. (b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6. […]

Ala. R. Prof. Cond. 3.3.

Similarly, the American Bar Association Model Rule 3.3 commands in relevant part as follows:

> (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; […] (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's

client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. […] (c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6. […]

ABA Model R. Prof. Cond. 3.3

36.    The Respondents submit that each of these rules is inapplicable to the instant circumstances.

37.    While the Court noted that one unidentified statement of fact did not appear to be supported by any part of the evidentiary submission, it does not appear from any reading of the Court's show cause order that the Court believed that a *false* statement of fact or law had been offered. As opposed to *false* statements of law or fact, it seems that the Court may have interpreted unorthodox citation patterns which resulted from an emergency revision as the intentional cherry-picking of evidentiary sources. The Court may have inferred that citation to an expert's summary of the factual background (as opposed to the evidence the expert reviewed to develop same) was a scheme by which the Respondents hoped to gain a strategic advantage. The Respondents state that there was no such strategy and that issue resulted from Cranford being unable to publicly file the 954-page Inmate File which would have otherwise supported those propositions.

38.    For the sake of argument, the Respondents submit that the scheme which the Court envisions would provide no strategic advantage whatsoever. Though it could

have the effect of concealing a "bad fact" from the Court, it does nothing at all to conceal the bad fact from the movant's adversary, who will assuredly raise that fact in opposition to the motion. A movant employing that scheme forfeits any ability to "draw the sting" of a bad fact and, instead, amplifies the utility of that bad fact by allowing the adversary to control the entire context for same.

39.    The Respondents do not believe that these rules are applicable as, no *false* statement of fact or law is involved, and as these issues are attributable instead to citation errors which, in the absence of context, were so confounding that an inference of nefarious activity arose.

40.    Moreover, the citation inconsistency in the original briefs was accidentally introduced in the frantic effort to rework a large and complicated filing. Where the Respondents offered briefs with deficient citations, they did so unknowingly. When the Orders were filed and the error was apprehended, the Respondents immediately undertook corrective action.

41.    Thus, the Respondents submit that these rules are not applicable as the citation issue in the original briefs was **not known** to the Respondents at the time of filing and the "*mens rea*" component of the behavior proscribed by each of these rules is not present. Moreover, the Respondents have not knowingly advocated for briefs with incorrect citations since learning of the issue and will instead seek leave to cure the deficiency with amended pleadings.

42.    Lastly, the instant response and objection constitute the Respondents' compliance with the spirit of these rules, insofar as the Respondents are affirmatively disclosing independently-discovered issues regarding deficiencies in their own pleadings not previously raised by the Court.

43.    For these reasons, the Respondents submit that no sanction under Local Rule 83.1/Alabama Rule of Professional Conduct 3.3 is warranted.

### CONCLUSION

The Respondents, under a misguided assumption that this Court would grant their motion for leave to file an evidentiary submission under seal, were comfortably prepared to file briefs and an evidentiary submission as of January 27, 2025. When leave was denied at 2:00 pm, the Respondents were required to immediately begin reworking the briefs and evidentiary submission to ensure that the materials were both appropriate for public filing and timely filed.  The hours of delay in filing of the evidentiary submission due to an IT outage beyond anyone's control further exacerbated the already challenging circumstances.  In the rush to meet the pending deadline, the Respondents unknowingly created a filing so confusing in its reworked form as to give an appearance of nefarious intent. This is an embarrassing mistake. The Respondents, however, assure the Court that this amounts to **nothing** more than a **huge** mistake, and therefore respectfully submit that sanctions should not be imposed.

**WHEREFORE, PREMISES CONSIDERED,** the Respondents, William R. Lunsford, Matthew B. Reeves, Daniel J. Chism, William J. Cranford, III, and Kenneth Steely, respectfully object to the Court's orders to show cause. Without waiving said objection, the Respondents respectfully urge the Court not to impose any sanctions, in light of the explanation and corrective actions outlined in this response.

Respectfully submitted,

*/s/ Gregory H. Hawley*
GREGORY H. HAWLEY (ASB-8552-L69G)
JEROME C. CHAPMAN IV (ASB-2364-O42H)
*Attorneys for the Respondents*

**OF COUNSEL:**
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, AL 35203
Telephone:   (205) 324-4400
Facsimile:   (205) 322-1163
E-mail:       ghawley@handfirm.com
              jchapman@handfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2025 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will serve all attorneys of record, and/or served the following by U.S. mail, postage prepaid and properly addressed, and/or by electronic mail:

Ruth Z. Brown (*pro hac vice*)
Megan Pierce (*pro hac vice*)
Quinn Rallins (*pro hac vice*)
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
ruth@loevy.com
megan@loevy.com
rallins@loevy.com

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

*Attorneys for Plaintiff*

James N. Walter, Jr.
C. Richard Hill, Jr.
W. Allen Sheehan
Caitlin E. Cobb
W. Jackson Britton
**CAPELL & HOWARD P.C.**
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069

Telephone: (334)241-8043
Facsimile: (334)-241-8243
jimmy.walter@chlaw.com
rick.hill@chlaw.com
allen.sheehan@chlaw.com
caitlin.cobb@chlaw.com
jackson.britton@chlaw.com

*Attorneys for Larry Baker*

/s/ Jerome C. Chapman IV
Of Counsel